# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KOREA CGM MEMBERS ASSOCIATION, a non-profit corporation organized and existing under the laws of the Republic of Korea,<br><br>      Plaintiff,<br><br>   v.<br><br>NETFLIX, INC., a Delaware corporation, and DOES 1-50, inclusive,<br><br>      Defendant. | C.A. No. 24-267-GBW |

## DEFENDANT NETFLIX, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE <u>THE AMENDED COMPLAINT</u>

OF COUNSEL:

Michael Gottlieb (admitted *pro hac vice*)
Meryl Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Dated: July 24, 2024

Chad M. Shandler (#3796)
Jessica E. Blau (#7163)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
shandler@rlf.com
blau@rlf.com

*Attorneys for Defendant, Netflix, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ................................................................................................ 3

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ........................................................................................................................ 8

I.      THIS LAWSUIT DOES NOT BELONG IN THIS FORUM. ................................... 8

    A.      Dismissal Is Warranted On *Forum Non Conveniens* Grounds. ............................ 8

    B.      Rule 12(b)(3) And § 1406(a) Warrant Dismissal For Improper Venue ................ 11

    C.      Dismissal Is Warranted Based On International Comity. ....................................... 12

II.     THE COURT LACKS SUBJECT MATTER JURSIDCITION ................................. 13

    A.      The Complaint Fails To Allege Citizenship Of The Doe Defendants. .................. 13

    B.      CGMMA Lacks Standing To Prosecute This Lawsuit. .......................................... 13

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION. .................... 14

    A.      CGMMA Fails To Specifically Identify The Challenged Statements. .................. 15

    B.      The Challenged Statements Are Substantially True. .............................................. 15

    C.      The Complaint Fails To Plead Actual Malice .......................................................... 17

    D.      The Challenged Statements Are Not "Of And Concerning" CGMMA ................ 20

    E.      The Challenged Statements Are Not Defamatory As A Matter Of Law. ............. 23

IV.     THE COURT SHOULD STRIKE THE COMPLAINT AND SHIFT COSTS TO THE PLAINTIFF PURSUANT TO CALIFORNIA'S ANTI-SLAPP ACT. ........................... 25

    A.      California Law Applies To The Substantive Claims In The Lawsuit ................... 25

    B.      California's Anti-SLAPP Act Warrants Striking The Complaint ......................... 27

        1.      The Complaint arises from Netflix exercising its First Amendment rights ................................................................................................................. 27

        2.      Plaintiff cannot demonstrate a probability of success on the merits .......... 29

        3.      The Court should award Netflix its attorney's fees and costs. ................. 29

CONCLUSION ..................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACCO Brands USA LLC v. Performance Designed Prods. LLC*,
  2024 WL 181545 (D. Del. Jan. 17, 2024)...............................................................12

*Acuña-Atalaya v. Newmont Mining Corp.*,
  612 F. Supp. 3d 384 (D. Del. 2020)....................................................................8, 9

*Affinity Empowering, Inc. v. Eurofins Sci., Inc.*,
  2022 WL 6734604 (D. Del. Oct. 11, 2022) ..............................................................6

*Alston v. Christiana Hosp.*,
  148 A.3d 1171 (Del. 2016) ..................................................................................14

*Aoki v. Benihana, Inc.*,
  839 F. Supp. 2d 759 (D. Del. 2012)......................................................................25

*Avenatti v. Fox News Network, LLC*,
  2021 WL 3603035 (D. Del. 2021) ...........................................................3, 16, 17

*Azuma v. LeMond Cos.*,
  628 F. Supp. 3d 547 (D. Del. 2022).......................................................................6

*Base10 Genetics, Inc. v. AGEMO Holdings, LLC*,
  2023 WL 8716832 (D. Del. Dec. 18, 2023) .............................................................6

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) ...............................................................................7

*Behrens v. Arconic, Inc.*,
  2022 WL 2593520 (3d Cir. July 8, 2022)...............................................................11

*Belen v. Ryan Seacrest Prods., LLC*,
  65 Cal. App. 5th 1145 (2021) ................................................................................27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................7

*Blatty v. N.Y. Times Co.*,
  42 Cal. 3d 1033 (1986) .............................................................................20, 21, 23

*Bockman v. First Am. Mktg. Corp.*,
  459 F. App'x 157 (3d Cir. 2012) ..........................................................................12

*Brautigam v. Priest*,
2000 WL 291534 (D. Del. Mar. 2, 2000) .................................................................12

*Bunn v. Gleason*,
462 F. Supp. 2d 317 (D. Conn. 2006) ......................................................................12

*Burmeister v. Saldich*,
2023 WL 309044 (N.D. Cal. Jan. 18, 2023) ...........................................................15

*Chigurupati v. Daiichi Sankyo Co.*,
480 F. App'x 672 (3d Cir. 2012) ...............................................................................8

*Church of Scientology v. Wollersheim*,
42 Cal. App. 4th 628 (1996) ....................................................................................28

*Darnaa, LLC v. Google, Inc.*,
2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ...........................................................24

*DeRoburt v. Gannett Co.*,
83 F.R.D. 574 (D. Haw. 1979) .................................................................................25

*Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*,
54 F.3d 156 (3d Cir. 1995) .......................................................................................13

*Doe v. Benoit*,
2020 WL 11885578 (D.D.C. June 29, 2020) ...........................................................12

*Doe v. Gangland Prods., Inc.*,
730 F.3d 946 (9th Cir. 2013) ..............................................................................27, 28

*Eliott v. Lions Gate Ent. Corp.*,
639 F. Supp. 3d 1012 (C.D. Cal. 2022) ...........................................................*passim*

*EPIS, Inc. v. Fid. & Guar. Life Ins. Co.*
156 F. Supp. 2d 1116 (N.D. Cal. 2001) ..................................................................24

*Evans v. TheHuffingtonPost.com, Inc.*,
2023 WL 5275383 (D. Del. Aug. 16, 2023) ..............................................3, 5, 26, 27

*Friends of Falun Gong v. Pac. Cultural Enter., Inc.*,
288 F. Supp. 2d 273 (E.D.N.Y. 2003), *aff'd sub nom. Friends of Gong v. Pac.
Culture*, 109 F. App'x 442 (2d Cir. 2004) ..............................................................23

*Gilead Scis., Inc. v. Abbott Lab'ys, Inc.*,
2015 WL 1191129 (D. Del. Mar. 13, 2015) ..............................................................7

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)....................................................................................................6

*Hall v. Time Warner, Inc.*,
    153 Cal. App. 4th 1337 (2007) ...................................................................29

*Heller v. NBCUniversal, Inc.*,
    2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) ..........................................15

*Henley v. Jacobs*,
    2018 WL 10604528 (N.D. Cal. Dec. 21, 2018).............................11, 14, 20, 21

*Hilton v. Guyot*,
    159 U.S. 113 (1895)......................................................................................6

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) .....................................................................28

*Hyewoong Yoon v. Seyeon Lee*,
    433 F. Supp. 3d 18 (D. Mass. 2019) .............................................................9

*Intermarketing Media, LLC v. Barlow*,
    2021 WL 6102516 (C.D. Cal. Nov. 4, 2021)..............................................29

*Jane Doe L.C. v. Aimbridge Hosp., LLC*,
    2020 WL 5633363 (D. Del. Sept. 21, 2020)..................................6, 8, 13

*Johnson v. Warner Bros. Ent., Inc.*,
    2017 WL 588714 (D. Del. Feb. 14, 2017)..................................................26

*Kechara House Buddhist Ass'n Malaysia v. Does*,
    2015 WL 5538999 (N.D. Cal. Sept. 18, 2015) ..........................................15

*Kisano Trade & Inv. Ltd. v. Lemster*,
    737 F.3d 869 (3d Cir. 2013).......................................................................10

*Mahoney v. Meta Platforms, Inc.*,
    -- F. Supp. 3d --, 2024 WL 68550 (N.D. Cal. Jan. 6, 2024) ....................24

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) .......................................................................7

*Maloney v. T3Media, Inc.*,
    94 F. Supp. 3d 1128 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017)...........................8

*Masson v. New Yorker Mag., Inc.*,
    501 U.S. 496 (1991)....................................................................................16

*Maugain v. FCA US LLC*,
    2023 WL 1796113 (D. Del. Feb. 7, 2023) ....................................................6

*McCafferty v. Newsweek Media Grp., Ltd.*,
 955 F.3d 352 (3d Cir. 2020)..................................................................17

*Metabolife Int'l, Inc. v. Wornick*,
 264 F.3d 832 (9th Cir. 2001) ............................................................7, 25

*Mortellite v. Novartis Crop Prot., Inc.*,
 460 F.3d 483 (3d Cir. 2006)..................................................................13

*Mullins v. Brando*,
 13 Cal. App. 3d 409 (1970) ...................................................................23

*Murphy v. King Size Prods.*,
 2022 WL 2286474 (C.D. Cal. Mar. 17, 2022).......................................22

*My Size, Inc. v. Mizrahi*,
 193 F. Supp. 3d 327 (D. Del. 2016)...............................................8, 9, 10

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.*,
 457 F. Supp. 3d 207 (E.D.N.Y. 2020) ...................................................21

*Nexon Korea Corp. v. Ironmace Co.*,
 2023 WL 5305996 (W.D. Wash. Aug. 17, 2023) .....................................9

*Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*,
 280 F.3d 278 (3d Cir. 2002)..............................................................13, 14

*PATS Aircraft, LLC v. Vedder Munich GmbH*,
 197 F. Supp. 3d 663 (D. Del. 2016)....................................................6, 12

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
 998 F.2d 1192 (3d Cir. 1993)..............................................................4, 5

*Peterson v. Sutter Med. Found.*,
 615 F. Supp. 3d 1097 (N.D. Cal. 2022) ................................................27

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981).......................................................................8, 9, 10

*Planet Aid, Inc. v. Ctr. for Investigative Reporting*,
 2021 WL 1110252 (N.D. Cal. Mar. 23, 2021)........................................19

*RAIT P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP*,
 2009 WL 3297310 (D. Del. Oct. 14, 2009), *report and recommendation
 adopted*, 2010 WL 786551 (D. Del. Mar. 3, 2010) ..................................6

*Reade v. N.Y. Times Co.*,
 2023 WL 2602296 (E.D. Cal. Mar. 22, 2023) ........................................29

*Reader's Dig. Ass'n v. Superior Ct.*,
  37 Cal. 3d 244 (1984) ............................................................................................17

*Resolute Forest Prods. v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) ...........................................................18, 19

*Ryanair DAC v. Booking Holdings, Inc.*,
  2021 WL 7209367 (D. Del. Dec. 27, 2021)............................................................10

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) ................................................................................27

*SDV/ACCI, Inc. v. AT&T Corp.*,
  522 F.3d 955 (9th Cir. 2008) ..........................................................................20, 21

*Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*,
  2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ........................................................17

*Shibles v. Bank of Am., N.A.*,
  730 F. App'x 103 (3d Cir. 2018) .............................................................................6

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007)............................................................................................8, 10

*Sklar v. Bellafiore*,
  2023 WL 5748758 (D. Del. Sept. 6, 2023)..............................................................7

*Soojung Jang v. Trs. Of St. Johnsbury Acad.*,
  331 F. Supp. 3d 312 (D. Vt. 2018)........................................................................25

*Spence v. Funk*,
  396 A.2d 967 (Del. 1978) ......................................................................................11

*Stossel v. Meta Platforms, Inc.*,
  634 F. Supp. 3d 743 (N.D. Cal. 2022) ..................................................................16

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) ..........................................................................................29

*Tucker v. Fischbein*,
  237 F.3d 275 (3d Cir. 2001)...................................................................................17

*Tull v. Higgins*,
  2021 WL 6116971 (N.D. Cal. Dec. 27, 2021)...................................................15, 17

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................8

*Windt v. Qwest Commc'ns Int'l, Inc.*,
    529 F.3d 183 (3d Cir. 2008)..................................................................6, 11

*WIT Software v. Talkdesk, Inc.*
    2023 WL 3454193 (D. Del. May 15, 2023)............................................11

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ..................................................18

**Statutes**

28 U.S.C. § 1391 .................................................................................................11

28 U.S.C. § 1406(a) ...........................................................................................12

Cal. Civ. Proc. Code § 425.16 ...........................................................7, 27, 28, 29

Del. Code tit. 10 § 8136(a)(4) ..........................................................................27

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................7

Restatement (Second) of Conflict of Laws (1971) ...................................25, 26

Defendant Netflix, Inc. ("Netflix") respectfully moves the Court to dismiss with prejudice and to strike the Amended Complaint (D.I. 12, "Complaint") filed by Plaintiff Korea CGM Members Association ("CGMMA").[1]

## PRELIMINARY STATEMENT

This retaliatory lawsuit has no place in this Court or any other United States court. The Plaintiff, CGMMA, is a purported association of members of a Korean church whose Korean pastor—Jeong Myong-Seok (aka "Pastor Joshua" or "JMS")—has been convicted twice by a Korean court in connection with the sexual assault of multiple of his female (mostly Korean) followers. CGMMA filed this lawsuit to punish Netflix for distributing the documentary *In the Name of God: A Holy Betrayal* ("Documentary"), which exposes Pastor Joshua's grooming, recruitment, and sexual assault of his female followers, as well as violent actions his followers took against individuals critical of his conduct. The Documentary focuses on events that occurred in Korea, relies almost exclusively on Korean-language interviews with Korean individuals (including victims of Pastor Joshua), and was researched and filmed in Korea by a Korean production company, film crew, and director. Pastor Joshua and his entities already have filed two unsuccessful lawsuits in Korea: one attempting, but failing, to enjoin the Documentary's release and the other challenging as defamatory the same type of content at issue in this lawsuit. Plaintiff now attempts to forum shop into the United States the same claims that Korean courts already have adjudicated and rejected. The Court should dismiss this lawsuit because it does not belong in this forum based on *forum non conveniens*, Rule 12(b)(3), 28 U.S.C. § 1406, and the doctrine of international comity. *Infra* § I.

---

[1] Plaintiff uses the term "CGM" to describe itself, but the term "CGMMA" more accurately describes Plaintiff as the Members Association rather than the Christian Gospel Mission ("CGM") itself.

Leaving aside improper forum, this Court also should dismiss for lack of subject matter jurisdiction both because the Complaint fails to allege the citizenship of the 50 Doe defendants, which defeats diversity as a matter of law, and because CGMMA lacks Article III standing as an association to vindicate harms of third parties. *Infra* § II. Dismissal separately is warranted pursuant to Rule 12(b)(6) for multiple reasons: the Complaint fails to sufficiently identify the challenged conduct; the allegedly defamatory statements purportedly at issue are substantially true; and there are no pleaded facts demonstrating that the statements were published with actual malice, are of and concerning CGMMA, or are defamatory statements of fact on their face or by implication. *Infra* § III.

Netflix also respectfully requests that the Court strike the Complaint pursuant to California Code of Civil Procedure § 425.16, California's statute against Strategic Lawsuits Against Public Participation ("Anti-SLAPP Act"). California's Anti-SLAPP Act applies to this lawsuit based on Delaware's choice-of-law principles, and prohibits CGMMA from using litigation as a means to harass, threaten, or retaliate against the exercise of First Amendment rights under the federal and state constitutions. Because the Complaint fails to state a claim under Rule 12(b)(6), the Court should strike the Complaint in its entirety and require CGMMA to pay all attorneys' fees and costs that Netflix incurred defending itself against CGMMA's putative effort. *Infra* § IV.

## FACTUAL BACKGROUND

### A.      The Instant Action

Plaintiff CGMMA is a "Members Association" that "operates as the Christian Gospel Mission, a Christian organization, which is active in more than 60 countries, including the USA" and "is and was a nonprofit corporation organized and existing under the laws of Korea with its principal place of business in Seoul, Korea." ¶¶ 1, 4.[2] CGMMA alleges that its "religious leader" is Jeong Myong-Seok, who is known by his initials "JMS" and is "also known" as Pastor Joshua. ¶¶ 3, 10. CGMMA claims that JMS also is an "acronym for Jesus Morning Star, a name that CGM has sometimes used." ¶¶ 3, 10.

Netflix is incorporated in this state with its principal place of business in California. ¶ 5. The first three episodes of the Documentary focus on Pastor Joshua's recruitment, grooming, and sexual assault of young women. ¶¶ 2, 5; *see* Exs. 1-4.[3] The Documentary relies on first-hand accounts from individuals with personal knowledge of the events in question, including multiple victims of Pastor Joshua, such as Jeong Soo-Jeong ("Maple"), as well as audio and video recordings, and testimony from the various criminal court proceedings in which Pastor Joshua faced charges of sexual assault and rape. Pastor Joshua was convicted twice in Korea related to the conduct: in 2009 for the sexual assault of four female followers, resulting in a 10-year prison

---

[2] All citations to the Complaint and to paragraphs ("¶") refer to the Amended Complaint.

[3] Citations to Exhibits 1-5 refer to the exhibits attached to the Declaration of Meryl Governski filed contemporaneously herewith. Exhibit 1 is a video copy of the Documentary and Exhibits 2-4 are transcripts of the Documentary with the Challenged Statements (defined below) and their surrounding context highlighted. The Court can consider the video and transcripts because CGMMA's claims arise out of, and explicitly rely upon, those materials. *See Evans v. TheHuffingtonPost.com, Inc.*, 2023 WL 5275383, at *2 (D. Del. Aug. 16, 2023) (Williams, J.) ("The court may consider matters of public record and documents attached to, 'integral to, or explicitly relied upon in' the complaint." (citation omitted)) (cleaned up); *see also Avenatti v. Fox News Network, LLC*, 2021 WL 3603035, at *2 (D. Del. 2021) (finding transcripts of the news broadcast with alleged defamatory statements "integral to or explicitly relied upon in the complaint" (internal quotation marks and citation omitted)).

sentence; and in 2023 for sex crimes committed against two women. *See* Ex. 6 at 7; Exs. 7, 8, 11;[4] *see also* Ex. 4 at 13:38–13:50.

CGMMA's theory of liability does not challenge that Pastor Joshua sexually assaulted his followers, or that individuals affiliated with Pastor Joshua procured young women for his sexual gratification and/or beat, kidnapped, threatened, or intimidated other individuals. Rather, the Complaint asserts that the Documentary contains two types of statements that are defamatory *only* because they imply that "CGM caused, condoned, encouraged or facilitated its members" to: (1) "procure young women for its leader's sexual gratification"; and (2) beat, kidnap, threaten and intimidate persons whom it perceived to be hostile. ¶¶ 2, 10-19 (allegations related to first category), ¶¶ 20-29 (allegations relating to second category) (collectively, the "Challenged Statements").[5] The Complaint also names "Does 1 through 50" as defendants ("Doe Defendants") whose "true names and capacities" of which CGMMA is unaware but whom it alleges "engaged in, or is in some manner responsible for, the wrongful conduct alleged herein." ¶ 9.

## B.    Prior Korean Litigation

This lawsuit marks the second lawsuit that a CGM-affiliated entity has filed about the Documentary. CGM filed an "application for an injunction to stop the broadcast of the Series" in

---

[4] Citations to Exhibits 6-11 refer to the exhibits attached to the Declaration of Yunjoh Lee. The Court should take judicial notice of the "criminal case dispositions" in the Korean cases because they are matters of public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993) ("Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies." (internal quotation marks and citations omitted)).

[5] Exhibit 5 is a chart in which Netflix attempts to categorize and numerate the Challenged Statements based on the Complaint's general citations to episodes and time codes.

Seoul in February 2023. ¶ 37; *see* Ex. 6 (the "Injunction Litigation").[6] What the Complaint leaves out—but which this Court may consider given CGMMA's explicit reference to the Injunction Litigation[7]—is that the Korean court rejected CGM's claim "that all information about the creditors in the program in this case is false." Ex. 6 at 5. The Korean court held that the producer of the Documentary "collected a considerable amount of objective and subjective materials" and "confirmed and verified the facts through confirmed relevant rulings, existing media reports and published materials, and interviews with interested parties, etc., and cross-checked with such materials as press release of the former members, Cafe postings, and various videos and photos." *Id.*

The Injunction Litigation followed a defamation lawsuit that Pastor Joshua and an affiliated entity filed in Korea several years earlier against a different publisher related to a different broadcast, but based on statements similar to the Challenged Statements. *See* Exs. 9-10 ("Defamation Suit").[8] In a 2020 decision later upheld on appeal, a Korean court dismissed the lawsuit based in part on a finding that "there were people inside the Plaintiff Missionary who knew well that" Pastor Joshua "was harassing female church members on the pretext of conducting physical examinations but connived or silently accepted such harassments[.]" *See* Ex. 9 at 17; Ex. 10; Ex. 6 at 7.

---

[6] The plaintiffs in the Injunction Action were Pastor Joshua and CGM (not CGMMA). *See* Ex. 6 at 1, 2. The Court in that case described CGM as "a religious organization founded" by "Jung Myung-seok, also known as 'JMS', who is the leader of the sect or president of" CGM. *Id.* at 2.

[7] *See Evans*, 2023 WL 5275383, at *2 (noting courts can consider at the motion to dismiss stage materials "explicitly relied upon in the complaint" (internal quotation mark and citation omitted)).

[8] The Court may take judicial notice of the disposition on the defamation lawsuit in Korea because it is a matter of public record. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196-97.

**LEGAL STANDARD**

District courts have discretion to dismiss actions on *forum non conveniens* grounds where "the litigation can more appropriately be conducted in a foreign tribunal." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 505 (1947); *see also Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008). Rule 12(b)(3) separately authorizes dismissal when venue is improper based on "the relevant venue statutes"—28 U.S.C. §§ 1391, 1406(a), and 1404(a). *RAIT P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP*, 2009 WL 3297310, at *2 (D. Del. Oct. 14, 2009), *report and recommendation adopted*, 2010 WL 786551 (D. Del. Mar. 3, 2010). Courts also can dismiss actions based on international comity in deference to "the legislative, executive, or judicial acts of another nation." *PATS Aircraft, LLC v. Vedder Munich GmbH*, 197 F. Supp. 3d 663, 673 (D. Del. 2016) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163 (1895)).

Pursuant to Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *Azuma v. LeMond Cos.*, 628 F. Supp. 3d 547, 550–51 (D. Del. 2022) (quoting *Shibles v. Bank of Am., N.A.*, 730 F. App'x 103, 105 (3d Cir. 2018)). When a plaintiff "is a foreign citizen, even a single foreign defendant defeats diversity for the purposes of subject matter jurisdiction." *Jane Doe L.C. v. Aimbridge Hosp., LLC*, 2020 WL 5633363, at *1 n.1 (D. Del. Sept. 21, 2020); *see also Base10 Genetics, Inc. v. AGEMO Holdings, LLC*, 2023 WL 8716832, at *1-2 (D. Del. Dec. 18, 2023) (Williams, J.). Without Article III standing, a "federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Maugain v. FCA US LLC*, 2023 WL 1796113, at *3 (D. Del. Feb. 7, 2023) (Williams, J.) (citations omitted) (listing factors required to demonstrate standing). "Once a court's jurisdiction is challenged, it must presume that it lacks jurisdiction unless the party asserting that jurisdiction exists can prove otherwise." *Affinity Empowering, Inc. v. Eurofins Sci., Inc.*, 2022 WL 6734604, at *2 (D. Del. Oct. 11, 2022) (Williams, J.) (citation omitted).

Rule 12(b)(6) authorizes dismissal for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While courts must accept all factual allegations in a complaint as true, dismissal is warranted if "those allegations 'could not raise a claim of entitlement to relief.'" *Sklar v. Bellafiore*, 2023 WL 5748758, at *1 (D. Del. Sept. 6, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). A complaint "must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" and courts are "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *Id.* (citations omitted).

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPS, that 'masquerade as ordinary lawsuits,' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks omitted) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)). The California Legislature passed the Anti-SLAPP Act in response to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" and declared "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001) (purpose is "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation").[9] The Anti-SLAPP Act mandates that the law "shall be construed broadly." § 425.16(a).

---

[9] Multiple federal courts have applied provisions of the California Anti-SLAPP Act, and Netflix is unaware of any contrary precedent from this District or the Third Circuit. *See Gilead Scis., Inc. v. Abbott Lab'ys, Inc.*, 2015 WL 1191129, at *3-9 (D. Del. Mar. 13, 2015) (applying California

<u>**ARGUMENT**</u>

I.    **THIS LAWSUIT DOES NOT BELONG IN THIS FORUM.**

    A.    **Dismissal Is Warranted On *Forum Non Conveniens* Grounds.[10]**

All three factors that courts consider when engaging in a *forum non conveniens* analysis—
"(1) the availability of an adequate alternative forum to hear the case; (2) the appropriate level of
deference due to the plaintiff's choice of forum; and (3) the relevant private and public interest
factors"—strongly favor dismissal here. *See Chigurupati v. Daiichi Sankyo Co.*, 480 F. App'x 672,
674 (3d Cir. 2012); *Jane Doe L.C.*, 2020 WL 5633363, at *2; *see also My Size, Inc. v. Mizrahi*,
193 F. Supp. 3d 327, 331 (D. Del. 2016) (when "the most appropriate forum is abroad, 'no
mechanism provides for transfer between the courts of different sovereigns' and, therefore,
'dismissal under *forum non conveniens* remains the appropriate remedy'") (citation omitted).

*First*, an adequate alternative forum is available because Netflix has a Korean presence
and, in any event, would consent to the Korean courts for purposes of this litigation in the event
that the Court dismisses the case. *See Hollywood Innovations Grp. LLC v. Netflix, Inc.*, 2:21-cv-
09423, D.I. 39 at 15 (Feb. 4, 2022); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)
(adequate alternative forum where defendant is "amenable to process" abroad (citation omitted));
*Acuña-Atalaya v. Newmont Mining Corp.*, 612 F. Supp. 3d 384, 391 (D. Del. 2020). To establish

---

law and granting anti-SLAPP motion to strike slander of title and unfair business practices claims);
*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) ("Motions to strike a state
law claim under California's anti-SLAPP statute may be brought in federal court."); *Maloney v.
T3Media, Inc.*, 94 F. Supp. 3d 1128, 1132 (C.D. Cal. 2015) ("Although framed as a rule of state
procedure, California's anti-SLAPP statute protects substantive rights and thus applies in federal
court."), *aff'd*, 853 F.3d 1004 (9th Cir. 2017).

[10] This Court "has leeway 'to choose among threshold grounds for denying audience to a case on
the merits'" and "therefore may dispose of an action by a *forum non conveniens* dismissal,
bypassing questions of subject-matter and personal jurisdiction, when considerations of
convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l
Shipping Corp.*, 549 U.S. 422, 423 (2007) (citation omitted).

otherwise, Plaintiff must provide the Court with "'significant evidence' demonstrating that 'the remedy offered by the other forum is clearly unsatisfactory.'" *Acuña-Atalaya*, 612 F. Supp. 3d at 391; *see Piper Aircraft*, 454 U.S. at 254 n.22 (narrow exception applied only in "rare" cases where remedy offered by alternative forum is "clearly unsatisfactory" or the forum "does not permit litigation of the subject matter of the dispute"). But Korea clearly provides an adequate forum—it recognizes civil defamation claims, and permits the recovery of monetary damages on such claims. *See Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18, 26 (D. Mass. 2019) (finding Korea "provides an adequate alternative forum for [ ] defamation and libel claims"); *Nexon Korea Corp. v. Ironmace Co.*, 2023 WL 5305996, at *7 (W.D. Wash. Aug. 17, 2023) (collecting cases concluding Korea is an adequate alternative forum for a variety of claims); *see also My Size, Inc.*, 193 F. Supp. 3d at 335 (finding Israel provides adequate forum because a case "involving similar claims" was underway there).

CGMMA understands that Korea provides a satisfactory forum because Pastor Joshua and his related entities availed themselves of Korean courts in both the Injunction Action and Defamation Suit to adjudicate nearly identical claims as the ones here. *Supra* at 4-5. Two Korean courts—which were far better equipped to consider the veracity of statements made about a Korean entity, featured in Korean media, about alleged harm to Korean citizens—already made judicial findings regarding the veracity of the Documentary and similar content, and there is no basis for believing that *this* version of the action should be adjudicated differently. Moreover, criminal courts in Korea also have adjudicated underlying facts at issue while finding Pastor Joshua guilty of sexual assault and related crimes. CGMMA faces no prejudice by litigating this case in the same forum where they have brought (and defended) these related adjudications, and has no right to a do-over in a jurisdiction with no connection to the underlying facts, as discussed next.

*Second*, because CGMMA is headquartered in Seoul, Korea, CGMMA's choice of this forum deserves no deference or "presumption of convenience." *See Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 874–75 (3d Cir. 2013) (citation omitted); *Sinochem Int'l Co.*, 549 U.S. at 430 (when "plaintiff's choice is not its home forum" any "assumption that the chosen forum is appropriate is in such cases less reasonable" (internal quotation marks and citation omitted)); *My Size, Inc.*, 193 F. Supp. 3d at 332 ("[A] foreign plaintiff's choice of forum is given less deference when it litigates outside its home forum."). Delaware is surely an *inconvenient* forum. None of the factual allegations or claims in the Complaint relate to Delaware, which CGMMA implicitly admits by choosing not to allege venue pursuant to 28 U.S.C. § 1391(b)(2) as the location where a "substantial part of the events or omissions giving rise to the claim occurred." ¶ 8; *infra* at 11. Most, if it not all, of the relevant witnesses and evidence in this case reside in either Korea or Hong Kong. The only nexus to Delaware appears to be that Netflix is incorporated here, which suggests that CGMMA chose this forum not out of convenience, but to forum-shop its way around the Korean courts that have already considered and rejected claims similar to those CGMMA asserts here. *See Piper Aircraft*, 454 U.S. at 249 n.15; *My Size, Inc.*, 193 F. Supp. 3d at 335 (all "parties would be greatly inconvenienced by a trial in Delaware"); Exs. 6, 9-10.

*Third*, the balance of private and public factors warrant dismissal.[11] The relevant evidence in this case, including evidence regarding the truth of the Documentary's claims, and the

---

[11] The private factors are: "(1) the ease of access to evidence; (2) the potential for compulsory attendance for uncooperative witnesses; (3) the cost of procuring cooperative witnesses; (4) the proximity to any pertinent locations; and (5) the miscellaneous practical advantages which make trial easier and less expensive." *Ryanair DAC v. Booking Holdings, Inc.*, 2021 WL 7209367, at *3 n.6 (D. Del. Dec. 27, 2021) (citation omitted). Public factors include: "(1) court congestion; (2) the local interest in deciding local controversies; (3) the benefit of litigating cases within a forum that traditionally applies the applicable law; (4) the avoidance of unnecessary problems in law application, such as conflict of laws; and (5) the unfairness of burdening citizens with jury duty." *Id.*

preparation, research, and production that went into it, is likely to be located in Korea (and predominantly written in Korean). The relevant witnesses in this case largely are located in or citizens of Korea, and may not be amenable to discovery in the United States given the nature of the allegations involved. *See* ¶¶ 10–12, 14–16, 20–29. There is no reason to believe that *any* pertinent evidence or witnesses are located in Delaware. The sum of these factors strongly militate in favor of dismissal. *See Behrens v. Arconic, Inc.*, 2022 WL 2593520, at *3 n.4 (3d Cir. July 8, 2022); *WIT Software v. Talkdesk, Inc.*, 2023 WL 3454193, at *7 (D. Del. May 15, 2023) (dismissal where "most, if not all of the witnesses are in Portugal and much of the documentary evidence is in Portuguese"). The public interest factors necessitate the same conclusion. "Delaware is indisputably one of the busiest federal courts in the nation," *WIT Software*, 2023 WL 3454193, at *8 (internal quotation marks and citation omitted), and there is no reason to burden the courts or citizens of Delaware with a controversy rooted in Korea. *Windt*, 529 F.3d at 193. Nor is there any benefit to a Delaware court considering the substantive law because both parties appear to agree that California law applies, which is evident by CGMMA amending the Complaint to add a "Defamation Per Quod" claim that California, but not Delaware, recognizes. *See* ¶¶ 48-52; *compare Spence v. Funk*, 396 A.2d 967, 971 (Del. 1978) ("[W]hatever the law may be in other jurisdictions, Delaware law does not distinguish between libel Per se and libel Per quod."), *with Henley v. Jacobs*, 2018 WL 10604528, at *4 (N.D. Cal. Dec. 21, 2018) (recognizing libel *per se* and libel *per quod*).

## B.    Rule 12(b)(3) And § 1406(a) Warrant Dismissal For Improper Venue.

The Complaint pleads venue pursuant to 28 U.S.C. § 1391(b)(1)—which authorizes a suit in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"—and § 1391(c)(2) because Netflix is incorporated and subject to personal jurisdiction in Delaware. ¶ 8. But CGMMA can avail itself of § 1391(b)(1) only by

demonstrating that Netflix *and* the fifty Doe Defendants are residents of Delaware, and the Complaint fails to allege that all of the Doe Defendants are residents of Delaware or any facts as to residency whatsoever. *See ACCO Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545, at *5 (D. Del. Jan. 17, 2024) (Williams, J.) (granting dismissal, including because § 1391(b)(1) requires all defendants to reside in Delaware); *Brautigam v. Priest*, 2000 WL 291534, at *3 (D. Del. Mar. 2, 2000) (same); *see also Bunn v. Gleason*, 462 F. Supp. 2d 317, 319 (D. Conn. 2006) (same); *accord Doe v. Benoit*, 2020 WL 11885578, at *6 (D.D.C. June 29, 2020) (same with respect to the District of Columbia). Dismissal, rather than transfer, is warranted because the proper venue is outside of the United States and CGMMA would not face injustice by litigating there. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 162 n.11 (3d Cir. 2012) (affirming dismissal, rather than transfer, of case); *see* 28 U.S.C. § 1406(a).

## C.      Dismissal Is Warranted Based On International Comity.

International comity favors dismissal because CGM already brought, and lost, nearly identical actions in Korea. Exs. 6, 9-10; *PATS Aircraft*, 197 F. Supp. 3d at 673. Dismissal in deference to the judicial acts of another nation is warranted when considering, as discussed above, "the similarities of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." *Id.* at 675. Here, the Injunction Action presented nearly identical issues to a Korean court—which was far better equipped to consider the veracity of statements made about a Korean entity, featured in Korean media, about alleged harm to Korean citizens— and that court reached a fair and final determination that the contents of the Documentary were not false. Ex. 6 at 5. Plaintiff has no right to re-litigate the same issues in a jurisdiction with no connection to the underlying facts.

12

## II.     THE COURT LACKS SUBJECT MATTER JURSIDICITION.

### A.     The Complaint Fails To Allege Citizenship Of The Doe Defendants.

While the Complaint claims "complete diversity among the parties" (¶ 7), it does not allege *any* facts about the citizenship of the fifty Doe Defendants (¶ 9). Under Third Circuit precedent, "Doe parties destroy diversity jurisdiction if their citizenship cannot truthfully be alleged." *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 494 (3d Cir. 2006); *see also Jane Doe L.C.*, 2020 WL 5633363, at *1 n.1 ("[T]he presence of the Doe defendants (as alleged, most likely foreign citizens) calls into question whether or not this matter is properly before this Court – as the Plaintiff is a foreign citizen, even a single foreign defendant defeats diversity for the purposes of subject matter jurisdiction."). Dismissal for lack of subject matter jurisdiction is mandatory where, as here, the Court lacks a basis to find complete diversity. *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995) ("It is axiomatic that the federal judiciary's diversity jurisdiction depends on complete diversity between all plaintiffs and all defendants.").

### B.     CGMMA Lacks Standing To Prosecute This Lawsuit.

The Court should also dismiss for lack of subject matter jurisdiction because CGMMA does not have Article III standing to assert the claims of absent third parties, namely the members of the "Members Association." A membership organization like CGMMA may assert the claims of absent members only if it demonstrates that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288 (3d Cir. 2002) ("It is a well-established tenet of standing that a 'litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" (all citations omitted)). CGMMA has not tried to satisfy that standard, nor could it.

As discussed below, all of the statements are about individuals, not CGMMA as an organization, *infra* at 22-23, and CGMMA does not allege that the individuals who were the subject of the Challenged Statements are members of CGMMA. To the contrary, the Complaint admits that at least some of its members were the *victims* of the conduct described in the Documentary (and may, in fact, be included among the Doe Defendants CGMMA is suing). Even assuming some of CGMMA's members would have "standing to sue in their own right" and the reputational interest they seek to protect were "germane" to CGMMA's "purpose"—neither of which the Complaint alleges—the claim for damages is fatal to standing. *See Pa. Psychiatric Soc'y*, 280 F.3d at 284 ("damages claims usually require significant individual participation, which fatally undercuts a request for associational standing" and "associations cannot generally raise these claims on behalf of their members"). Because CGMMA cannot establish the requirements for associational standing, the Court must dismiss for lack of subject matter jurisdiction.[12]

## III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION.

Both causes of action require dismissal because CGMMA fails to sufficiently plead multiple elements of defamation. *See Henley*, 2018 WL 10604528, at *3 (elements: publication that is false, defamatory, unprivileged, "has a natural tendency to injure or causes special damage" and "of and concerning" plaintiff); *see also Alston v. Christiana Hosp.*, 148 A.3d 1171 (Del. 2016) (elements: "a defamatory communication referring to the plaintiff, publication, the third party's understanding of the communication's defamatory character, and injury").[13]

---

[12] There is no plausible argument that CGMMA can invoke the "third-party" standing because the Complaint does not attempt to satisfy any of the preconditions: "1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a 'close relationship'; and 3) the third party must face some obstacles that prevent it from pursuing its own claims." *Id.* at 288–89.

[13] For the reasons discussed in moving the Court to strike below in Section IV, California law applies to the merits of this action. But the Court need not choose between California or Delaware law to consider the Rule 12(b)(6) arguments because there is no conflict to elements of defamation, with the possible exception of the argument in § III(A).

A.      **CGMMA Fails To Specifically Identify The Challenged Statements.**

To state a claim for defamation, the "words constituting libel or slander must be specifically identified, if not pled verbatim" and a Complaint must "explain in what way those statements or actions are defamatory." *See Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *4 (C.D. Cal. Mar. 30, 2016) (citing cases) (citations omitted) (dismissal because the challenged statements "constitute Plaintiff's own interpretations" rather than actual statements); *see also Tull v. Higgins*, 2021 WL 6116971, at *10 (N.D. Cal. Dec. 27, 2021) (dismissal because complaint "does not identify the specific statements that are allegedly defamatory"). CGMMA "did not attach any of the allegedly defamatory materials" to the Complaint and relies only on excerpts and its own characterizations of the Challenged Statements that are "so general that the court can only speculate about the actual words that constitute the alleged defamatory statements." *Kechara House Buddhist Ass'n Malaysia v. Does*, 2015 WL 5538999, at *2-5 (N.D. Cal. Sept. 18, 2015) (finding "unspecific, general terms" of purportedly defamatory statements "are insufficient as a matter of law"); *see* ¶¶ 11-16, 20-26. The Court should dismiss the case for failure to sufficiently identify the statements CGMMA are challenging as defamatory.

B.      **The Challenged Statements Are Substantially True.**

Accepting *arguendo* that the Challenged Statements state or imply that CGMMA condoned or encouraged the conduct of Pastor Joshua and his followers, CGMMA must demonstrate that those statements "would have a different effect on the mind of the reader from that which the pleaded truth would have produced," i.e., that the followers of Pastor Joshua procured young women for his sexual gratification and beat, kidnapped, threatened, and intimidated individuals they perceived as hostile to him. *Burmeister v. Saldich*, 2023 WL 309044, at *4 (N.D. Cal. Jan. 18, 2023) ("A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." (citation omitted)); *see also*

15

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (no falsity so long as "the substance, the gist, the sting, of the libelous charge be justified" (citation omitted)); *Avenatti*, 2021 WL 3603035, at *3. CGMMA does not allege that any of the following facts are false:[14]

- Pastor Joshua recruited, groomed, and sexually assaulted female members;
- Pastor Joshua was convicted twice of sexually assaulting multiple of his followers;
- Followers of Pastor Joshua, called "informants," helped recruit and groom other female followers, including to be his "brides";
- Certain of Pastor Joshua's sexual assault victims turned into informants who would then help procure additional women for Pastor Joshua's sexual gratification;
- Female followers of Pastor Joshua would take photos or videos—some of which appear in the Documentary—of themselves nude, partially clothed, and/or masturbating to share with Pastor Joshua;
- Certain followers of Pastor Joshua threatened, kidnapped and/or beat individuals who spoke out against Pastor Joshua; and
- The elderly father of a prominent anti-CGM activist, Kim Do-Hyeong ("KDH"), was beaten by individuals with steel pipes, clubs, and baseball bats.

The Challenged Statements are substantially true because an average viewer would see no distinction between the admitted conduct of Pastor Joshua and his followers, and the encouragement of that conduct by the religious organization over which he serves as sole leader and messiah. *See Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1026–27 (C.D. Cal. 2022) (dismissing defamation claims based on substantial truth because no different effect between stating someone is a "recruiter and member of a sex cult" and being a "devoted member of an organization whose leader has been implicated in a range of serious sexual crimes"). Dismissal is warranted because the gist of the Documentary is that Pastor Joshua and his followers engaged in

---

[14] Nor could CGGMA plead the falsity of these facts because it claims it was "not aware of such conduct" (¶ 18) and doing so would be directly contradictory to materials integral to its claims, including the Documentary as a whole and adjudications in Korea. *Stossel v. Meta Platforms, Inc.*, 634 F. Supp. 3d 743, 754 (N.D. Cal. 2022) (courts "need not accept as true allegations contradicting documents that are referenced in the complaint"); *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1027 (C.D. Cal. 2022) (must consider "entirety" of publication).

criminal acts against followers and dissenters, and any purported implication as to CGMMA's approval or ratification of said acts is "too small to count." *See Avenatti*, 2021 WL 3603035, at *3 (dismissing complaint when the plaintiff's case "is just such a minor error"); *Eliott*, 639 F. Supp. 3d at 1026–27.

### C.     The Complaint Fails To Plead Actual Malice.

CGMMA concedes that the actual malice standard applies. ¶¶ 2, 30-40, 45. To survive dismissal, CGMMA is required to plead facts sufficient to show that Netflix published the Challenged Statements with knowledge that they "w[ere] false or with reckless disregard of whether" they were "false or not." *Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*, 2022 WL 1215307, at *6 (N.D. Cal. Apr. 25, 2022) (quoting *Reader's Dig. Ass'n v. Superior Ct.*, 37 Cal. 3d 244, 256 (1984)); *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020). CGMMA utterly fails in this task—instead, it relies primarily on legal conclusions and bald recitations of the actual malice standard, which the Court need not credit and which are insufficient to sustain a motion to dismiss. ¶¶ 36-39; *Tull*, 2021 WL 6116971, at *9; *Avenatti*, 2021 WL 3603035, at *4. Similarly, the Court should discount CGMMA's conclusory assertions of "bias, dishonesty and unethical journalism" (¶ 34) both because they are not factual allegations and because they do not amount to actual malice. *Avenatti*, 2021 WL 3603035, at *4 ("[E]ven an extreme departure from professional standards, without more, will not support a finding of actual malice." (quoting *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001))).

CGMMA does not allege, nor could it, that Netflix knew that any of the Challenged Statements were false, or recklessly disregarded their falsity. CGMMA's allegations turn on whether it is false that CGMMA caused, condoned, facilitated, or encouraged the acts of Pastor Joshua and his followers (assuming, *arguendo*, such implications exist in the Documentary). ¶¶ 17–19, ¶¶ 27–29. Thus, to successfully plead actual malice, CGMMA must allege that Netflix

17

knew (or recklessly disregarded) that CGMMA had not caused, condoned, facilitated, or encouraged the conduct of Pastor Joshua and his followers. The Complaint includes no such allegations. None of the Challenged Statements have anything to do with CGMMA, or its involvement in the conduct, and even if they did, there are no factual allegations demonstrating that Netflix entertained doubts about CGMMA's involvement. CGMMA's failure to plead a single fact to suggest that Netflix even suspected, let alone knew, that CGMMA did not condone or encourage the conduct of their leader and his followers is fatal to its claims.

CGMMA nevertheless asks the Court to infer actual malice based on four factual assertions, none of which is sufficient as a matter of law.

*First,* CGMMA claims that a "forensic laboratory has identified inconsistences and errors which cast doubt over the authenticity and/or accuracy of" an unidentified audio recording of a conversation between Maple and Pastor Joshua "after they had sex." ¶ 31. But the recording is not one of the Challenged Statements, is not referenced in any of the Complaint's characterizations of the Challenged Statements, and does not have anything to do with the purported reason they are defamatory, i.e., what CGMMA condoned, knew, encouraged, or facilitated. Even if it were true that some forensic laboratory "cast doubt" over some unidentified audio recording, that allegation has nothing to do with the specific Challenged Statements, and has no probative value about Netflix's mental state about them. *Resolute Forest Prods. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (actual malice requires pleading "that the speaker itself held the requisite state of mind"); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) ("[G]eneral allegations that a defendant should have known or should have investigated the truth of his or her statements do not adequately plead actual malice."). In addition to the recording's irrelevance, the

18

Complaint also does not allege, as it must, that Netflix ever *knew about* the supposed findings of a "forensic laboratory" or any facts from which the Court could infer such knowledge.

*Second*, CGMMA claims that KDH is not a credible source because of various purported, unspecific "convictions," admissions, apologies, and withdrawn lawsuits. ¶¶ 32, 40. Whether KDH is a reliable source is irrelevant to the majority of the Challenged Statements because only six (out of fifteen) of the Challenged Statements include KDH's statements, and even those only rely on him in part. *See* Ex. 5 at Nos. 2, 3, 4, 10, 12, 14. As to those six statements, there can be no inference of actual malice because KDH is not the only source, as his statements are corroborated *within the immediate surrounding context* by supporting evidence, including in the form of testimonial, video, or documentary evidence. *See Planet Aid, Inc. v. Ctr. for Investigative Reporting*, 2021 WL 1110252, at *18 (N.D. Cal. Mar. 23, 2021) (reliance on known hostile sources did not establish actual malice where defendant "received from other sources information that corroborated or was consistent" with their statements); *see, e.g.*, Ex. 5 at No. 2 (interviews with three victims and video of multiple women without clothing corroborating Pastor Joshua's "mistresses and sex partners"); *id.* at No. 3 (interviews with two victims); *id.* at No. 4 (interviews with three victims and videos of unclothed women); *id.* at No. 10 (news broadcast, testimonial from victim); *id.* at No. 12 (reading from documentary evidence); *id.* at No. 14 (interview with KDH's father, photographs of injuries, and evidence confiscated by police). And even leaving all that aside, even if Netflix had relied on KDH's statements alone without having further investigated his reliability, that decision would be insufficient to establish actual malice. *Resolute Forest Prods.*, 302 F. Supp. 3d at 1018 (actual malice is "not measured by whether a reasonably prudent man would have published or would have investigated before publishing" (citation omitted)).

*Third*, CGMMA asks the Court to infer actual malice as to all of the Challenged Statements because it claims that the Documentary mistranslated the statement "Don't touch this, because this is God's" and another statement to suggest Pastor Joshua was "boasting of having 50 orgasms," added "[s]uggestive female moans" and "manipulated" audio track to "suggest that Pastor Joshua was referring to himself as God." ¶ 33. Again, none of the Challenged Statements involves these supposed mistranslations or manipulations. Even if they were relevant to this action, CGMMA never alleges Netflix was aware of these specific issues.

*Fourth, and finally*, the Injunction Litigation—which CGMMA asserts demonstrates actual malice because Netflix did not "correct the falsities described in CGM's application for an injunction" (¶ 37)—eviscerates, rather than supports, any suggestion of actual malice. In that decision, a Korean court expressly *rejected* CGM's cries of falsity, and found the Documentary based on "a considerable amount of objective and subjective materials" and that its makers "confirmed and verified the facts through confirmed relevant rulings, existing media reports and published materials, and interviews with interested parties, etc., and cross-checked with such materials as press release of the former members, Cafe postings, and various videos and photos." Ex. 6 at 5. Both that finding, and the underlying reasoning, are fatal to CGMMA's claims of actual malice.

### D.      The Challenged Statements Are Not "Of And Concerning" CGMMA.

The Complaint warrants dismissal because CGMMA fails to "effectively plead that the statement at issue either expressly mentions [it] or refers to [it] by reasonable implication." *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (1986) ("To allow a plaintiff who is not identified, either expressly or by clear implication, to institute such an action poses an unjustifiable threat to society."); *Henley*, 2018 WL 10604528, at *3 ("by name or clear implication"); *see also SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008) ("[W]hether statements can be

reasonably interpreted as referring to plaintiffs is a question of law for the court.").[15] None of the Challenged Statements refer to CGMMA by name, and neither the audio nor the subtitles nor any of the images shown in the Documentary ever use the term CGMMA. *See generally* Exs. 1–5. Without any explicit reference, CGMMA must demonstrate that the Challenged Statements not only are "capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party." *Henley*, 2018 WL 10604528, at *6 (quoting *SDV*, 522 F.3d at 960). The Complaint does not allege that the average viewer is aware of the "Members Association" or "actually" understood the Challenged Statements to refer to CGMMA. *Cf N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 231 (E.D.N.Y. 2020) (dismissing complaint for failure to "plausibly allege that the average consumer/reader is aware of any olive oil trade association, or that he or she would necessarily conclude that the reference" to "trade associations" was to plaintiff). The Court need not engage in any further analysis to dismiss the Complaint.

Any attempt by CGMMA to claim that it is the same entity as CGM, and that the Documentary is of and concerning CGM, also would fail. Notwithstanding CGMMA's attempt to short-hand itself as "CGM," the CGMMA (the "Members Association") is the named Plaintiff, not CGM. And, accepting the allegations of the Complaint as true, CGMMA is a distinct legal entity as a "nonprofit corporation organized and existing under the laws of Korea with its principal place of business in Seoul, Korea." ¶ 4. While the Complaint claims that CGMMA "operates" as CGM

---

[15] As the Supreme Court of California cautioned in *Blatty*: "Statements about a religious, ethnic, or political group could invite thousands of lawsuits from disgruntled members of these groups claiming that the portrayal was inaccurate and thus libelous. Such suits would be especially damaging to the media, and could result in the public receiving less information about topics of general concern." 42 Cal. 3d at 1044 (citations omitted) (of-and-concerning requirement prohibits defamation claims by "those who merely complain of nonspecific statements that they believe cause them some hurt").

(¶ 1), it does not allege that the average viewer would understand any reference to "CGM" to refer to CGMMA, or provide any reasonable basis to draw such an inference.

Even if there were any reason to infer that CGMMA is the same as CGM, the Challenged Statements do not mention CGM by name. The only time that the term "Christian Gospel Mission" appears in the Documentary is in the third episode when a voiceover of a newscast refers to Pastor Joshua as "the leader of JMS, also known as Christian Gospel Mission." *See generally* Exs. 1–5; Ex. 4 at 20:35:21. There is no allegation or basis from which to infer that any viewer of the first two episodes would understand any of the statements in those episodes to refer to CGM. Nor is there any reason to infer that an average viewer of any of the episodes would understand that each (let alone every) reference to JMS referred to CGM. Moreover, such an inference would be contradictory to the pleading itself, which alleges in a footnote that the Documentary "[c]onfusingly" uses the term JMS "to refer sometimes to Pastor Joshua and sometimes to CGM." ¶ 10 n.2. CGMMA's admission that CGM only "sometimes" refers to itself as "Jesus Morning Star" and that it is "confusing[]" when JMS refers to CGM is fatal to the of-and-concerning inquiry. *Murphy v. King Size Prods.*, 2022 WL 2286474, at *3 (C.D. Cal. Mar. 17, 2022) (a right of action exists "only when the plaintiff is the direct object of criticism and there is no confusion that the plaintiff is the one being criticized" (citation omitted)).

Finally, even if CGMMA could survive each of those layers of analysis, it still could not demonstrate that the Challenged Statements are about any organization at all rather than about JMS *the individual* (i.e., Pastor Joshua) and/or certain of his individual followers. The face of the Challenged Statements refer specifically to Pastor Joshua, his informants, or specific individual followers who engaged in particular conduct. *See* Ex. 5 Nos. 1–4 (referring to acts by Pastor Joshua and his informants to procure women for his sexual gratification); *id.* at Nos. 5–7 (referring to

Maple or Amy); *id.* at No. 9 (referring to unknown person who was in a car, and an unknown person who knocked on a door); *id.* at No. 10 (referring to specific individuals who kidnapped and beat Ms. Hwang); *id.* at No. 11 (referring to members of East-West Christian Union); *id.* at No. 12 (reading Pastor Joshua's own words from documentary evidence); *id.* No. 13 (referring to specific individuals who attacked Kim Hyeong-Jin); *id.* at No. 14 (referring to specific individuals who attacked Kim Min-Seok). Only Challenged Statements 8 and 10 arguably refer to any entity, rather than individuals, and both of those refer to "JMS Hong Kong"—an entity that CGMMA has not pleaded can be or actually has been understood to refer to CGMMA or CGM. *See Mullins v. Brando*, 13 Cal. App. 3d 409, 422 (1970) (dismissing claim brought by police association, while allowing claims by individual officers, where "there is absolutely nothing in defendant's statement or in any innuendo or inducement pleaded which by any stretch of the imagination can be construed as defamatory of the organization"); *see also Friends of Falun Gong v. Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 283 (E.D.N.Y. 2003) (no "of and concerning" because "there are no references to an organization of New York-based Falun Gong practitioners, or to any organization of Falun Gong practitioners at all"), *aff'd sub nom. Friends of Gong v. Pac. Culture*, 109 F. App'x 442 (2d Cir. 2004). Dismissal is warranted because CGMMA has not been "the direct object of criticism" and cannot satisfy the "of and concerning" requirement merely by complaining "of nonspecific statements that they believe cause them some hurt." *Blatty*, 42 Cal. 3d at 1044.

### E.   The Challenged Statements Are Not Defamatory As A Matter Of Law.

The Complaint's first count is for defamation *per se*, which requires pleading that the statement is "defamatory 'on its face'" without any "'need for extrinsic evidence to explain the statement's defamatory nature.'" *Eliott*, 639 F. Supp. 3d at 1026 (citations omitted). The failure of any of the Challenged Statements to refer to CGMMA on their face, as explained above, defeats Count I without further analysis. But leaving the "of and concerning" limitation aside, none of the

Challenged Statements on their face accuse CGMMA of having "caused, condoned, encouraged or facilitated its members" to "procure young women for its leader's sexual gratification" or to "beat, kidnap, threaten and intimidate persons whom it perceived to be hostile." The fact that none of the Challenged Statements claim that CGMMA was involved in that conduct defeats any claim that the Challenged Statements are defamatory *per se* and warrants dismissal of Count I. *See Mahoney v. Meta Platforms, Inc.*, -- F. Supp. 3d --, 2024 WL 68550, at *3–5 (N.D. Cal. Jan. 6, 2024).

Count II, CGMMA's alternative defamatory *per quod* claim, depends upon a finding that the Challenged Statements "portray CGM as a corrupt and criminal organization" by implying that CGMMA "caused, condoned, encouraged or facilitated" its members to procure women or to engage in violence. ¶¶ 2-3, 17. To avoid dismissal, CGMMA must demonstrate that a viewer "would be able to recognize" that the Challenged Statements carry that defamatory meaning "by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons." *EPIS, Inc. v. Fid. & Guar. Life Ins. Co.¸* 156 F. Supp. 2d 1116, 1130 (N.D. Cal. 2001) (citation omitted); *see Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *10 (N.D. Cal. Dec. 2, 2015) (plaintiff "must plead and prove that as used, the words had a particular meaning, or 'innuendo' which makes them defamatory" (citation omitted)). CGMMA has not alleged any special facts or circumstances, or extrinsic evidence, demonstrating that a viewer would have understood the Challenged Statements to carry the defamatory meaning CGMMA claims, i.e., that *CGMMA* is responsible for the wrongful conduct as opposed to Pastor Joshua or any of the individuals who are the subject of the statements. And there is no reason for the Court to find that any viewer would understand the Challenged Statements to suggest that CGMMA "participated in or was involved

24

in any abuse" itself. *Eliott*, 639 F. Supp. 3d at 1026 (no defamation *per quod* because a "'plaintiff may not construct an actionable statement by reading whatever implication it wishes' into defendant's work" (quoting *Metabolife*, 264 F.3d at 854).[16]

## IV. THE COURT SHOULD STRIKE THE COMPLAINT AND SHIFT COSTS TO THE PLAINTIFF PURSUANT TO CALIFORNIA'S ANTI-SLAPP ACT.

### A. California Law Applies To The Substantive Claims In The Lawsuit.

To the extent this case remains in a United States court, the requisite conflicts-of-law analysis favors the application of California law because California has the "most significant relationship" to the parties' claims. *See* Restatement (Second) of Conflict of Laws ("Restatement") § 145(1) (1971) (in tort cases, applicable law is that of state with the "most significant relationship" to the parties and issues); *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764 (D. Del. 2012) (Delaware follows conflicts-of-law provisions in the Restatement).[17]

The question before the Court, therefore, is whether to apply Delaware or California law. CGMMA implicitly concedes the applicability of California law by bringing a claim for defamation *per quod*—which California, not Delaware, recognizes. *See* ¶¶ 48-52; *see supra* p. 11. By relying on California law, CGMMA has "implicitly acquiesced" to its application. *Soojung Jang v. Trs. Of St. Johnsbury Acad.*, 331 F. Supp. 3d 312, 329–30 (D. Vt. 2018) (briefing and

---

[16] If Plaintiff amends the Complaint to specifically identify defamatory statements, Netflix reserves the right to raise additional defenses, including that the identified statements are constitutionally protected opinion or hyperbole.

[17] Both parties appear to agree that, were the case to stay in the United States, the law of CGMMA's domicile Korea should not apply to this case as filed. *See supra* at 11. Even without agreement, any presumptive significance of a plaintiff's domicile is inapplicable here because applying foreign law would contravene the justified expectations of Netflix as a U.S.-based and incorporated corporation, including the First Amendment protections afforded to U.S. citizens in its courts. *See DeRoburt v. Gannett Co.*, 83 F.R.D. 574, 580 (D. Haw. 1979) ("[P]ublic policy of the United States requires the application of the First Amendment to libel cases brought in the courts of this country; defendants in this case therefore justifiably expect constitutional protection of their free expression.").

arguing Vermont defamation law "implicitly acquiesced to the application of Vermont law"). The Restatement, and the factors it articulates, necessitates the same conclusion because California has the "more significant relationship to the parties and the claims" here. *Evans*, 2023 WL 5275383, at *3; *Johnson v. Warner Bros. Ent., Inc.*, 2017 WL 588714, at *3 (D. Del. Feb. 14, 2017).[18] The sole connection to Delaware is that Netflix is incorporated here. ¶ 5. But Netflix is headquartered in California, and to the extent any decisions regarding the distribution or broadcast of the Documentary occurred in the United States, they took place in California. *See Evans*, 2023 WL 5275383, at *4 (the "decision to publish the Article was likely made in New York because Huffpost's headquarters is located in New York").

California has a significant interest in cases implicating the principles animating its Anti-SLAPP Act, as this Court recognized in *Evans*, 2023 WL 5275383, when it applied the law of New York (the defendant's principal place of business) as opposed to the law of Mississippi (plaintiff's domicile) or Delaware (the defendant's place of incorporation). *Id*. at *4–5. In that case, the Court explained that New York's anti-SLAPP statute was designed to "provide the utmost protection for the free exercise of speech petition, and association rights," which implicated "strong policy interests in regulating its media and the conduct of its citizens" that outweighed Mississippi's interest in protecting its citizens. *Id.* at *4–5 (citations omitted). As in *Evans*, California has a strong interest in enforcing its Anti-SLAPP Act to protect media corporations headquartered in its

---

[18] Courts consider the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, the place where the relationship, if any, between the parties is centered, as well as the states' competing interests, including: needs of the interstate and international systems; relevant policies of the forum and the other interested states and the relative interests of those states in the determination of the particular issue; protection of justified expectations; basic policies underlying the particular field of law, certainty, predictability and uniformity of result; and ease in determination and application of the law to be applied. Restatement (Second) of Conflict of Laws §§ 145(2)(a)–(d); *id.* at §§ 6(2)(a)–(g).

state, like Netflix, and ensuring the broadest form of such. *See Sarver v. Chartier*, 813 F.3d 891, 899 (9th Cir. 2016) ("California has expressed a strong interest in enforcing its anti-SLAPP law" and courts are "instructed to construe California's statute 'broadly.'" (citations omitted)). Delaware's anti-SLAPP statute does not provide the same broad protection and therefore has an inferior interest. *Compare, e.g.*, Cal. Civ. Proc. Code § 425.16(a), *with* Del. Code tit. 10 § 8136(a)(4); *see Evans*, 2023 WL 5275383, at *5.

### B.    California's Anti-SLAPP Act Warrants Striking The Complaint.

The Court should strike the Complaint pursuant to California's Anti-SLAPP Act because (1) Netflix has made a prima facie showing "that the lawsuit arises from an act in furtherance of its First Amendment right to free speech" and (2) CGMMA will be unable to meet its burden to "then show a reasonable probability that it will prevail on its claim." *Peterson v. Sutter Med. Found.*, 615 F. Supp. 3d 1097, 1107 (N.D. Cal. 2022); *see also Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013).

1.    <u>The Complaint arises from Netflix exercising its First Amendment rights</u>.

Netflix easily meets its burden to demonstrate that CGMMA's claims arise from an act in furtherance of its free speech rights for two independent reasons.

*First*, Netflix meets § 425.16(e)(3), which defines an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." The Documentary surely is both a written and oral statement, which is available to the public. *See* ¶ 6 (alleging that Netflix "acquired global rights" to the Documentary and is distributing "worldwide to its hundreds of millions of subscribers and their guests on its ubiquitous streaming platform"); *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1158 (2021) (television episode broadcast on

television "to hundreds of thousands, if not millions, of viewers" qualifies as "dissemination in a place open to the public or in a public forum"). Further, the Documentary concerns an issue of public interest because it addresses a "person or entity in the public eye" (Pastor Joshua, CGM, CGMMA, or whatever other name he uses to describe his entity) whose conduct "could directly affect a large number of people beyond the direct participants" (purported CGM followers in "more than 60 countries"). *Eliott*, 639 F. Supp. 3d at 1024; ¶ 1. It also focuses on a "topic of widespread, public interest" (including Pastor Joshua's criminal acts and prosecutions). *Eliott*, 639 F. Supp. 3d at 1024 (concluding documentary about NXIVM's leadership's criminal prosecutions to be matters of public interest); *see also Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628 (1996) (widespread media coverage of the Church of Scientology and associated controversies were matters of public interest). A Korean court already determined that the contents of the Documentary are matters of public interest:

> [Pastor Joshua], is the leader of a religious sect and has caused great social repercussions also in the past, so he can be considered a public figure. The program in this case, which deals with the charge of sexual crimes of [Pastor Joshua] against believers, can be sufficiently seen to have been produced for the purpose of public interest to prevent the repetition of similar damage by raising social awareness about the relevant contents.

Ex. 6 at 6.

Although even one prong is sufficient, Netflix also meets § 425.16(e)(4), which applies the Anti-SLAPP Act to "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Netflix's distribution of the Documentary is the type of "communicative" activity that courts find are made in furtherance of free speech rights. *See Eliott*, 639 F. Supp. 3d at 1023–24 (first prong met when "activity is 'communicative'") (quoting *Hilton v. Hallmark Cards*, 599 F.3d 894, 903–04 (9th Cir. 2010)); *Doe*, 730 F.3d at 953 (defendants' acts of "interviewing

28

Plaintiff for a documentary television show and broadcasting that interview" were in furtherance of free speech rights); *Taus v. Loftus*, 40 Cal. 4th 683, 713, 727–29 (2007) (publishing article and the investigation conducted in connection with the article constituted protected activity); *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1343–47 (2007) (television broadcast and an interview in connection with the broadcast constituted protected activity). For the reasons discussed above, the Documentary is about an issue of public interest.

2.     <u>Plaintiff cannot demonstrate a probability of success on the merits.</u>

Because the Documentary is the type of speech protected by California's Anti-SLAPP Act, the burden shifts to CGMMA to demonstrate that its Complaint survives application of the Rule 12(b)(6) standard. *Eliott*, 639 F. Supp. 3d at 1023 ("[T]o harmonize California's anti-SLAPP statute with the Federal Rules of Civil Procedure, the Ninth Circuit has instructed" district courts to conduct their "analysis under a Rule 12(b)(6) standard" when the motion is based on legal deficiencies in a complaint (citations omitted)). For all the reasons discussed above, *supra* § III, CGMMA will be unable to demonstrate a probability of success on the merits.

3.     <u>The Court should award Netflix its attorney's fees and costs.</u>

A defendant that prevails on a motion to strike under California's Anti-SLAPP Act is "entitled to recover that defendant's attorney's fees and costs." § 425.16(c)(1). Netflix respectfully requests permission to submit the specific amount of attorney's fees and costs within 14 days of an order granting the motion to strike. *See, e.g.*, *Intermarketing Media, LLC v. Barlow*, 2021 WL 6102516, at *1–2 (C.D. Cal. Nov. 4, 2021) (awarding defendants all reasonable attorneys' fees associated with the entirety of defendants' motion to strike); *Reade v. N.Y. Times Co.*, 2023 WL 2602296, at *2 (E.D. Cal. Mar. 22, 2023) (same).

## **CONCLUSION**

For the reasons discussed herein, the Court should dismiss the Complaint based on *forum non conveniens*, Rule 12(b)(3) and § 1406(a), international comity, lack of subject matter jurisdiction, or for failure to state a claim pursuant to Rule 12(b)(6). In addition, the Court should grant Netflix's motion to strike the Complaint and award Netflix attorney's fees and costs in connection with filing this motion.


OF COUNSEL:

Michael Gottlieb (admitted *pro hac vice*)
Meryl Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

/s/ *Chad M. Shandler*
Chad M. Shandler (#3796)
Jessica E. Blau (#7163)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
shandler@rlf.com
blau@rlf.com


*Attorneys for Defendant, Netflix, Inc.*

Dated: July 24, 2024