# EXHIBIT 6

# Seoul Western District Court

## Civil Division 21

## Decision

This is a certified copy.
March 2, 2023 Seoul
Western District Court, Court
Clerk - Park Yoon //Sealed//

| | |
|---|---|
| Case | 2023Kahap50074 Temporary Injunction of broadcasting |
| Creditors | 1. Christian Gospel Mission |

20 Dolmaegi-gil, Jinsan-myeon, Geumsan-gun, Chungnam
Seokmak-ri, World Mission Headquarters)

   Representative Yang Seung-nam

2. Jeong Myeong-seok

   -Seokmak-ri, Jinsan-myeon, Geumsan-gun, Chungcheongnam-do 144-1

Creditors: Litigation Representative: Pyeongsan Law Firm LLP, Attorneys in Charge
Choi Chang-seok and Go Heung-gyu

| | |
|---|---|
| Debtor | Munhwa Broadcasting Co., Ltd. |

267 Seongam-ro, Mapo-gu, Seoul (Sangam-dong)

CEO Park Seong-je

Litigation representative:  Deoksu Law Firm  Attorney in charge Jeong Min-young

Debtor's supplementary participant Netflix Worldwide Entertainment LLC

10F 5808 W. Sunset Boulevard, Los Angeles, California 90028, USA

CEO Wade Gentz

Litigation Representative  Attorneys: Jeong Jun-hwa, Yang Jae-ho, Lee Geum-seon, Kang Han

# Statement of Decision

1. All claims by creditors are dismissed.

2. The creditors are responsible for the litigation costs, including costs due to supplementary participation.

# Gist of claims

The debtor may not broadcast on the public TV or Internet media the 8 episodes of the program: "In the Name of God: A Holy Betrayal," which is scheduled to be broadcast from around March 3, 2023.  If the debtor violates the above, the debtor shall pay the creditors 500 million won per the incident of violation [Creditors are preliminary seeking  the injunction on broadcasting and indirect enforcement regarding the details of the list in the Annex related to creditors in the 8-episode program: "In the Name of God: A Holy Betrayal," which is scheduled to be broadcast from around March 3, 2023.   However, this may not be regarded as preliminary injunction as it is nothing but the motion made by partially reducing the quantity while the the grounds for the motion are the same as the peripheral motion (See Supreme Court Decision 2016Da 225353 sentenced on February 21, 2017, etc.)].

# Grounds

1. **Explained facts**

   The following facts are explained when synthesizing the gist of the entire record and examination.

   A. The creditor Christian Gospel Mission (hereinafter referred to as the 'Creditor Mission') is a religious organization founded by the creditor Jung Myung-seok, also known as 'JMS', who is the leader of the sect or president of the creditor mission.

B. The debtor is a broadcasting company that operates MBC, a terrestrial channel and others. Debtor's Supplementary Participant is an Internet-based global entertainment company, and the debtor and debtor's supplementary participant entered into a production investment contract in around 2020 for the 8-episode program entitled: 'In the Name of God: A Holy Betrayal (hereinafter referred to as 'the program in this case')[1].

C. The program in this case, which was produced over a period of about 2 years by the debtor in accordance with the production investment contract, is scheduled to be released on March 3, 2023 in 241 countries through the debtor's supplementary participant. The program in this case deals with the details related to 4 religious leaders (including creditors Jeong Myeong-seok, Lee Jae-rok, Kim Ki-soon, and Park Soon-ja).

D. Creditors filed a lawsuit against the debtor on September 25, 2019 complaining that the debtor should pay damage because the debtor damaged the reputation of the creditors as the details related to the creditors were false in the preview and the main broadcasting of 'Please Find Our Daughter' part in the program "True Story Expedition Team" produced by the debtor and broadcast on March 27, 2019. The appeal is pending at the Seoul High Court. (Seoul High Court 2022Na2048759 Compensation for Damages, hereinafter referred to as 'a related civil case). Further, the debtor Jeong Myeong-seok is charged with quasi-rape of 2 foreign women on October 28 and the trial is currently pending (Daejon District Court 2022gohap443, hereinafter referred to as 'a relevant criminal case).

F. The contents related to the creditor out of the program in this case are as follows: ① the re-illumination of priors where the creditor Jeong Myeong-seok was sentenced to 10 years in prison on the charges of rape and assault, quasi-rape, and forceful molestation, etc. in the case 2008No2199 sentenced on February 10, 2009 (creditor Jeong Myeong-seok appealed against it, but the Supreme Court dismissed the appeal on April 23, 2009 and he was convicted on the same day); and ② the contents regarding Creditor Jeong Myeong-seok's sexual crime against 2 foreign women happened after he was released from prison on February 18, 2018.

2. **Gist of Creditors' Arguments**

The program in this case relies on one-sided stories of informants and photos that seem to support them, and distorts as if the creditor Jeong Myeong-seok's sexual harassment of church members were true. Creditors have already filed a claim for damages against the debtor's false report.  Not only is the appeal still pending, but creditor Jeong Myeong-seok has been charged on sexual crimes against 2 foreign women and is pleading Not Guilty in the pending criminal proceedings.  However, the program in this case conclusively expresses false contents related to this case, and it is clear that the debtor decided on the contests of the program in this case as well as the time to broadcast it with the intention to influence the relevant civil and criminal trials by mobilizing unfavorable public opinion against creditor Jeong Myeong-seok. If the program in this case is broadcast as is, the creditors' right to a fair trial will be violated, and the creditor's honor will also be seriously violated. Therefore, we seek a temporary injunction on the broadcasting of the program in this case as well as  indirect enforcement.[1]

3. **Judgment**

A. Related legal principles

Pre-suppression of expression is  permitted only when strict and clear requirements are met in the light of  Article 21 Paragraph 2 of the Constitution, which guarantees freedom of expression and prohibits censorship.  The prohibition of reporting and publication regarding the media and publication constitutes the above pre-suppression of expression and may not be permitted in principle. However, even in such cases, when the content of the expression is not true, or it is a matter of public understanding but the purpose is not only for public interest,

---

[1] The legal representatives of the creditors repeatedly emphasized that they are seeking a temporary disposition of prohibiting the broadcasting of the part for which the trial is pending on whether it is true or not, at least until  the sentencing or conviction at the relevant civil and criminal trials, even if not all of the claims in this case is sustained.

and when there is a risk of causing significant and irreparable damage to the victim, it is clear that the value of the expression is not superior to the reputation of the victim, and the need for prohibition is also recognized as an effective and appropriate remedy for it, prior prohibition is permitted as an exception only when these substantive requirements are met (See Supreme Court Decision 2003Ma1477 of January 17, 2005).

B. Judgment

1)　　In light of the following facts as found by the record of this case, it is not sufficient to find that there is the need for protection and the right for protection for the creditors to seek the prohibition of all or part of the program in this case against the debtor just based on the materials submitted by the creditors.

A) The creditors claim that all information about the creditors in the program in this case is false. But the debtor appears to have collected a considerable amount of objective and subjective materials and then produced the program in this case based thereon. It is difficult to conclude that the main contents related to creditors in the program in this case are not true based only on the materials submitted by creditors to date.

Regarding past incidents in the program in this case, the debtor seems to have confirmed and verified the facts through confirmed relevant rulings, existing media reports and published materials, and interviews with interested parties, etc., and cross-checked with such materials as press release of the former members, Cafe postings, and various videos and photos. In addition, as to the charge of sexual crimes against foreign women related to the currently pending criminal trial, it is difficult to say that the contents of the interview with the accusers are false in the light of the facts that: the debtor conducted face-to-face interviews with the accusers, and there is a file that recorded conversations between one of the accusers and the creditor Jeong Myeong-seok; and the letters exchanged between the above accuser and the creditor Jeong Myeong-seok are consistent with the accuser's statements, The debtor also gave creditors a kind of an opportunity to raise an objection.

B) Furthermore, it is difficult to say that the content of the program in this case is not related to the public understanding or that its purpose is not related to the public interest. The creditor Jeong Myeong-seok is the leader of a religious sect and has caused great social repercussions also in the past, so he can be considered a public figure. The program in this case, which deals with the charge of sexual crimes of the creditor Jeong Myeong-seok against believers, can be sufficiently seen to have been produced for the purpose of public interest to prevent the repetition of similar damage by raising social awareness about the relevant contents.

c) Creditors are concerned that the airing of the program in this case will affect the conclusion of related civil and criminal rulings, but the related civil case is a claim for damages related to a program that has already been broadcast, and therefore it is difficult to believe that there is a risk that the airing of the program in this case will influence the conclusion of the case. In addition, regarding the criminal case part out of the program in this case, the accusers have already held a press conference on March 16, 2022 and explained the damage in detail.  Not only was the content widely reported through numerous media, but considering the strict rules of evidence in criminal proceedings, it is difficult to hastily conclude that the program in this case has an undue influence on the related criminal case.

2)   The creditors also seek indirect enforcement to force on the debtor the duty to prohibit broadcasting of the program in this case, but as discussed before,  we do not accept the creditors' claim for injunction of the broadcasting of the program in this case, and therefore we do not accept the creditors' claim for indirect enforcement which is based on  the premise of injunction of the broadcasting of the  program in this case.

4. Conclusion

Then, all of the creditors' claims in this case are dismissed as they are without merit and it is decided as in the statement of decision.

March 2, 2023

Presiding judge    Judge  Lim Jeong-yeop    

Judge Cho Soo-shin    

Judge  Lee A-young    

# List of Appendix

**1.** Contents to prohibit from broadcasting

   **1.** The contents for which there are conflicts over facts in case 2020Na2048759 of Seoul High Court between the claimant and the respondent

   **2.** The contents that may have an impact on the prosecution and sentencing in the case of the claimant Jeong Myeong-seok, case number 2022Gohap443 of Daejon District Court



100 Park Avenue, 16th Fl
New York, NY 10017
www.consortra.com

STATE of NEW YORK         )
                          )            ss:
COUNTY of NEW YORK        )

### ***CERTIFICATE OF ACCURACY***

This is to certify that the attached document, "1-1. [Preliminary Injunction Decision] Seoul Western District Court Decision 2023KaHap50074 dated March 2, 2023-certified translation" -- originally written in Korean is to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 7/18/2024

Heather Cameron
Project Manager
Consortra Translations

Sworn to and signed before ME
This 18th day of July, 2024

Notary Public



New York, NY  |  Washington DC  |  Houston, TX  |  San Francisco, CA  |  London

# EXHIBIT 7



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

# SEOUL ① HIGH COURT

# CRIMINAL AFFAIRS 9

# COURT DECISION

| | |
|---|---|
| Case | 2008NO2199 |
| | A. Rape resulting in injury (Partially subsidiary charge: Quasi-rape resulting in injury) |
| | B. Rape (Recognized charge: Quasi-Rape) |
| | C. Indecent Act by Compulsion (Partially recognized charge: Quasi-Indecent Act by Compulsion) |
| | D. Quasi-Indecent Act by Compulsion |
| Accused | A |
| Appellant | Accused and Prosecution |
| Prosecution | HWANG, Injung |
| Attorneys | 1. B Law |
| | Representing Attorneys: C and D |
| | 2. E Law |
| | Representing Attorneys: F and G |
| | 3. H Law |
| | Representing Attorneys: I and J |
| | 4. K Law |
| | Representing Attorneys: L and M |
| | 5. Attorney N |
| Original Decision | Ruled by the Seoul Central District Court on 12 August 2008; 2008GOHAP225 |
| Ruling Date | 10 Feb 2009 |



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site. Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

JUDICIARY DECISION

1. Aside from the part of the original judgment dismissing the indictment, the remaining decisions are hereby overturned. The Accused is sentenced to 10 years of imprisonment. The 174 days of detention prior to the original judgment shall be included in this sentence.

2. The prosecutor's appeal on the dismissed original judgment is dismissed.

REASONS

I. Victim O

1. Regarding the primary charge of indecent act by compulsion

A. Charge of the above allegation

① Starting around 1980, the Accused engaged in missionary work, using "30 Principles" as the fundamental doctrine, which summarized and cited the Unification Church's Divine Principle to reinterpret the Bible. In 1986, he organized a religious group named 'P' [commonly known as Q], uniting followers who believed in his teachings. Subsequently, he reorganized its subsidiary organization from R to S, then renamed it to T in December 1989, U in 1996, and V in October 1999. Throughout these changes, the Accused, referred to as 'Teacher,' maintained his position as the leader or president of the religious group, exercising absolute religious authority.

The above "30 Principles" primarily summarized and cited the teachings of the Unification Church's Divine Principle, explaining the Bible through symbols and metaphors. Its main content suggested that Jesus would return to this world with new and astonishing teachings, leading a multitude of followers. It strongly implied that the Accused was this returning Jesus. As a result, the followers of the group



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

believed him to be the Messiah, openly confessing his messianic status in his presence. The Accused himself publicly claimed, "I am the returning Jesus sent by God. I can bless or curse people and heal all diseases," thereby openly identifying himself as Jesus.

Additionally, the leaders of V deified the Accused and sanctified his birthplace in W, Chungnam, stating that "the love of Teacher A, the Messiah, is an exclusive act of grace, ensuring salvation in the heavenly book of life." They brainwashed the followers, instructing them to accept any act by the Teacher as a test of faith. The Accused also reinforced this by saying, "God has granted me all the women in the world," "Jesus rejoices through my body," and "Defying me will bring great trouble." As a result, many female followers, already subjected to thorough religious indoctrination, lost their capacity for logical judgment in the cultic atmosphere and, as if hypnotized, were subjected to rape or forcible indecent acts by the Accused.

In the meantime, on 6 January 1999, following the kidnapping of X, who had defected from U, by other followers of U, television programs on SBS and MBC began airing reports titled "Kidnapping of a Defector" and "Sex Scandal in Religious Group," exposing the Accused's sexual misconduct. In response, the Accused, fearing that his absolute authority would be undermined and that followers would begin to doubt and defy him, warned his followers not to believe the broadcasts, claiming they were false accusations and slander. He further threatened, "Anyone who watches the broadcasts will face indefinite fasting," and "Entering and reading articles on the website (Y), which exposes the Accused's misconduct, will result in losing salvation." These threats were aimed at reinforcing the absolute obedience of his followers.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

Meanwhile, following accusations from some defected followers since 2000, an investigation by authorities was conducted, and on 16 March 2001, the Accused fled abroad. From his secret location overseas, he continued to exert influence on the domestic followers of V through internet broadcasts, instructing his followers to always obey him. He maintained his influence over the young female followers by asserting his status as the returning Jesus and warning that any disobedience or doubt would result in curses or loss of salvation. Subsequently, he set his mind to summon brainwashed female followers to his secret location abroad and sexually assault them.

② Victim O (female, 23) was a university student who joined the V religious group around June 2000 through a friend's introduction. By 4 July 2001, she had completed the 30 Principles course and received baptism. Under the Accused's direction and continuous education from other followers, she came to believe that the Accused would bring her salvation. She was led to believe that disobedience or doubt would result in losing salvation, thus submitting to the Accused's absolute authority.

③ Around 22 August 2001, the Accused brought the victim to an undisclosed resort in Kuala Lumpur, Malaysia, where he was residing. He made the victim stay there for a week with other followers and, with the assistance of his adherents, educated the victim to unconditionally obey him.

On 30 August 2001, at approximately 19:00 PM, the Accused summoned female followers Z and AA, along with the victim, to the room where he and his adherents were staying at the resort. In the resort room, the Accused first informed another female follower, who was undergoing a preliminary examination, that she had cancer. He showed the victim this scene, where the female follower left the room in tears, to display his purported omniscient insight, claiming that he could diagnose cancer and cure all diseases without any medical equipment. After this display of supposed abilities, he brought the



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

victim into the room along with Z and two other female followers and conducted simultaneous interviews. This created an atmosphere where the victim felt compelled to obey any of the Accused's instructions. The Accused made it clear that refusing his instructions would result in the victim losing salvation, facing death, or suffering serious bodily harm. Under this coercion, he led the victim into the bathroom for a physical examination along with Z and AA.

The Accused told the victim that if she did not undergo a thorough vaginal cleansing, she would get cancer. He then made her undress and, using a hose with a shower head removed, inserted his finger and poured large amounts of water over her genital area while claiming to inspect her for signs of cancer, tumors, or other abnormalities. Following this, he ordered her to lie on the bed and, while she was lying there, he unhooked her bra and massaged her breasts. He then inserted his right finger into her genital area, claiming it was part of the examination.

④ Through these actions, the Accused forcibly molested the victim.

**B. Summary of Original Decision**

Even if based on the stated facts of the prosecution, it is unclear whether the Accused, either directly or through his followers, displayed any behavior that would have been sufficiently threatening to cause the victim significant fear of reprisal.

According to the victim's testimony, during the interview, the Accused stated, "I have a medical doctorate and can conduct examinations. I will examine you through the power of God." The examination began, and there was no specific threat or violence involved in making the victim undress for a thorough vaginal cleansing. The victim's testimony also does not conclusively prove that the Accused made any threats to cause her significant fear of reprisal.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

Therefore, it is difficult to accept that the Accused subjected the victim to any coercion or threatening behavior to an extent that would cause significant fear of reprisal, as alleged. There is no other evidence to support this claim.

Therefore, as the primary charge lacks proof of criminal facts, a verdict of not guilty is rendered pursuant to the latter part of Article 325 of the Criminal Procedure Act.

**C. Summary of Prosecutor's Appeal**

Even if it is determined that there were no explicit acts of violence or threats by the Accused, the Accused's actions constitute forcible molestation because they involved acts of violence and intimidation against the victim's will. Therefore, the above primary charge should be valid.

**D. ①'s Judgment**

As thoroughly examined in the original trial, and based on the victim's testimony at the investigative agency and during the trial, even if the victim's testimony is credible, there is no evidence proving that the Accused subjected the victim to threats severe enough to cause significant fear of reprisal. Moreover, according to the victim's testimony, prior to the alleged molestation of the victim, there were similar acts involving Z and AA, and despite the Accused's actions towards the victim afterward, the victim did not protest or resist. Therefore, it is difficult to conclude that the Accused's actions constituted forcible molestation against the victim's will. There is no evidence to prove otherwise. The original court's decision regarding the primary charge is therefore appropriate, and the prosecutor's arguments are without merit.

**2. Concerning the Subsidiary Charge of Quasi-Indecent Act by Compulsion**



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

A. The Subsidiary Charges

①; Same as stated in the primary charge ①.

②; Same as stated in the primary charge ②.

③; Same as stated in the primary charge ③.

④ At the time when the Accused molested the victim, the victim was a follower of V. The Accused, posing as a religious messiah who would bring salvation like Jesus, had educated the victim to believe that rejecting or doubting his actions would result in curses and loss of salvation. As a result, the victim was unable to resist the Accused's actions. Additionally, the victim, an inexperienced young university student with limited overseas travel experience, could not clearly explain her whereabouts and actions to her family and had traveled abroad on short notice. She feared that refusing the Accused's demands or the demands of his followers would result in unknown harm, and thus, she could not take any countermeasures.

⑤ Therefore, the Accused molested the victim by exploiting her inability to resist due to the aforementioned circumstances.

**B. Summary of Original Judgment**

The state of inability to resist, as stipulated in Article 299 of the Criminal Act, should be understood as a situation where resistance is absolutely impossible due to physical or psychological reasons, other than mental or physical impairment as described in Articles 297 and 298 of the Criminal Act, and where such a situation is evidently severe.

However, according to the victim's testimony, the victim acknowledged the following facts: she arrived in Kuala Lumpur, Malaysia, and stayed with over 200 followers; on 30 August 2001, she met with the Accused prior to her return, who was staying at a nearby location, along with about 20 other followers waiting to see him; the victim, along with Z, AA, and AB, went in together for the interview; during the



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

interview, the victim discussed with the Accused which country she should go for her language training and whether she needed to receive a LASIK surgery; the Accused said he would cleanse her vagina thoroughly and instructed her group to come into the bathroom inside the interview room one by one, undress and get into the shower; he used a hose with the shower head removed to pour large amounts of water into the victim's vagina; the victim was the third who entered the bathroom; with the bathroom door open, she was able to see what was happening with the group members who had entered the bathroom before her; after exiting the bathroom, the Accused then led the victim and other group members to the bed one by one, removed her bra, massaged her breasts before inserting his finger into her vagina while claiming to inspect her for cancer and tumors; the victim had previously been told by other followers that the Accused was a medical doctor, but she had not heard him say, "Jesus rejoices through my body" or "If you want to be saved, you must have sexual relations with me."

Based on the acknowledged facts, although the victim was aware of the Accused's sexual actions at the time, she seemed to have consented to or tolerated these actions, including the insertion of the Accused's finger into her vagina, under the mistaken belief that they were part of a medical examination due to the Accused's deception. Given the surrounding circumstances and context, it is difficult to conclude that the victim was in a state where resistance was markedly difficult or that the Accused exploited a state of inability to resist to perform these acts against her will. Therefore, the subsidiary charge also lacks sufficient proof of criminal facts, necessitating a not guilty verdict pursuant to the latter part of Article 325 of the Criminal Procedure Act.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

C. Grounds for the Prosecutor's Appeal

At the time of the incident, the victim, as a follower of V, believed the Accused to be the returning Jesus and was convinced that refusing or doubting the Accused's actions would result in curses and the loss of salvation. Considering the circumstances of being in a foreign country, separated from family, and the various situational factors including the crime scene, it is evident that the victim was in a state of significant psychological difficulty and was unable to resist. Therefore, the above subsidiary charge is valid.

**D. Decision of Appeal Court**

(1) Victim's Testimony

The victim's testimony in the original trial is as follows:

○ After joining V through a friend, AC, in June 2000 and, the victim participated in various activities as a cheerleader, learned the core doctrines of V, including the 30 Principles, and came to believe that the Accused was the messiah.

○ Before this incident, the victim's supervisor in V, missionary AD, told her to meet the Accused before traveling abroad for language training to avoid falling into a test from Satan. Accordingly, the victim sent a full-body photo to the Accused through the cheerleading team leader.

○ Subsequently, under significant emotional distress, the victim was told by missionary AD not to disclose the fact that the Accused had summoned her and to inform only AD about her departure. She informed her mother that she was leaving to meet the Accused, using the 1 million won she received for her study abroad expenses. She arrived in Kuala Lumpur, Malaysia, on August 21, 2001, for the V's World Culture and Sports Festival and stayed with over 200 followers.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

○ On 30 August 2001, before returning to Korea, the victim, along with other believers and a pastor, went to the resort where the Accused was staying. At that time, female believers were so worried because the victim was on her period but were relieved when it ended.

○ The Accused was staying in a duplex type room on the 10th floor of the resort where there were a living room, bedrooms and a kitchen in the lower floor and a room with a bathroom in the upper floor. The interview took place in the room with an attachment bathroom.

○ The followers who brought the victim there told her that the Accused was a wonderful man with a medical doctorate, and she was very nervous about meeting him, thinking of him as Jesus.

○ About 20 other followers were waiting on the lower floor of the resort to meet the Accused. After waiting for about two hours, the victim went in with Z, AA, and AB around 5:00 PM. While waiting for their turn to go in, she saw another female follower come out crying, saying she had been diagnosed with cancer.

○ The Accused was wearing a underpants and a undershirt. Most of the victim's group members was wearing a casual dress with thin shoulder strips.

○ The victim discussed with the Accused which country she needed to go for language training and whether she should receive a LASIK surgery, as well as talking about her lack of concentration and guilt over issues with her boyfriend prior to joining V and her failure to study the 30 Principles diligently.

○ After a while, the Accused stated that he had a medical doctorate and could conduct examinations through the power of God, offering to provide health check-ups for them. He then called them one by



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

one into the bathroom attached to the room. From outside, the victim saw the Accused wash Z's genital area with water from a hose with the shower head removed, and while plucking her pubic hair, he said that such things could cause cancer.

○ The victim and AB were shocked by the scene and looked at AA. AA, as if she knew what was going on, said to just do as the Accused instructed.

○ When it was the victim's turn to go into the bathroom, the Accused first lowered her panties to her thighs, stating that she should completely take them off. After the victim removed her panties, the Accused used a hose with the shower head removed to direct water into her vagina and plucked her pubic hair, saying that such things could cause cancer.

○ After leaving the bathroom, the Accused laid Z on the bed, unhooked her bra, and touched her breast lying from her right side . He then inserted his saliva wet finger into her vagina. The victim, very shocked, took the last place in line.

○ The Accused then touched the breasts of AA, AB, and the victim with his hands, inserted his saliva wet finger into their vaginas, and moved his finger around.

○ Over the course of about 1 hour and 30 minutes, he repeated these actions with the followers. He Then lined up the group and hugged each of them, putting his hand into the victim's panties, and touched her genital area. The victim left the room in tears.

○ Outside, other followers waiting asked, "Did the Teacher give you a physical exam?" and "Wasn't the Teacher very kind?" among other questions.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

○ The victim and her group quickly got changed and went to the lobby, where they took a bus to the airport, a trip that took about an hour. On the bus, when the victim told another follower about the Accused's actions, they laughed and said, "The Teacher gave you a physical exam, how grateful we should be to the Teacher." Upon returning to her residence in Busan and telling AD about what had happened, she received the same response.

○ After this incident, the victim met with AE, who had previously managed her in V and had since left the group. AE shared stories about sexual relationships between the Accused and other female followers. The victim left V and filed a complaint against the Accused ten days later, on September 7, 2001.

(2) Credibility of the Victim's Testimony
The victim's testimony is very detailed and specific, consistent from the investigation by the prosecution through to the original trial.

Additionally, the nature of her testimony involves personal experiences that would be difficult to fabricate without having experienced them firsthand. In her testimony, she openly discussed her uncomfortable family circumstances and her sexual activities which are prohibited by V (court record pages 1249-1252). Similar accounts were provided by AD in her testimony in the original trial (court record page 1337). At the time of the incident, the victim was 23 years old and unmarried. When she testified in the original trial, she was newly married. It is unlikely that she would falsely testify about a sexual assault, an experience that could be a source of shame, or suddenly leave V and falsely accuse the Accused without a compelling reason.
The surrounding circumstances, including Z's testimony and AB's statements, further corroborate her account. Both Z and AB, also followers of V, found it difficult to speak against the Accused.

In light of these circumstances, the victim's testimony is found credible.
On the other hand, the testimonies of Z in the original trial and AB in this trial conflict with the victim's testimony. However, given that both Z and AB are followers of V and are in a position where it



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

would be difficult for them to provide testimony unfavorable to the Accused, who is the president of the missionary group, the victim's testimony is deemed more credible. This conclusion is supported by the specific details of her testimony and her demeanor in court.

Additionally, the testimonies of AD and AF in the original trial are a here-say from individuals who did not directly witness the incident. AD stated that she heard about the molestation from the victim and claimed that other followers said it was absurd (court record page 1354). However, considering AD's close relationship with the victim, this testimony is difficult to understand. AF testified that she heard about the incident from the victim and AE, and claimed that AE told the victim that she could earn enough money for her study abroad expenses if she filed a complaint (court record pages 1360-1362). However, the victim and AE met with AF, who was a friend and follower of V, to discuss the realities of the missionary group and encourage her to leave. It is hard to believe that they would make such statements in front of AF, implying they were motivated by money. This conflicts with the victim's testimony. Therefore, the testimonies of AD and AF are not easily credible.

(3) Establishment of Quasi-Indecent Act by Compulsion

The state of inability to resist as stipulated in Article 299 of the Criminal Act, in conjunction with Articles 297 and 298, refers to cases where resistance is absolutely impossible due to psychological or physical reasons other than mental or physical impairment (Supreme Court ruling 2000. 5. 26, 98DO3257; Supreme Court ruling 2003. 10. 24, 2003DO5322).

According to the victim's testimony which has been found credible above, the victim O, who believed the Accused to be the messiah, traveled to Malaysia without disclosing her destination. Following the guidance of her pastor and other believers from V, she went to the resort where the Accused was staying. At the time of the indecent act, everyone waiting with the victim, including her group, were devout followers who revered the Accused absolutely. When the Accused first inserted the shower hose into her vagina, the victim could only say that it hurt. She was so shocked when the Accused laid Z down,

Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

touched her breasts, and inserted his finger into her vagina, that she moved to the last place in line, as the only action she could take.

According to the victim's testimony, at the time of the incident, she was nervously anticipating meeting Jesus (Trial Record page 1226) and was in a state of hopeful repentance, believing that she could be forgiven by the Accused for her past romantic relationships and for not diligently studying the 30 Principles (Trial Record page 1229). She was utterly shocked by the Accused's actions toward Z in the bathroom but could not bring herself to leave. Due to her faith in the messiah and her lack of belief in her own worthiness, she felt paralyzed and couldn't even think of resisting the trial she believed she was undergoing. She felt a profound sense of fear that her inner feelings might be exposed outwardly (Trial Record pages 1230-1233). Furthermore, when AA and others accepted the same actions as if they were normal. As other believers waiting outside saw the victim crying as she left the room, and said, "The Teacher gave us a health check-up. We are so grateful to the Teacher. It was a test from God," she felt even more terrified and conflicted (Evidence Record page 178).

According to the evidence in this case, the Accused exercised authoritative and directive influence over V's followers as their president, through his biblical interpretations and other teachings. V is a religious group that believes in an omnipotent God and seeks salvation and eternal life by following divine guidance and teachings. It has been established that there was a prevailing belief and atmosphere among the followers that the Accused possessed a special ability to better understand and convey divine guidance and teachings.

Given the victim's faith and reverence towards the Accused, the nature and attitude of both parties' actions during the incident, the surrounding environment, the victim's psychological state, age, and intellectual capacity, it is evident that although the victim heard the Accused claim to be a medical doctor and witnessed a woman crying after discovering she had cancer through the defendant's medical examination, the victim did not consent to or tolerate the defendant's actions under the misconception that they were akin to a medical examination. Instead, the victim, experiencing severe mental shock



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

from the collapse of her religious faith in the Accused, was unable to judge or decide whether the defendant's actions were religiously necessary. Consequently, she experienced confusion, embarrassment, and astonishment, leading her to be unable to reject the defendant's actions. Additionally, the presence of other believers who tolerated the defendant's actions exacerbated her mental confusion. Therefore, despite recognizing the defendant's actions as sexual in nature, the victim was in a state where it was exceedingly difficult to resist.

(4) Sub-conclusion

In conclusion, the above subsidiary charges of quasi-indecent act by compulsion are recognized as guilty, and the prosecutor's arguments in this regard are justified.

**II. Victims AG and AH**

**1. Regarding the Primary Charges of Rape**

A. Charges

①; Same with the primary charges ① for Victim O in the preceding paragraphs.
② The twin sisters, victims AH (female, 20, younger sister) and AG (female, 20, older sister), joined the V religious sect in 1998 and 2001, respectively, and completed the 30-course training program. They were taught by followers of V, under the Accused's direction, that the Accused was a messiah who would save them and that disobeying the Accused's will would not only result in the loss of salvation but also pose significant harm to themselves and their families. As a result, they have been completely submissive to the Accused's absolute authority.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

③ On or about 11 February 2003, the Accused secretly instructed the victims over the phone to come to Hong Kong, where the Accused was staying, and strictly warned them not to inform anyone else of their destination. The victims deceived their families and left for the unfamiliar city, Hong Kong on February 15, 2003. There, they were guided by followers of the V sect, who were acting under the Accused's orders, to meet the Accused.

On February 16, 2003, at approximately 10:30 AM, the Accused, along with his close associates, took the victims to room A on the 10th floor of the Hong Kong AI Hotel. The Accused, leveraging the absolute authority established over the victims by continuously placing them near devoted followers, who were present to watch and assist during worship services broadcasted worldwide via the internet around 11 PM, threatened the victims by saying they would lose salvation, face life-threatening danger, or suffer great physical harm if they did not obey the Accused's commands.

At around 23:00 PM on the same day, in the same hotel room, the Accused took the victims in their sleepwear, to the bed, where the Accused had the victims lay in his arms. After the victims fell asleep, the Accused pulled down AG's panties, inserted his finger into her vagina. When AG woke up and tried to resist by moving her body, the Accused claimed on top of her, restrained her using his body to prevent her from resisting, then forcefully separated her legs with his hands before inserting his genitalia and raping her once.

Upon witnessing the Accused raping AG, AH the victim was shocked and began to cry in fear. The Accused then took AH to the bathroom, removed her panties, and digitally penetrated her genital area multiple times. Afterward, he brought her back to the room, claiming he would conduct a health examination. He laid both victims side by side on the bed and inserted his fingers into their genital areas,



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

moving them around simultaneously. When AH cried out in pain and resisted, the Accused climbed on top of her, using his body to immobilize her, then forcibly spread her legs with his hands, inserted his genitalia into her, and committed rape once.

④ In doing so, the Accused raped victims AG and AH each once.

B. Summary of Original Decision

To establish the charge of rape, there must be evidence that the victim was in a state where it was impossible or exceedingly difficult to resist due to physical force or threat.

The relevant portion of the primary charge detailing the threat states: "On February 16, 2003, at approximately 10:30 AM, the Accused summoned the victims to Room A on the 10th floor of the Hong Kong AI Hotel, which was managed by the Accused and his close associates. The Accused, leveraging the absolute authority established over the victims by continuously placing them near devoted followers, who were present to watch and assist during worship services broadcast worldwide via the internet around 23:00, threatened the victims by saying they would lose salvation, face life-threatening danger, or suffer great physical harm if they did not obey the Accused's commands."

However, according to the victims' statements, merely holding an online worship service with followers worldwide in the aforementioned apartment unit does not alone constitute the specific threat required by law. The aforementioned primary charge does not specifically detail which of the Accused's words or actions led the victims to believe that they would suffer harm.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

Furthermore, the portion of the primary charge detailing the nature of physical force states: "The Accused climbed on top of victim AG, using his body to restrain her and forcibly spreading her legs," and "The Accused climbed on top of victim AH, using his body to restrain her and forcibly spreading her legs with his hands." However, the victims consistently testified during the investigation and at trial that there was no physical force or threat from the Accused at the time of the incident. Therefore, even if the Accused did climb on top of the victims and spread their legs, these actions can be seen as part of the act of intercourse itself rather than as violent acts intended to suppress the victims' resistance. There is no evidence to suggest that the Accused used any form of force to overcome the victims' resistance.

Therefore, the aforementioned primary charge lacks evidence of the criminal facts and should result in an acquittal under the latter paragraph of Article 325 of the Criminal Procedure Act. However, considering that the subsidiary charge of quasi-rape has been established as a crime, the court will not separately declare an acquittal for the primary charge in this ruling.

C. Grounds for the Prosecutor's Appeal

Considering the circumstances of the crime scene at the time, the age and mental state of the victims, the relationship between the Accused and the victims, and the psychological and physical impact of the violence and threats on the victims, as well as whether the victims were in a position to easily seek help, a comprehensive review of the evidence in this case leads to the conclusion that the physical force and threats made it clearly impossible for the victims to resist. Therefore, the aforementioned primary charge should be upheld.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

D. Decision of Appeal Court

Upon a thorough review of the evidence properly selected and gathered by the original trial and the additional evidence submitted by the prosecution, it is determined that the primary charge of rape lacks sufficient evidence to establish the criminal facts. Therefore, the prosecution's argument regarding this matter is without merit.

**2. Concerning the Subsidiary Charge of Quasi-Rape**

**A. Relevant Part of the Charge**

①; Same as stated in the primary charge ①.

②; Same as stated in the primary charge ②.

③; Same as stated in the primary charge ③.

④ At the time when the Accused committed adultery on the victims AG and AH, the victims were a follower of V. The Accused, posing as a religious messiah who would bring salvation like Jesus, had educated the victims to believe that rejecting or doubting his actions would result in curses and loss of salvation. As a result, the victims were unable to resist the Accused's actions. Additionally, the victims could not clearly explain their whereabouts and actions to their family and had traveled abroad, Hong Kong. They feared that refusing the Accused's demands or the demands of his followers would result in unknown harm, and thus, they could not take any countermeasures.

The fear that the Accused might forcibly separate them from each other in a foreign country if they showed any slight dislike or reluctance toward his actions further prevented them from refusing the Accused's actions.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

⑤ Therefore, the Accused committed adultery against the victims by exploiting their inability to resist due to the aforementioned circumstances.

**B. Summary of Original Decision**

The aforementioned subsidiary charge is found guilty.

**C. Grounds for the Accused's Appeal**

The Accused asserts that there is no truth to the claim that he raped victims AG and AH, and that the victims provided fraudulent statements in collision with the AJ group members who oppose V. These statements lack consistency and do not align with the objective circumstances at the time, rendering them entirely unreliable. Furthermore, the victims were not in a state of being unable to resist at the time of the incident, thus the charge of quasi-rape is not established.

Therefore, the aforementioned subsidiary charge should be dropped.

**D. Decision of Appeal Court**

(1) Victims AG and AH's Statements

The testimonies provided by the victims during the original trial and the testimony provided by victim AH during the appeal trial are as follows:

○ The victims are twins. Victim AH, the younger sister of the twins joined the V religious group in July 1998, Victim AG and the older sister of the twins joined in October 2000. After having completed the 30 Principles course, AH became an instructor teaching the 30 Principles while AG participated in various activities as a cheerleader. Both victims were led to believe that the Accused was the Messiah and obeyed his absolute authority.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

○ The victims, following instructions from the cheerleading team leader, took photos to report to the Accused and sent them along with their height, weight, phone numbers, and any messages they wished to convey to the Accused.

○ On July 21, 2002, the Accused called victim AG, and on August 3, 2002, he called victim AH. After these calls, the Accused continued to make personal phone calls to the victims. On February 11, 2003, when he instructed them to come to Hong Kong over a phone call, the victims followed the instructions and flew to Hong Kong where the Accused was staying on February 15, 2003 in the flight arranged by the V followers.

○ At that time, the Accused instructed the victims not to tell anyone about their trip to Hong Kong, so the victims lied even to their parents, saying they were going to France.

○ The victims arrived in Hong Kong on February 15, 2003, and spent the night at an apartment unit arranged by Pastor AK, a follower of V. On February 16, 2003, at 10:30 AM, they were taken to Room A on the 10th floor of the Hong Kong AI, where the Accused was residing. They spent time participating in worship services with the Accused and the followers there until 23:00 the same day, viewing scenes of followers from around the world connected via the internet. The Accused spent time in conducting individual conversations with his followers through the internet.

○ After that, while the Accused was seated in the living room of the apartment, followers AL and AM massaged the Accused from either side of him and the victims massaged the Accused sitting on the floor. After the Accused received the massages, he went to his room, AL and AM told the victims that "the Accused feels tired, so he will talk to you while you give him a massage on his arms and legs." They then led the victims to the Accused's room.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

○ After receiving massages from the victim for some time, the Accused asked the victims to undress and lie down beside him on his arms. Because the victims believed him to be a messiah, they did what the Accused instructed to do without hesitation. After lying on the bed in the same position for quite a while, the Accused put his hand into AH's panties. When AH moved aside, he removed his hand and put his hand into AG's panties, climbed on AG and inserted his penis into AG's vagina. AG said, while crying, to the Accused that "Teacher, please do not test me." Shortly after, the Accused pulled out his penis and said "I had a dream that one man came to take you away from me."

○ AH was crying over the scene that her sister and victim AG was raped by the Accused as described above. In order to avoid such situations, she told the Accused that she lost her contact lenses. The Accused looked for the contact lenses with the victims and went to the bathroom. After that, the Accused had the victims lay on the bed saying "I'll check if you have any inflammation inside your vagina" and inserted his finger into the genitals. When AH asked to stop by saying "It hurts," the Accused responded that "It won't hurt. If it does, you can scream." Then he climbed on AH and inserted his penis into her vagina.

(2) Credibility of Victims' Testimony

The victims' statements are very detailed and specific, and their testimony has remained consistent throughout the investigation by the prosecution, the original trial, and the appeal proceedings.

Additionally, the victims' statements are so detailed and specific that it would be difficult for someone who had not experienced these events firsthand to provide such testimony. The victims also truthfully recounted their own sexual relations (Trial Record page 1581), their contacts with AJ members after the incident, and the assistance they received during the filing of the complaint. At the time of the incident, the victims were 20-year-old unmarried women. They had been devoted followers of V for several years



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

before suddenly leaving the group. It is hard to find any special motive for them to falsely accuse the Accused, whom they had believed to be the Messiah, of sexual assault, which could be a source of shame for them. Additionally, the victims' financial situations do not appear to be such that they would falsely accuse the Accused in pursuit of a settlement.

Upon review of the aforementioned circumstances, the testimonies of the victims are deemed credible. Additionally, during the second interrogation by the prosecution, in the presence of the defense attorney, the Accused admitted to making multiple phone calls to the victims on 21 July 2002 onwards, coaxing them into coming to Hong Kong. The Accused acknowledged the existence of a detailed profile including photographs, body measurements, and birthdates of the victims, and admitted to reviewing this profile (Evidence Record page 383). The Accused also admitted to receiving massages from the victims and AL who was co-residing in the living room of the apartment. Furthermore, the Accused instructed the victims to enter his room and lie on the bed on either side of him, resting on his arms (Evidence Record pages 386 and 387). Such statements provided by the Accused are corroborated by the victim's statements and further validate their credibility.

The Accused, however, contends that he made false statements under duress while being detained and tortured by Chinese authorities. He argues that the fear of continued severe torture, both psychological and physical, led him to fabricate his confession with the understanding that he would be repatriated to South Korea if he complied. He maintains that his previous statements were made involuntarily due to the extreme duress he experienced.

Nevertheless, as described above, the Accused's statements during the second interrogation were made in the presence of his attorney. In light of the circumstances where the Accused amended the errors regarding the victims AN and AO as described below at the end of the interrogation upon reviewing the content of the second interrogation statement provided in the prosecution, the aforementioned statement provided by the Accused is deemed significantly credible, not appear to be a false statement without voluntariness.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

On the other hand, the testimonies of AK, AP, and AL in the original trial and AM's testimony in the appeal trial contradict the testimonies of the victims. AK and others, all V believers, appear to be in a position where it is difficult to provide statements unfavorable to the Accused as the aids close to the president, the Accused. Furthermore, they denied or significantly minimizes the facts that have been acknowledged by the Accused during the interrogation conducted by the prosecution, exhibiting an extremely cautious attitude.  Thus, the testimonies of the victims are deemed more credible than those of AK and others.

The defense argues that the testimonies of the victims do not align with each other or with the testimonies provided previously, suggesting that the credibility of the victim's testimonies were undermined due to the following facts: the victim AH had been in contact with AQ before or after this incident; AH had received help from AJ members while filing the complaint and providing statements and testimonies during the investigation and trial; and the victims went out for a walk on the beach and film a video immediately after the alleged sexual assault.

However, the victims' statements are generally consistent, and AH testified that the reason AQ who had led AH to V maintained contact with AH was to have AH to return to V (Trial Record, pages 1636-1639), which aligns with AQ's testimony.

Since there was no particular circumstance to support that the victims had colluded with AJ members in advance, receiving help from AJ members after the incidents to fight V's measures does not diminish the credibility of the victims' statements. Furthermore, given the video clip provided to support the defense argument, the scenes in the video recordings, occasionally depict the victims smiling, but this does not significantly impact the overall credibility of the victim's testimonies, especially in the case of victim AH, who displayed a particularly distressed facial expression. It is difficult to dismiss the credibility of the victims' testimonies when looking into all of these circumstances.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

Considering all the aforementioned circumstances, the testimonies of the victims regarding the details of their victimization are deemed sufficiently credible.

(3) Constitution of Quasi-Rape Charge

Article 299 of the Criminal Act includes situations where, due to reasons other than mental or physical disabilities under Articles 297 and 298 of the Criminal Act, the victim is in a state where they are mentally or physically unable to resist or where resistance is absolutely or relatively impossible (Refer to the Supreme Court decision delivered on May 26, 2000, 98DO3257, etc.).

According to the testimonies provided by the victims, whose credibility has been established as above, the victims, who trusted the Accused as a messiah, were summoned by the Accused to go to Hong Kong without informing their parents of their trip plans. When the Accused attempted to engage in sexual activity, victim AG said, "Please do not test me," and victim AH could only utter "It hurts." Despite being together, the victims could not resist the Accused because the apartment unit where the Accused was staying at that time was filled with believers who had a deep-seated belief in the Accused.

On the other hand, the Accused, through his teachings and sermons, exercised significant psychological and ideological control as the leader of the V religious group. V is a religious organization that promises salvation and eternal life through absolute faith and adherence to its doctrines. It is based on the belief that a person with special abilities can understand and convey the teachings of faith better than others. The fact that such an environment and belief system existed, as previously mentioned, should be considered.

Given the victim's faith and reverence towards the Accused, the nature and attitude of both parties' actions during the incident, the surrounding environment, the victim's psychological state, age, and intellectual capacity, it is evident that, at the time of the incident, the victims appeared to be in a state of



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

mental shock as their religious faith in the accused was shattered. They were unable to judge or decide whether they should accept the Accused's actions as religiously necessary. Consequently, they experienced confusion, embarrassment, and astonishment, leading her to be unable to reject the defendant's actions. Additionally, the presence of other believers who tolerated the defendant's actions exacerbated her mental confusion. Therefore, despite recognizing the defendant's actions as sexual in nature, the victim was in a state where it was exceedingly difficult to resist.

(4) Sub-conclusion

Therefore, the subsidiary charges of quasi-rape are found to be guilty, and the Accused's arguments regarding this matter are without merit.

### 3. Indecent Act by Compulsion and Quasi-Indecent Act by Compulsion

#### A. Summary of Original Decision

On 17 Feb 2003, in the aforementioned apartment unit in Hong Kong, the Accused sexually assaulted the aforementioned victim AG sleeping in a state of inability to resist by touching her genital area. On 18 Feb 2003, in the same apartment unit, the Accused sexually assaulted victim AH by suddenly putting his hand into AH's panties and touching her genital area.  Both charges of sexual assault are found to be guilty.

#### B. Grounds for the Accused's Appeal

The Accused did not touch the victims' genitals as stated in the charges. Instead, the victims, under the influence of AJ, have given false statements regarding the alleged assault. Their testimonies do not align with the objective circumstances and therefore lack credibility. Accordingly, the defense is seeking a no-guilty verdict for the charges.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

**C. Decision of Appeal Court**

The credibility of the victims' testimonies has been established as mentioned above, and it can be acknowledged that the Accused touched the victims' genitals as stated in the charges.

Quasi-rape refers to acts committed by means of violence or threats against a person who is unable to resist. This includes not only acts of coercion but also the violent act itself, even if it is considered a sexual molestation. In this context, violence does not necessarily need to completely overpower the will of the victim, but any act of force that causes the victim to comply against their will constitutes a violation regardless of degrees of force (Refer to the Supreme Court decision delivered on April 26, 2002, case number 2001DO2417). The act of the Accused suddenly putting his hand into victim AH's panties is considered an indecent act, thus constitutes quasi-rape.

Therefore, the charges of quasi-indecent act by compulsion and indecent act by compulsion are found to be guilty, and the Accused's arguments regarding this matter are without merit.

**III. Victim AO**

**1. Concerning the Primary Charge of Rape Resulting an Injury**

**A. Relevant Part of the Charge**

①; Same as stated in the primary charge ① regarding the victim 0.

② Victim AO, while attending university, joined the V religious group around May 1998. After completing the 30 Principles education on September 27 of the same year, AO dedicated approximately seven years solely to evangelism and lectures related to V religious activities. During this period, AO believed the



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

Accused to be the messiah and obeyed the Accused's absolute authority.

③ As part of her missionary activities with the V religious group, the victim, along with four other female believers and nine male believers, went to Anshan, China, where the Accused and other members of the group resided, around 29 March 2006, to provide a Taekwondo demonstration. The group, including AO, performed the demonstration in the local Taekwondo academy staying there until March 31, 2006. Then the female group moved to the residence where the Accused was staying on April 2, 2006.

Between 4:00 and 6:00 on 3 April 2006, the Accused brought the victim, AO, to the bathroom of his residence, undressed her, and instructed her to lie down on the floor. Despite the victim's attempts to move away and resist, the Accused instructed her to relax, then slapped her buttocks and thigh with his hand and inserted a shower hose running hot water, along with his finger, into the victim's vagina.

When the victim complained about pain, the Accused threatened her, saying, "Stay still, or I'll do it even if I have to rip your pussy." The Accused then applied soap to both the victim's genital area and his own, further expanding her vagina by inserting his finger. He subsequently inserted his penis and raped the victim, resulting in a hymen tear, vaginal tear, PTSD, and other injuries, with the exact number of treatment days unknown. (The injury of the hymen tear was included in this charge due to a change in the indictment during this trial.)

④ Thus, the Accused has committed the crime of rape resulting in injury against the victim.

**B. Summary of Original Decision**

Although it is recognized that the Accused raped the victim, there is no evidence to acknowledge that the victim sustained injuries as a result. Therefore, only the charge of rape is found guilty, and a separate



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

verdict of not guilty will not be issued for the charge of rape resulting in injury, which is related to the same offense.

**C. Grounds for Accused and Prosecution's Appeal**

(1) Summary of the Accused's Appeal

Despite the Accused did not commit any sexual contact against the victim, the victim colluded with AJ members in advance to fabricate the victim's statement. As the victim's testimony lacks consistency and does not align with the objective circumstances at the time, it is deemed unreliable. Therefore, the aforementioned primary charge should be found not guilty.

(2) Summary of the Prosecution's Appeal

Based on the evidence presented in this case, it is sufficiently recognized that the victim sustained injuries due to the Accused's act of intercourse. Therefore, all the primary charges should be found guilty.

**D. Decision of Appeal Court**

**(1) Victim's Testimony**

The victim's testimonies in the original trial and during the appeal trial are as follows:

○ The victim joined the V religious group in early May 1998 while she was a university student, and after completing the 30 Principles education by September 27 of the same year, she engaged solely in V's religious activities, including evangelism, lectures, and Taekwondo activities, for about seven years. During this time, she came to believe that the Accused was the Messiah.

○ As part of V's missionary activities, the victim, along with other believers, went to Anshan City in China



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

where the Accused and the V group members resided to perform Taekwondo demonstrations on March 29, 2006. After performing at the Taekwondo academy until March 31, 2006, she moved to the accommodation where the Accused was staying with the female demonstration team on April 2, 2006.

○ On April 2, 2006, after finishing events including worship, an art festival, and meetings at the accommodation where the Accused was staying, the victim slept in the spa room with five other Taekwondo team members including AR and AN. The next day, at around 3:00 AM on April 3, 2006, AR woke the victim and took her to the bathroom, where they bathed together. After the bath, AR led the victim to the Accused, and then left the room.

○ On around 4:00 AM on 3 April 2006, the Accused brought the victim to the bathroom passing many doors and told her "Hey, remove your panties, you, what are you doing?" When the victim hesitated, the Accused yelled at the victim "Hey, take off your panties." to obey his instruction. When both the Accused and the victim became naked, the Accused had the victim lie down on the floor. Despite the victim's attempts to move away and resist, the Accused instructed her to relax, then slapped her buttocks and thigh with his hand and inserted a shower hose running hot water, along with his finger, into the victim's vagina.

○ When the victim complained about pain, the Accused yelled at her to be quiet and said, "Stay still, or I'll do it even if I have to rip your pussy." The Accused then applied soap to both the victim's genital area and his own, further expanding her vagina by inserting his finger. He subsequently inserted his penis and raped the victim

○ On the morning of April 3, 2006, after telling AN about the above incident, the victim decided to leave the city with AN. Taking advantage of the absence of the Accused and other believers who had gone for a hike, they took the bus to return to the residence where the victim's passport was stored. After



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

packing, they took a cab to the airport in Shenyang, China. The victim then purchased a plane ticket at the airport to depart for Korea at around 9:00 AM the next day and made a phone call to her mother, saying, "I was raped, please help." She also asked her mother to call the police if she did not arrive in Korea as scheduled.

○ At Shenyang Airport, the victim coincidentally met some Korean Chinese who helped her stay at a motel for the night. After spending the night, on April 4, 2006, they returned to Shenyang Airport, where AS and other V members appeared and tried to capture the victim and AN. The victim shouted for help, and the Chinese police noticed and intervened, detaining the victim and the believers for questioning. After being questioned by the Chinese police until April 6, 2006, the victim and AN returned to Korea by plane at around 9:00 AM on April 7, 2006.

(2) Credibility of the Victim's Testimony

The victim's testimony is very detailed, specific, and consistent with her statements provided to the police, the prosecution and during the original and appeal trial.

Moreover, the victim's testimony contains details that would be difficult for someone who had not experienced the events firsthand to describe. While the credibility of her statements could be questioned, she also told truth about her contacts with AJ members and the assistance she received from them during the investigative process. The victim, a 26-year-old unmarried woman with no sexual experience at the time, had been fully devoted to V's activities for seven years. She suddenly defected, accusing the Accused, whom she had believed to be the Messiah. It is hard to find any specific motive for her to fabricate allegations of sexual assault that could result in serious consequences for her.

Given these circumstances, the victim's testimony is deemed credible.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

Additionally, during the second round of questioning by the prosecution, the Accused stated in the presence of his privately retained lawyer, stating, "At around 4:00 AM on April 30, 2006, I instructed to bring the victim to the reception room on the first floor of the God Hall to pray. The victim said she wanted to talk about family matters in a private place, and since there was no other available space, I took her to a room with an attached bathroom (Evidence Record, page 402). While spraying water on the victim with a shower hose without a head, I told her to wash herself thoroughly and said that women should be clean down there, even applying soap on her back (Evidence Record, page 398)." This statement partially aligns with the victim's testimony, further supporting its credibility.

For this issue, the Accused claims that he made such statements under coercion and torture by the Chinese police while in detention and that he continued to testify under psychological duress after being repatriated to Korea and questioned by the prosecution, fearing that he would be sent back to China if he changed his testimony.

However, as previously mentioned, the Accused made his statements in the presence of his privately retained lawyer during the second round of questioning by the prosecution. After confirming the contents of his earlier interrogation statement, the Accused stated, "Among the things I stated, when I said I hugged AN in the spa room of the bathroom, I was actually mistaken. I was wearing a top, not fully naked (when I hugged her). At that time, AT (the victim, AO) was not in the spa room." He thus corrected his own statement. This coincides with the victim's statement that five people including the victim and AN danced fully naked in front of the Accused in the pray room of the Accused's residence and only AU, AV and AN moved to the bathroom in the basement following the Accused (Trial Record, pages 1778 and 1779) as well as AN's statement provided to the prosecution (Evidence Record, page 488). Considering these circumstances, the Accused's statements are found to be sufficiently credible and do not appear to be false statement without voluntariness.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

Meanwhile, AN testified during the original trial that neither the victim nor she was raped or sexually assaulted by the Accused, and the victim also opened up to AN and told AN about the truth.

However, AN provided very detailed statements to the police and prosecution about the incident. Even if the Accused provided statements partially aligned with AN's, AN dropped the complaint against the Accused, reversed her previous statements and provided the testimony as described above in the original trial. Given these circumstances, AN's testimony during the original trial cannot be fully trusted. Moreover, AN did not know who prepared and filed the complaint submitted to the court under her name. Although the criminal complaint withdrawal submitted to the court was clearly drafted and printed using a word processor, she claimed that she manually drafted the withdrawal form herself. Therefore, AN's testimony is highly questionable and difficult to accept as truth.

AW, AX, and AR's testimonies during the appeal trial contradicted the victim's account. All of them are members of V or close associates of the Accused, suggesting they were in a difficult position to testify against the Accused. For instance, AW stated that the place where the Accused and the victim had a meeting was not the basement but the ground floor sitting on a coach. AW also provided a statement, with an extremely cautious attitude, suggesting a significant level of inconsistency with the facts acknowledged by the Accused during the prosecution interrogation that the Accused brought the victim to the room attached a bathroom to spray the victim with water. Consequently, the victim's testimony is considered more credible than that of AW and others.

Furthermore, although the victim appears to have received support from AJ members in filing the complaint and giving her statements about the incident, it is evident that this alone does not diminish the credibility of her statement.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

Meanwhile, although the video footage taken when the victim was leaving the Accused's residence shows her smiling, her statement that she was trying to escape the situation surrounded by followers of the Accused and was smiling to avoid arousing suspicion from the other followers can be considered plausible.

Additionally, according to the copy of the victim's statement conducted by the Chinese police, there is an indication that the Accused's genitalia did not penetrate the victim. However, the victim testified in court, "At that time, I provide statement meaning that the Accused's genitalia did not fully penetrate, but the Chinese police responded, 'If so, he just inserted his finger,' and that's how it was recorded." This could be seen as a statement made under insufficient interpretation.

Considering all the above circumstances, the victim's detailed account of the incident is deemed sufficiently credible.

(3) Involvement of Violence or Threats

To determine whether violence or threats were used to constitute the rape charge, we must consider not only the details and degree of the violence or threats but also the context in which such force was used, the relationship between the victim and the Accused, the circumstances at the time of the intercourse, and subsequent events. All these factors must be comprehensively evaluated based on the specific situation the victim faced at the time of the sexual intercourse. It should not be hastily assumed that the victim's ability to escape the crime scene before the intercourse or the lack of resistance to the death automatically indicates that the violence or threats by the perpetrator were insufficient to overcome the victim's resistance (Refer to the Supreme Court ruling delivered on 2005. 7. 28, Case Number 2005DO3071).



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

According to the victim's testimonies that have been recognized as credible above, the victim went to China believing the Accused to be the messiah. She was facing a situation where the Accused she believed to be the messiah yelled at her, saying "Hey, remove your panties," while staying in a bathroom with the Accused only. Despite the victim's attempts to move away and resist, the Accused instructed her to relax, then slapped her buttocks and thigh with his hand and inserted a shower hose running hot water, along with his finger, into the victim's vagina. When the victim complained about pain, the Accused ordered her to be quiet and said, "Stay still, or I'll do it even if I have to rip your pussy." Given the specific circumstances at the time, the Accused's actions constituted violence or threats that significantly impaired the victim's ability to resist. The fact that the victim was a Taekwondo black belt and the Accused was over 60 years old does not alter this conclusion.

(4) Whether Injuries Were Sustained

Regarding whether the victim suffered vaginal tear injuries and post-traumatic stress disorder due to the Accused's act of intercourse as described in the count, the victim's testimonies provided to the original trial and the appeal trial, or the medical report prepared by Dr. AY alone are insufficient to confirm the injuries. Notably, the medical records show that when the victim visited AZ Hospital at around 14:00 on April 8, 2006, approximately five days after the incident on April 3, 2006, at around 06:00, no vaginal tear injuries were observed. Therefore, it cannot be recognized that the victim sustained injuries as claimed.

However, according to the fact-finding inquiry response from the Director of AZ Hospital dated May 19, 2008, and the attached physician's order (Trial Record pages 3507 and 3533), as well as BA's testimony during the appeal trial, the diagnosis by the gynecologist BA on April 10, 2006, observed a 0.5 cm laceration



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

with bruising at the 7 o'clock position of the victim's hymen. BA recorded this founding in the physician's order and signed it. The bruising suggests that the injury occurred 1-2 weeks prior and could have been caused by the insertion of a hose or finger. The circular shape of the hymen indicates that the laceration caused it to lose tension, making it easier for genital or finger insertion without significant resistance. The victim testified that she was informed of the hymenal injury during her examination at a Chinese hospital. Therefore, it is recognized that the victim sustained a hymenal laceration due to the Accused's act of intercourse.

2. Sub-conclusion

Therefore, the primary charge of rape resulting in injury are acknowledged as the Accused raped the victim, causing a hymenal laceration. The prosecution's claim regarding this charge is justified within this scope.

IV. Victim AN

1. Charges

A. Primary Charges of Rape Resulting in Injury

① The victim, AN, joined the V religious group around November 2002 while she was a high school student. After completing the 30 Principles education on 28 December 28 of the same year, she began actively promoting the V group as a cheerleader. She believed that the Accused was the Messiah who would save her, and that if she did not follow his teachings, she would not attain salvation and great harm would come to her and her family. Consequently, she underwent rigorous education and submitted to the absolute authority of the Accused.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

② As part of V group's missionary activities, the victim, along with four other female believers and nine male believers, went to Anshan City in China around March 29, 2006, where the Accused and his followers resided. The Taekwondo demonstration team, including the victim, performed demonstrations at the Taekwondo academy there until around March 31, 2006.

After that, the female demonstration team moved to the Accused's residence around April 2, 2006. The residence was heavily guarded by dogs and the security guards, and there were all absolute followers of the Accused, creating an atmosphere of threat where the victim feared for her life and physical safety due to the believers' receiving orders from the Accused if she did not comply with the Accused's orders.

Between approximately 16:00 and 21:00 on April 2, 2006, the Accused took the victim, along with AU and AV from the Taekwondo demonstration team, to the basement bathroom of his residence. In this threatening atmosphere and through the Accused's intimidating words and actions, the victim and others were ordered to undress, with the Accused giving the impression that any disobedience would result in harm to their lives and bodies, rendering them incapable of resisting. When the victim and the others took off their clothes, he inserted his finger into the genitalia of AU and BB as well as the victim one by one, gave it a stir and then had an intercourse by inserting his penis into their genital area in turn. To continue, he turned on the shower hose with a head removed, stuffed the running hose into the victim's vagina along with his finger under the excuse of giving the three women including the victim vaginal cleansing. The Accused's actions caused the victim injuries, including vaginal bleeding, anxiety neurosis, with the exact number of treatment days unknown.

(3) Therefore, the Accused is charged with rape resulting in injury against the victim.

**B. Subsidiary Charge of Quasi-Rape Resulting in Injuries**



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

①; Same as stated in the primary charge ①.

②; Same as stated in the primary charge ②.

③ At the time of the assault, the victim believed that the Accused was the Messiah and thought that questioning or resisting his actions would result in her not attaining salvation. This belief was reinforced by rigorous teachings she had received. Consequently, she was unable to react against the Accused's actions and did not know the specific details of her situation, having been brought to China without knowledge of her precise location. Even her family did not know her whereabouts.

Additionally, the place where the Accused resided was a large complex with five buildings in the middle of nowhere, including a chapel, sauna, and swimming pool, and was constantly and heavily guarded by several dogs and security guards. The people there were all absolute followers of the Accused, making it impossible for the victim to seek help. Furthermore, the victim was under constant fear that the Accused's followers, under his orders, would harm her or prevent her from returning home if she disobeyed or tried to escape. Thus, she was unable to take any actions against the Accused.

④ Therefore, the Accused took advantage of the victim's inability to resist due to the aforementioned circumstances, raped her, and caused her injury.

**2. Summary of Original Decision**

Regarding the claim of the victim having sustained injuries, the evidence that seems to support this includes the victim's statements to the prosecution and photographs of the victim. The gist of the victim's statement is, "I don't know exactly what the Accused did during the rape, but I had a bruise on my right leg. Immediately after escaping the abduction, I was escorted by the Chinese police to a hospital of which name is unknown in Shenyang, China, where I received treatment. While waiting for treatment,



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

blood suddenly poured out from my vagina. To prove the bleeding, AO took a photo of my panties at the hotel. Since the incident, I have been constantly suffering from anxiety and fear and have been receiving treatment at BC Clinic."

However, the following facts are acknowledged based on the testimonies of the witnesses, BD and BE, the statements provided by the victim to the police, parts of the statements provided by the victim to the prosecution, the complaint submitted both by the victim and AO and the copy of medical records and the following facts that can be recognized by the fact-finding inquiry reply dated 19 May 2008 provided by the Director of AZ Hospital:

○ The victim's initial complaint did not mention any injuries. During the police investigation, the victim stated that there were no injuries caused by the sexual assault.

○ Regarding the bruises on the victim's lower back area in the photograph, she mentioned that they might have been caused by standing up suddenly after sitting down in the prosecutor's office. The brises on her right thigh could also have occurred during Taekwondo training, which are unrelated to the actions of the Accused.

○ About five days after the incident, there were no significant findings from the victim's examination at AZ Hospital.

○ According to the victim's statement provided to the prosecution, the bleeding from her vagina occurred while waiting for treatment at a Chinese hospital on 4 April 2006 between 18:30 and 21:00, and the AZ Hospital records indicate that the date of 8 April 2006 was likely her last menstrual day and her period typically lasted 7 days. Therefore, the possibility of the vaginal bleeding being related to menstruation cannot be ruled out.

○ The victim testified that she had been constantly suffering from anxiety and fear since the incident and had been receiving treatment at BC Clinic, but it is difficult to rule out the possibility of exaggerating the injuries given the circumstances described above. In light of the lack of objective medical records supporting the diagnosis of anxiety neurosis, it is also challenging to fully believe the victim's statement. Based on the photographs alone, they are not sufficient to conclude that the victim's vaginal tear, anxiety

Court of the
Republic of Korea



This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

neurosis, etc. were caused by the Accused's acts of rape or quasi-rape. There is no other evidence to support this claim.

Therefore, the Accused cannot be punished for rape resulting in injury or quasi-rape resulting in injury; only the charges of rape or quasi-rape can be established. According to Article 306 of the Criminal Act, charges of rape and quasi-rape can only be prosecuted upon a complaint by the victim. Based on the victim's testimony provided during the original trial and the criminal complaint withdrawal submitted under her name, it is clear that the victim withdrew the complaint against the Accused on June 10, 2008. Thus, in accordance with Article 327, Item 5 of the Criminal Procedure Act, the prosecution for the primary charges and the subsidiary charges is dismissed.

**3. Grounds for the Prosecutor's Appeal**

According to the evidence in this case, it is sufficiently recognized that the victim sustained injuries due to the Accused's act of rape or quasi-rape. Therefore, the above charges should be found guilty.

**4. Decision of Appeal Court**

Upon reviewing the evidence in this case, the original judgment is found to be justified. Therefore, the prosecutor's claim on this matter is without merit.

**V. Conclusion**

Therefore, the subsidiary charge of quasi-indecent act by compulsion against victim O is found to be guilty. Additionally, the primary charge of rape resulting in injury against victim AO is found to be guilty within the scope of the injury of hymenal laceration.

However, the original court acquitted the Accused of the subsidiary charge and found the Accused



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

guilty only of the charge of rape for the primary charge. Therefore, this part of the original decision is unlawful.

However, the charges of quasi-rape, quasi-indecent act by compulsion and indecent act by compulsion against victims AG and AH are founded to be guilty, as per the original decision. Additionally, only one sentence should be imposed on the Accused for the subsidiary charges associated with victim O and the primary charges associated with victim AO under the former paragraphs of Article 37 of the Criminal Act (Substantive Concurrent Crimes). The charges associated with the victim AN is dismissed, consistent with the original decision.

Accordingly, pursuant to Article 364, Paragraph 6, Item 2 of the Criminal Procedure Act, the part of the original decision, excluding the dismissal of charges, is hereby nullified. After further deliberation, the decision is rendered as follows, and the prosecutor's appeal regarding the dismissed part of the charges is dismissed in accordance with Article 364, Paragraph 4 of the Criminal Procedure Act.

**[Decision of Appeal Court]**

**Criminal Facts**

The following modifications shall be added following the beginning of the criminal facts from the original decision. Numbering of the beginning shall be changed from "1.", "2." and "3." to "2.", "3." And "4." The criminal fact "4. Concerning the rape charge against victim AO" shall be changed to "5. Concerning the charge of rape resulting in injuries against victim AO." At the end of the aforementioned criminal facts "4. Concerning the rape against victim AO," "raped the victim" is changed to "raped and sustained a hymenal laceration that required an undetermined number of treatment days." Except for these corrections, the corresponding parts of the original judgment are upheld as they are, pursuant to Article 369 of the Criminal Procedure Act.



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

1. Concerning the Charge of Quasi-Indecent Act by Compulsion against Victim O

Victim O (female, 23 years old) was a university student in June 2000 when she joined the V group through a friend's introduction in June 2000. After completing the 30 Principles course and receiving baptisms around July 4, 2001, she continued to receive education from other believers who followed the Accused's teachings. She believed that the Accused was the Messiah who would save her and that she would not attain salvation if she did not follow his teachings. This absolute authority of the Accused dominated her.

On August 22, 2001, the Accused instructed the victim to come to his residence within an unknown resort in Kuala Lumpur, Malaysia, to prevent her from revealing her destination to others. The victim stayed there for a week with other believers. On August 30, 2001, around 19:00, the Accused called the victim to his residence along with believers Z and AA where the Accused and his followers resided. He let the victim and other 3 female believers including Z into the room to conduct a meeting altogether. In the middle of the meeting, he said they needed to undergo a physical examination. He took the victim into the bathroom, had the victim remove her panties, stuffed a shower hose without a head inside the victim's vagina along with the Accused's middle finger to pour out large amounts of water. Continually, the Accused lay on the bed in the adjacent room, removed her bra, squeezed her breasts, inserted his saliva-wet finger into her vagina and gave it a stir.

At the time the Accused molested the victim as described above, the victim was a follower of the V group. She had been taught that the Accused was the religious Messiah who would save the world in place of Jesus, and that she would be cursed and unable to attain salvation if she doubted or resisted his



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

actions. Consequently, she did not dare to resist the Accused's actions. As a young university student in her early twenties with little to no experience of traveling abroad, the victim had left for an unfamiliar foreign country without even clearly informing her family of her destination. She was terrified that if she refused the Accused's actions, she might secretly suffer harm from the Accused or his devout followers, rendering her incapable of resisting.

Thus, the Accused took advantage of the victim's inability to resist and committed sexual molestation.

**Gist of Evidence**

Except for the addition of the following evidence to the original judgment: "1. Testimonies of AH, AO, and BA during the appeal trial, 1. Testimony of O during the original trial, 1. Response from the AZ Hospital Director dated May 19, 2008, during the fact-finding inquiry concerning AO's medical records, and the physician's order," the relevant parts of the original judgment are upheld as they are, pursuant to Article 369 of the Criminal Procedure Act.

**Application of Laws**

1. Laws applicable to the criminal facts
○ Article 299 and Article 298 of the Criminal Act (Concerning the charge of quasi-indecent act by compulsion; jail time has been elected.)
○ Article 299 and Article 297 of the Criminal Act (Concerning the charge of quasi-rape)
○ Article 298 of the Criminal Act (Concerning the charge of indecent act by compulsion; jail time has been elected.)
○ Article 301 and Article 297 of the Criminal Act (Concerning the charge of rape resulting in injuries)



Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

1. Aggravation for Concurrent Crimes

Preceding paragraph of Article 37; Article 38, Clause 1, Item 2; Article 50 of the Criminal Act (The sentence for the crime of rape resulting in injury, which is the most serious in terms of severity and nature, is to be aggravated.

1. Inclusion of Number of Days of Confinement before Imposition of Sentence

Article 57 of the Criminal Act

**Reason for Sentencing**

The crime in this case is extremely grave, as the Accused committed sexual violence against young female believers who revered him as the Messiah. As a result of this crime, the victims suffered severe psychological and physical damage, feeling deep betrayal by a religious leader they trusted. Additionally, considering the Accused's age, gender, circumstances, motives, method, consequences of the crime, and the situation after the crime, it is determined that severe punishment is unavoidable for the Accused. Therefore, the sentence as stated in the judiciary decision is imposed.

**Not-Guilty Charges**

1. Primary charge of indecent act by compulsion against victim O

The charges related to this matter is stated above. As stated earlier, this part of the charge lacks sufficient evidence to prove the criminal facts. Therefore, it falls under the latter paragraph of Article 325 of the Criminal Procedure Act, which mandates a not guilty verdict. However, since the subsidiary charge of quasi-indecent act by compulsion has been found guilty, a not-guilty verdict for the primary charge will not be issued in the judiciary decision.

Court of the
Republic of Korea

This copy of the Court Decision has been viewed and printed from the Online Access Site.
Commercial use or unauthorized distribution is strictly prohibited. Post Date: 12 Apr 2013

2. Primary charge of rape against victims AG and AH, respectively

The charges related to this matter is stated above. As stated earlier, this part of the charge lacks sufficient evidence to prove the criminal facts. Therefore, it falls under the latter paragraph of Article 325 of the Criminal Procedure Act, which mandates a not guilty verdict. However, since the subsidiary charge of quasi-rape has been found guilty, a not-guilty verdict for the primary charge will not be issued in the judiciary decision.

3. Primary charge of rape against victims AG and AH, respectively

The charges related to this matter is stated above. As stated earlier, this part of the charge lacks sufficient evidence to prove the charges where the victim sustained a vaginal laceration and PTSD. Therefore, it falls under the latter paragraph of Article 325 of the Criminal Procedure Act, which mandates a not guilty verdict. However, since the charge of rape resulting in injuries where the victim sustained a hymenal laceration has been found guilty, a not-guilty verdict will not be issued in the judiciary decision.

Chief Justice, Honorable Uiyeong Ko _____

Judge Sangyoon Lee _____

Judge Yonghan Kim _____



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK          )
                          )                    ss:
COUNTY of NEW YORK    )

**CERTIFICATE OF ACCURACY**

This is to certify that the document, "1-2-1. [First Criminal Decision] Seoul High Court Decision 2008No2199 rendered on February 10, 2009(02)" is to the best of our knowledge and belief, a true, accurate, and complete translation from Korean into English.

Dated: 7/19/2024                                Sworn to and signed before ME
                                                This 19th day of July, 2024

_____                         _____

Heather Cameron                                 Notary Public
Project Manager
Consortra Translations



JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Comm. Expires Dec. 4, 2026

Your
legal
translation
partner

# EXHIBIT 8




## Supreme Court of Korea Apr. 23, 2006 Case 2009Do2001 Judgement

[Rape causing bodily injury (1 preliminary charge: quasi-rape causing bodily injury), Rape (1 admitted crime: quasi-rape), forcible indecent act (partially admitted crime: quasi-forcible indecent assault), quasi-forcible indecent assault]

〔Unpublished〕

**[Holding]**

[1] Meaning of 'state of inability to resist' in the crime of quasi-rape and forcible indecent act under Article 299 of the Criminal Act

[2] A case where the Head of Presbytery committed intercourse and indecent acts with female church members, the Head of Presbytery was found guilty of quasi-rape and forcible indecent act, etc., on the grounds that the female members of the church were in a state of inability to resist due to mental confusion such as shock to their religious beliefs, etc.

[3] A case where in the first trial, the indictment of forced indecent act was changed to forced indecent act in the peripheral indictment, and the preliminary indictment was changed to quasi-forcible indecent acts, then after all charges were acquitted, the appellate court approved an application to amend the indictment and changed the preliminary indictment to an indictment of indecent act by abuse of occupational authority, etc. and in the case where the preliminary prosecution of quasi-forcible indecent act was found guilty, the change in the indictment in the appellate trial is considered to be an addition of the indictment of indecent act by abuse of occupational authority, etc. as a second preliminary indictment to the peripheral indictment of forcible indecent act, and it could not be regarded as a withdrawal of the existing preliminary indictment of quasi-forcible indecent act.

**[Reference Articles]**

[1] Criminal Code Article 299

[2] Criminal Code Article 299

[3] Criminal Procedure Code Article 298, Criminal Code Article 298, Article 299, Act on the Punishment of Sexual Crimes and Protection of Victims Thereof Article 11 (1)

**[Reference Judgement]**

[1] Supreme Court of Korea May 26, 2000 Case 98Do3257 Judgement (Kong2000Ha, 1574)

**[Front Text]**

**[Defendant]** Defendant

**[Appellant]** Defendant

**[Agent]** Sekwang Law Firm and 2 others

**[Previous Judgement]** Seoul High Court Feb. 10, 2009 Case 2008No2199 Judgement

**[Main Text]**

Appeal dismissed. 66 days of incarceration after appeal are included in the main sentence.

**[Reason]**

The grounds for the appeal of the Defendant and the Agent are seen together.

1. Regarding the quasi-forcible indecent act of non-party victim 16

Article 299 of the Criminal Act stipulates that a person who commits intercourse or an indecent act by taking advantage of a person's mental or physical incapacitation or inability to resist shall be punished in the same way as the crime of rape or a forcible indecent act under Articles 297 and 298 of the Criminal Act. Here, the state of inability to resist means, in balance with Articles 297 and 298 of the Criminal Act, a case in which resistance is absolutely impossible or significantly difficult psychologically or physically due to causes other than mental and physical incapacitation (refer to Supreme Court judgment on May 26, 2000 Case 98Do3257 judgment etc.)

The previous trial found the victim's statement credible in light of the above circumstances and rejected the credibility of opposing statements made by non-parties 1, 2, 3, 4, etc. Furthermore, after acknowledging the same facts as the judgment based on the credible statement of the victim and the evidence adopted, it was determined that in the faith and reverence that the victim had toward the defendant, the content and attitude of the actions of the defendant and the victim at the time of the indecent act, the circumstances surrounding the victim at the time, and the victim's psychological state, age, and intellectual capacity, etc., caused a mental shock that shattered the religious faith in the accused, and the victim was unable to make a judgment and decision on whether the accused's act was a good and necessary act that should be tolerated, and in the presence of other members of the congregation who tolerated the defendant's behavior, the victim's mental confusion was further aggravated and was in a state of having significant difficulty in resisting the act even when knowing that it was a sexual (sex) act, and the court reversed the first trial judgment acquitting the defendant of the charge of quasi-forcible indecent act of the victim and is found guilty.

In light of the above-mentioned legal principles and records, the above findings and judgment of the previous trial court are justified as based on the reasonable and free deliberation of the trial judge. There is no violation of the law of evidence, such as admitting the fact of a crime despite the fact that it has not been proved beyond a reasonable doubt, or exceeding the scope and limits of a reasonable free trial, or a serious misunderstanding of facts, misunderstandings of the law regarding the crime of a quasi-forcible indecent act, or contradictory reasons that affected the verdict as alleged in the grounds of appeal.

2. Regarding the quasi-rape of non-party victims 9, and 10

The previous trial found the victim's statement credible in light of the above circumstances and rejected the credibility of opposing statements made by non-parties 5, 6, 7, and 8. Furthermore, after acknowledging the fact of the judgment based on the statements of the victims and the evidence adopted, and in light of the circumstances of the judgment, it was determined that the defendant was in a state of significant difficulty in resisting this despite knowing that the defendant's act was a sexual act, and the victims of the defendant In this case, the first trial ruling, which found the defendant guilty of quasi-rape, was upheld.

In light of the above-mentioned legal principles and records, the above findings and judgment of the previous trial court are justified as based on the reasonable and free deliberation of the trial judge. There is no violation of the law of evidence, such as admitting the fact of a crime despite the fact that it has not been proved beyond a reasonable doubt, or exceeding the scope and limits of a reasonable free trial, or a serious misunderstanding of facts, misunderstandings of the law regarding the crime of a quasi-forcible indecent act, or contradictory reasons that affected the verdict as alleged in the grounds of appeal.

3. Regarding the quasi-forcible indecent act of non-party victim 9 and the forcible indecent act of the non-party victim 10, according to the credible statements, the indictment of quasi-forcible indecent act of non-party victim 9 and forcible indecent act of non-party victim 10 was found guilty by the previous trial.

In light of the above-mentioned legal principles and records, the above findings and judgment of the previous trial court are justified as based on the reasonable and free deliberation of the trial judge. There is no violation of the law of evidence, such as admitting the fact of a crime despite the fact that it has not been proved beyond a reasonable doubt, or exceeding the scope and limits of a reasonable free trial, or a serious misunderstanding of facts, misunderstandings of the law regarding the crime of a quasi-forcible indecent act, or contradictory reasons that affected the verdict as alleged in the grounds of appeal.

4. Regarding the bodily injury from rape of non-party victim 11, the previous trial found the victim's statement credible in light of the above circumstances, and also found the defendants statement during the second prosecution, which was partially consistent with the victim's statement, to also be credible, and rejected the credibility of opposing statements made by non-parties 12, 13, 14, and 15 in the previous trial.

In light of the above-mentioned legal principles and records, the above findings and judgment of the previous trial court are justified as based on the reasonable and free deliberation of the trial judge. There is no violation of the law of evidence, such as admitting the fact of a crime despite the fact that it has not been proved beyond a reasonable doubt, or exceeding the scope and limits of a reasonable free trial, or a serious

misunderstanding of facts, misunderstandings of the law regarding the crime of a quasi-forcible indecent act, or contradictory reasons that affected the verdict as alleged in the grounds of appeal.

5. Regarding other grounds for appeal

(1) The defendant alleges that evidence that has not been examined or that evidence that has no evidentiary capacity has been included in the trial record, which has affected the trial court's verdict, that the defendant's right to defense and a fair trial have been violated, or that the first trial or the previous trial conducted an unfair trial. However, these allegations are without merit, as they cannot be accepted in light of the record and cannot be regarded as an offense that influenced the judgment.

(2) It is also within the court's discretion whether to grant or deny an application for evidence, and the court may not investigate a motion if deemed unnecessary. Therefore, it cannot be said that there were violations of the law, such as lack of hearing, on the basis that the previous trial did not accept the defendant's request for on-site verification.

(3) The defendant's agent argued that the preliminary indictment of quasi-forcible indecent act against non-party victim 16 was withdrawn by the amendment for the portion about non-party victim 16 of the indictment in the previous trial, but the trial court erred in convicting the defendant of the preliminary charge of quasi-forcible molestation, which had already been withdrawn, as the subject of the trial.

It is evident from the record that the prosecutor charged the defendant with the fact of forcible indecent act against the non-party victim 16, but in the first trial, the prosecution changed the charge of the surrounding indictment to forcible indecent act and the preliminary indictment to quasi-forcible indecent act, and the court of the first trial requested the prosecutor during the trial to amend this portion of the indictment to indecent act by abuse of occupational authority, under Act on the Punishment of Sexual Crimes and Protection of Victims Thereof Article 11 (1), etc., even if it was a preliminary indictment, but the prosecutor did not comply. The fact that the court of first trial acquitted the defendant on both the peripheral charges of forcible indecent act and the preliminary prosecution of quasi-forcible indecent act, and the fact that the prosecution appealed and the trial court examined the issue of whether the defendant's conduct against the non-party victim 16 constituted forcible indecent act, quasi-forcible indecent act, or indecent act by abuse of occupational authority, and thereafter, the prosecution filed a hearing dated January 9, 2009. It can be seen that the trial court approved the application to change the fact of prosecution of forcible indecent acts to the fact of indictment of indecent acts by abuse of occupational authority, etc., and as above, in the application for permission to change the indictment dated January 9, 2009, there is only a statement that the preliminary prosecution of forcible indecent acts will be changed to the fact of indecent acts by abuse of occupational authority, etc., and there is no mention of withdrawing or changing the preliminary prosecution of quasi-forcible indecent acts. Considering these facts, the circumstances of the trial process in this case, and the fact that the application for amendment of the indictment states that the facts of the indictment are "changed" does not necessarily mean that the original indictment is withdrawn, and it cannot be said that the part of the above change in indictment of non-party victim 16 portion in the previous trial is a second preliminary fact of prosecution of indecent act by abuse of occupational authority, etc., and it cannot be said that the preliminary prosecution of a quasi-forcible indecent act of the existing existence has been withdrawn. Therefore, the arguments of the defense counsel with a different premise are without merit.

6. Regarding claims of unfair sentencing

Looking at the various sentencing conditions shown in the records, such as the details of the crime in the present case, the degree of damage, the motive and means of the crime, the circumstances after the crime, the relationship between the defendant and the victims, the defendant's age and environment, and sexual behavior, the defendant was sentenced to 10 years in prison. The sentence of the previous trial was so severe that it was not recognized as significantly unfair.

7. Conclusion

Therefore, the appeal is dismissed, 66 days of incarceration after the appeal are included in the main sentence, and the ruling is made as ordered by the unanimous opinion of the participating Supreme Court Justices.

Judge of the Supreme Court Ji-hyeon Kim (head of the judicial panel), Seung-tae Yang, Jeon-su Ahn, Chang-su Yang (Judge responsible)



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK          )
                            )                    ss:
COUNTY of NEW YORK     )

### CERTIFICATE OF ACCURACY

This is to certify that the document, "1-2-2. [First Criminal Appeal Decision] Supreme Court Decision 2009Do2001" is to the best of our knowledge and belief, a true, accurate, and complete translation from Korean into English.

Dated: 7/19/2024

_____
Heather Cameron
Project Manager
Consortra Translations

Sworn to and signed before ME
This 19th day of July, 2024

_____
Notary Public



JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Comm. Expires Dec. 4, 2026

Your
legal
translation
partner

# EXHIBIT 9

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

# Seoul Central District Court

# 14th Civil Department

# Decision

Case: 2019Gahap567565 Compensation for Damages (existing)

Plaintiffs: As stated in the List of Plaintiffs in Addendum 1.

Attorney Yeonrang Lee, the litigation representative of the plaintiffs

Defendants: 1. Corporation A

2. B

Law Firm Duksu, the litigation representative of the defendants

Attorney in charge of the case

End of argument: October 28, 2020

Declaration of decision: November 25, 2020

# Text

1. All of the claims of the plaintiffs are rejected.

2. The plaintiffs will pay for the litigation cost.

# Gist of the Claims

1.  The defendant shall pay each of Plaintiff C Missionary and Plaintiff D 300 million won, and shall pay 5 million won to each of the remaining plaintiffs plus a late penalty at the annual rate of 1.2% for the

Court of Republic of Korea

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

period between the day after a copy of the complaint of this case is delivered and the day each of the amounts is fully paid.

2.  The defendant shall delete the broadcasting content of "G" and its preview from the 25th broadcasting content of "F" posted since March 27, 2019 at the E site (Internet address 1 omitted) within 7 days after the date of this decision.

3.  If the defendant does not carry out the order indicated in Clause 2 above within the period indicated in Clause 2, the defendant shall pay the plaintiffs at the rate of 1,000,000 won from the day after the expiration of the period to the date of completion.

## Grounds

### 1. Basic facts

A. Plaintiff C Missionary (hereinafter to be referred to as "Plaintiff Missionary") is a religious group that used to be known as "H," and was established by Plaintiff D, and the plaintiffs other than Plaintiff D are elders of Plaintiff Missionary.  The defendant Corporation A (hereinafter to be referred to as Defendant A) is a broadcasting company that operates the landline channel I and the Internet broadcasting site E, and Defendant B belongs to Defendant A, and is a producer who produced "G" (hereinafter to be referred to as "broadcast in this case") from the 25th broadcasting contents of "F."

B. As indicated in Addendum 2, the defendants produced and broadcast a documentary dealing with a case involving a conflict between Plaintiff D, who engages in church activities after being freed in February after imprisonment of 10 years for causing injury by raping, and her daughter who became a member of the plaintiff's missionary.  In the documentary, women who claimed to have been sexually assaulted by Plaintiff D appeared, and it was stated in the documentary that even during imprisonment Plaintiff D had received inappropriate photographs from his church's female members.  Since March 27, 2019, the defendants have posted the documentary at the E site even to the present day, namely the end of argument day.

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

C. On the other hand, Plaintiff D was sentenced to 10 years in prison on February 10, 2009 at an appellate trial (Seoul High Court 2008No2199) after being indicted on February 27, 2008 on charges of causing injury by raping, rape, engaging in indecent acts by force, engaging in quasi-indecent acts by force, and so on and charged with engaging in quasi-indecent acts by force against the victim J, charged with quasi-rape, engaging in indecent acts by force, and engaging in –quasi indecent acts by force  against the victims K and L, and charged with causing injury by raping against the victim M.  After Plaintiff D's appeal (Supreme Court 2009Do2001) was rejected, the decision was confirmed on April 23, 2009 (hereinafter to be referred to as "related criminal case").

[Acknowledged grounds] Undisputed facts, details of Evidence Gap 1, Evidence Gap 2, and Evidence Gap 4 (including branch numbers, same below), details of Evidence 3 to Evidence 5, and Evidence 7, and the entire arguments

**2. Gist of the plaintiffs' claims**

The defendants provided false information in the broadcast in this case as indicated below to damage the reputation of the plaintiffs.  Therefore, we seek the deletion of the preview of the broadcast in this case and deletion of the actual broadcast, payment of a charge for compliance, and payment of compensation. (The order in the table is the order of the flow of the broadcast.  Each claim will be referred to as "Claim ◯" according to this order.)

| Order | False information provided based on the plaintiffs' claims | Gist of the plaintiffs' claims |
|---|---|---|
| 1 | Past news referred to as "N" (preview) | D has never sexually assaulted 100 people |
| 2 | A commemorative photograph taken after swimming at a summer training camp (preview) | The content was falsely edited to indicate that D was being surrounded by naked women. |
| 3 | The scene which a person is being chased by a vehicle at night | False information that there is a team in charge of tracking exists with a former National Intelligence Service employee at the center was provided. |
| 4 | Past news called "O" | False information that there is a force that protects the Plaintiff Missionary was provided. |
| 5 | Use of the "Q" program produced by P | The scene that even P promised not to rebroadcast was broadcast, thereby forming wrongful prejudice. |
| 6 | A video showing interviews of female church members claiming that they have been sexually assaulted by D | These claims are groundless one-sided claims. |
| 7 | The part that claims that D escaped to Taiwan in '99 | The prosecutors' office has never started investigation and the escape didn't take place. |

- 3 -

Court of Republic of Korea

This decision document was viewed/printed from the Internet decision document view site. It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document. Date of anonymization: 01-15-2024

| 8 | The part that states that a bikini video was sent to D for him to choose | The video's source is unknown, and the video is completely unrelated with the plaintiff. |
|---|---|---|
| 9 | "Hong Kong mosquito net footage" | It is a footage videotaped illegally. |
| 10 | The part where the appellate decision related to D was extracted/cited | The part for which the decision was not guilty was reported as if the decision were guilty. |
| 11 | The part that states that the Plaintiff Missionary held an event at the Olympic Park around February of 2019 | The date and the location are all fictitious. |
| 12 | The scene in which D imitated a tap dancer and the scene in which he played soccer | D was satirized and the Plaintiff Missionary was reported falsely as if it were a maniacal religious group steeped in idolization. |
| 13 | The part that states that three prayers per day were recommended by the Plaintiff Missionary based on the belief that "one's fortune would improve if praying three times a day at 1:00 AM, 1:00 PM, and 7:00 PM" in accordance with the inmate number R of D | It is not true that three prayers per day was recommended by saying that one's fortune would improve. |
| 14 | The part that states that female church members sent nude pictures to D and that letters containing sexual contents were exchanged | It is not true that sexually lurid photographs and letters were exchanged. |
| 15 | The part that claims that even though the Plaintiff Missionary is strict regarding sexual relationships of the church members, the Plaintiff Missionary makes an exception regarding sexual relationships with D and emphasizes love related to the lower body | It is not true that love related to the lower body was emphasized, and the emphasis on cerebral love was reported in a false manner. |
| 16 | Conflict between D's son, daughter, and D | The source of the conflict between his son and daughter and D is due to the father's attempt to convert his children, but it was falsely reported that the Plaintiff Missionary was the cause. |
| 17 | The part in which a personal related to the Plaintiff Missionary mentioned that a second trial would be possible for the related criminal decision | It was falsely reported that the Plaintiff Missionary is a maniacal religious group that ignores even court decisions. |
| 18 | The part that states that the Plaintiff Missionary provided sexual favors to D or educated women subject to being provided as sexual favors | A groundless rumor was reenacted provocatively. |
| 19 | The part that states that D committed sexual harassments on the pretext of health examinations | D merely placed his hands during prayers, and it is not true that sexual harassments were committed on the pretext of health examination. |

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

| 20 | The pine tree painting drawn by D | The painting drawn by D was joked, and the Plaintiff Missionary was portrayed as a pseudo religious group. |
|---|---|---|
| 21 | The song called "S" written by D | It was falsely reported that D's songs are sexual poems and songs. |
| 22 | The part that states that the Plaintiff Missionary carries out conversion activities surreptitiously by proposing modeling deals, and so on while hiding the fact that it is a religious group | The Plaintiff Missionary has never carried out conversion activities surreptitiously by proposing modeling deals, and so on while hiding the fact that it is a religious organization. |
| 23 | The interview with T (publisher of U, author of <V) | It was unilaterally reported that the church members of the Plaintiff Missionary are social misfits. |
| 24 | Interviews with former church members of the Plaintiff Missionary that the church brainwashed the church members to believe that they would die if they quit the church | No brainwashing activities have been carried out. |
| 25 | Regarding to the reflection of the counterarguments of the plaintiffs | Even though the counterarguments of the plaintiffs were sufficiently communicated to Defendant B, Defendant B didn't reflect the counterarguments in the broadcast in this case. |

**3. Judgment regarding whether the lawsuit in this case is legal**

Regarding reputational damage on a specific group, in the event that it would be difficult to interpret that the reputational damage pertains to any specific member belonging to the group and that the damage is not severe to the extent that it would not impact the social reputation of each member due to the dilution of the severity of the criticism against the group has been diluted when applied to each member, it must be deemed that reputational damage on each member of the group has not been inflicted.  However, in the event that the number of members is so few to the extent that reputation damage is deemed to have been inflicted on individual members or in the event that criticism has been placed on each individual based on the circumstances at the time of the criticism, it must be deemed that each member of the group has been specified as a victim, and the specific criteria could be the group size, group characteristics, the status of each victim within the group, and so on (refer to Supreme Court September 2, 2003 Judgment 2002Da63558 Decision, Supreme Court September 2, 2003 Judgment 2002Da63558 Decisions, etc.).

In light of such legal principles, the contents of the broadcast in this case include contents that could deteriorate the social reputation of Plaintiff D because the broadcast deals with sexual assaults committed by Plaintiff D, who is the chairman of the Plaintiff Missionary, against female church members, the criminal trial, the chairman's activities after being released from prison, and so on.  Also, the Plaintiff Missionary is a private group not falling under the legal entity category, so the group has personality rights.  Since the

Court of Republic of Korea

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

broadcast in this case deals with not only Plaintiff D's personal life but also the organizational behaviors of the Plaintiff Missionary, it is deemed that its social reputation has been infringed.

However, the plaintiffs other than the Plaintiff Missionary and D (plaintiffs W, X, Y, Z, AA, AB, AC, AD, AE, AF, AG, and AH, hereinafter to be referred to as "remaining plaintiffs") are elders of the Plaintiff Missionary, and when we take into consideration the fact that in the broadcast in this case nothing that specifies the remaining plaintiffs has been reported, the fact that there are about 100,00 church members belonging to the Plaintiff Missionary, the fact that there are church members in about 70 countries, and so on, it would be difficult to conclude that the personal reputation of each of the remaining plaintiffs has been infringed by the broadcast in this case.

Therefore, the claims of the remaining plaintiffs are rejected, and hereinafter we will examine whether the broadcast in this case damaged the reputation of the Plaintiff Missionary and the reputation of Plaintiff D (these two plaintiffs will be referred to as "plaintiffs" hereinafter) requiring the defendants to compensate for damages and whether the broadcast in this case must be deleted.

**4. Determination regarding the claim for damage compensation**

**A. Related legal principles**

Simply expressing an opinion on another person does not constitute damaging the person's reputation, and even if the opinion contains false information, if the information does not infringe on the person's social reputation the opinion doesn't constitute reputational damage.  Furthermore, an opinion that infringes another person's emotions, which are subjective in nature, or a critical opinion impacting another person's social reputation does not constitute reputational damage (refer to Supreme Court April 9, 2009 Judgment 2005Da65494 Decision, etc.).

Even if another person's reputation was damaged by providing personal information through media outlets, there is no violation of the law if the information is true or there is substantial reason for the information provider to believe that the information is true in the event that the information is related to the public welfare and the purpose of the information provider was to benefit the public's welfare.  Here, "the purpose of the information provider was to benefit the public's welfare" means that the information provided was for the public's welfare based on an objective standpoint and that the information provider provided the information for the public's welfare.  If the information provider's main objective or motivation was for the public's benefit, it doesn't matter whether there were supplementary private purposes or motivations.  Here, "information is true" means that the important parts match objective facts when examining the overall contents of the information, so it wouldn't matter even if the information is different from actual facts only in some details or if there are some exaggerations (refer to Supreme Court September 6, 2007 Judgment 2007Da2268 Decision).

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

Also, even if another person's reputation was damaged by providing information through the media/publications, and so on, the plaintiff is responsible for proving that the information is false if the plaintiff seeks compensation for damages by claiming that the information is false.  However, in the event that the defendant argues that there is no violation of the law by stating that the defendant provided the information only for the public's welfare, the defendant has the responsibility to prove that the information doesn't violate the law (refer to Supreme Court January 24, 2008 Judgment 2005Da58823 Decision).

**B. In the case of the present case**

In light of the facts or circumstances acknowledged below, it cannot be deemed that the broadcast in this case disclosed information as claimed by the plaintiffs (second to fourth, twelfth, seventeenth, twentieth, twenty-first, twenty-third, twenty-fourth, and twenty-fifth claims), or the information disclosed is true or cannot be deemed to be false due to the fact that the plaintiffs have not proven that the information disclosed is false (first, fifth to ninth, tenth, eleventh, thirteenth to sixteenth, eighteenth, nineteenth, and twenty-second claims), so none of the plaintiffs' claims are accepted.

**1) The "N" part**

In the preview of the broadcast in this case, in the section where a photograph of Plaintiff D or Plaintiff D appears the audio stating "About 100 women were sexually assaulted" flows, so it seems that this part seems to have disclosed that "Plaintiff D assaulted about 100 people."

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

When we examine the contents of the broadcast in this case, the details of Evidence 3 to Evidence 5, and Evidence 10, the overall points of the arguments, and so on, we can acknowledge that Plaintiff D was sentenced to 10 years in prison for committing causing injury by raping, quasi-rape, engaging in indecent acts by force, and so on against multiple female church members,  in the related criminal case there were many people who claimed to have been sexually assaulted besides those female church members specified as victims, and so on, and furthermore Plaintiff behaved against ethical sexual norms expected of a religious leader such as receiving nude pictures of many young female church members or requesting such photographs, as indicated in Clause 7), so when we add the fact that such behaviors constitute sexual assault regardless of whether such behaviors perpetrated against female church members who followed the Plaintiff D constitute sexual crime according to the positive law, even though "about 100 people" could be somewhat different from the actual number or could be an exaggeration to a certain extent, it seems that the statement that "Plaintiff D sexually assaulted many women" seems to match  the object fact.  Therefore, the plaintiffs' claim that this information is false cannot be accepted.

**2) The commemorative photograph at the summer training camp (second claim)**

The plaintiffs claim that the commemorative photograph taken after swimming during a summer training camp was edited by blurring the photograph with the flesh color, as if Plaintiff D were being surrounded by naked women, and that this photograph was included in the broadcast in this case.

However, the applicable photograph seems to have been blurred in order to cover the identities of the people around Plaintiff D, and it is possible to see that the men and women are wearing clothes.  Therefore, the claim of the plaintiffs that the broadcast in this case insinuates that Plaintiff D engaged in lascivious activities with naked women, and that the Plaintiff Missionary is a pseudo-religious group that blindly follows Plaintiff D is groundless.

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

### 3) The scene of being chased at night and the existence of a protective force (claim 3 and claim 4)

In the broadcast in this case an anonymous informant's voice states, "Be careful, there is a specialist team," and "There is a person from the National Intelligence Service," and this person points to an unidentified vehicle when contacting with the defendants as the vehicle leaves the scene.

However, the broadcast in this case merely filmed what the informant stated and what was happening at the time the informant was being contacted, and it cannot be deemed that false information, namely the existence of a team with a former National Intelligence Service member at the center exists in the Plaintiff Missionary, is being disclosed or insinuated, contrary to the plaintiffs' claim.

Also, in the broadcast in this case the anchor's comment "A prosecutor and a National Intelligence Service employee should obtain confidential information from Mr. D" along with an AI screen dated October 17, 2006 with the title of "O."  However, this part is merely about "investigating the suspicion that there is a force that is protecting Plaintiff D or the Plaintiff Missionary in 2006," and it cannot be deemed that this part discloses or insinuates that even now there is a force that protects the Plaintiff Missionary.

### 4) P "Q" and the Hong Kong mosquito net scenes (claim 5 and claim 9)

The broadcast in this case uses some of the scene in which Plaintiff D is being surrounded by many people in the program broadcast with the title of "AJ" on March 20, 199 by P "Q," and uses the so called Hong Kong mosquito net scene (the scene in which Plaintiff D is arguing with the videotaping person after coming out of the mosquito net installed outdoors where he was staying with the church members), which was videotaped by a group antagonistic to the Plaintiff Missionary along with the comment "It was suspected that sexual scandals with female Japanese church members were presented."

Court of Republic of Korea

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

When we examine the contents of Evidence Gap 3-4 and Evidence and the contents of Evidence Eul 12, and the overall points of the entire arguments, it can be acknowledged that the P "AK" program broadcast the Hong Kong mosquito net scene, and that a reconciliation recommendation decision (Seoul Central District Court August 2, 2005 2004Gahap64764 Decision) was reached/confirmed between the plaintiff and P whereby the "AK" program including the scene and the "Q" program wouldn't be rebroadcast or distributed or disclosed to any third party.

However, the plaintiffs dispute only the fact that the scene was videotaped illegally, and that the scene that is prohibited from being rebroadcast or distributed, or prohibited from being provided to any third party, was used, but the plaintiffs are not claiming/proving that the reputation of the plaintiffs were damaged due to the disclosure of any false information.  Furthermore, when we take into consideration the fact that the reconciliation recommendation decision confirmed between P and the plaintiff is not enforceable on the defendant, and the fact that it cannot be concluded that a decision was made by the reconciliation recommendation decision regarding whether the Hong Kong mosquito scene was illegally videotaped or not, the claims of the plaintiffs are groundless.

Even if we interpret the claim of the plaintiffs regarding the Hong Kong mosquito net scene as disputation of the suspicion of sex scandals with the Japanese female church members, based on the explanation of a person related to the plaintiffs provided to the defendant side, it is acknowledged that Plaintiff D was staying with the church members from Japan inside the mosquito net at that time.  In light of this fact, it is appropriate to deem that the report of the defendants when the scene was transmitted during the broadcast of this case, namely the report that "It was suspected that sexual scandals with female Japanese church members were presented" is not false.


**5) The interviews of female church members indicating that they were sexually assaulted by Plaintiff D (claim 6)**

The broadcast in this case includes a scene in which an anonymous woman states in an interview with a reporter, "I took off everything and posed to take photographs because I had been told that since I love the lord I had to give my body as a matter of fact, and (at that time I was) 18 years old," with the subtitle "AI broadcast scene dated April 18, 2006."

The plaintiffs have the responsibility to prove that the disclosure is false, but they merely dispute that the applicable interview is a groundless one-sided claim, but they have not presented any evidence to support that the interview is false.  Therefore, the claim of the plaintiffs regarding this is groundless.

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

**6) The claim that Plaintiff D escaped to Taiwan in '99 (claim 7)**

The plaintiffs claim that it is not true that the prosecutors' office started to investigate Plaintiff D around 1999, or that Plaintiff D escaped to Taiwan in order to avoid the investigation.  However, when we examine the details of Evidence 21 as well as the overall points of the arguments, it is appropriate to deem that around 1999 the prosecutors' office started to investigate Plaintiff D's suspected crimes, and so on, that Plaintiff D left the country to stay in foreign countries including Taiwan around January of 1999 when some media outlets exposed his suspected crimes, and that around May of 2007 he was arrested by the Chinese police and deported to Korea.  When taking these acknowledged facts into consideration, it would be appropriate to deem that these disclosures are not false.

Regarding these facts, the plaintiffs claim that Plaintiff D didn't leave the country by presenting Evidence Gap 5-1 to Evidence Gap 5-3 (the photograph that Plaintiff D took with AL, the photograph in which a lecture is given at AM School).  However, it cannot be deemed that it would have been impossible to hold a lecture or take a commemorative photograph of a celebrity even during the escape period, and it cannot be denied that Plaintiff D was able to avoid being investigated while he stayed overseas, so the claim of the plaintiffs is groundless.

**7) Regarding bikini videos, nude pictures, and exchanges of sexual letters (claim 8 and claim 14)**

The plaintiffs claim that the bikini video reported by the broadcast in this case is completely unrelated to the plaintiff side, and that it is not true that female church members sent nude photographs to Plaintiff D during his imprisonment or exchanged letters containing sexual contents with him.

Court of Republic of Korea

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

When we examine the contents of Evidence Gap 4, Evidence Eul 11, and Evidence Eul 12 along with the testimony of witness AN and the entire points of the arguments, we can acknowledge the fact that when the defendant side asked Plaintiff D about the nude pictures and the Christmas video sent by female church members, a person related to the Plaintiff Missionary stated, "It is really a shame for the representative of the religious group.  The religious group took punitive measures.  He expressed himself aggressively in his own way, and it was a very puerile behavior," thereby acknowledging that these allegations were true, the fact that during an interview with the defendant side an anonymous informant stated, "There are people who send sexual pictures.  Sometimes the head of the church requests first.  He asks for photographs, and sends underwear clothes, asking them to take pictures with these clothes put on, and there are even some women who were given T-panties," the fact that witness AN also testified that she had sent such photographs of herself to Plaintiff D, and so on.

In light of this, it would be appropriate to deem that it is not false that the allegations made in the broadcast in this case, namely "female church members sent nude pictures to D and letters containing sexual contents were exchanged even during imprisonment" are not false.

### 8) Extraction/citation of the appellate decision (claim 10)

The broadcast in this case extracted and cited the following part from the appellate decision of the criminal case related to Plaintiff D, and includes the narration "The High Court determined that many female church members became victims as they were unable to make decisions properly in response to such statements as, 'God allowed,' and 'You will be in big trouble if you disobey me.'"

> Even the defendant testified that such statements as "God allowed me every woman in the world," "Jesus becomes happy through my body," "You will be in big trouble if you disobey me" were made, proving that many female church members who had already been religiously brainwashed were being sexually exploited or were being forced to engage in indecent acts after losing the ability to make decisions (logically as if they were hypnotized under various  secretive religious atmospheres)[1] (page 3 of the appellate decision).

---

[1] This part was omitted in the broadcast.

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

The content of the table is from the appellate decision indicating the primary charge that J was forced to engage in indecent activities.  Based on the fact that the plaintiffs were pronounced not guilty by the appellate court regarding the primary charge, the plaintiffs are claiming that the defendants falsely reported that the plaintiffs were pronounced guilty for the part for which they were pronounced not guilty.  However, the appellate court determined that the plaintiffs were not guilty regarding the primary charge that J was forced to engage in indecent activities on the ground that it couldn't be acknowledged that threats were applied to such an extent that resistance would be difficult.  However, regarding the secondary charge that J was forced to engage in semi-indecent activities, it was acknowledged that resistance was substantially difficult and the guilty verdict was pronounced as a result, and the secondary charge was indicated by citing the content of the above table, which is part of the primary charge, so eventually the content of the above table constitutes the secondary charge, the verdict of which was guilty.

Therefore, the allegation made by the broadcast in this case, namely "The High Court determined that many female church members became victims as they were unable to make decisions properly in response to such statements as, 'God allowed,' and 'You will be in big trouble if you disobey me'" is true, so it cannot be deemed that the broadcast in this case falsely reported a charge that had been pronounced as not guilty as guilty.


**9) The part regarding the holding of an event at the Olympic Part around February of 2019 (claim 11)**

The broadcast in this case shows a scene in which a large crowd is gathered at the Olympic Park with the subtitle "C Missionary (also known as H) event at the Olympic Park in February of 2019."  Although the plaintiffs claim that no such event was held around at the Olympic Park around February of 2019, in light of the fact that the source of the applicable scene is Corporation AO (hereinafter to be referred to as "AO"), which is suspected to be a related company of the Plaintiff Missionary, the fact that Plaintiff D appears after being released from prison, and so on, it seems that the Plaintiff Missionary held such an event, even if the date and location indicted could be false.  Therefore, even if such details as the date and location are false, it seems that the important part, namely the point that a large event was held by the Plaintiff Missionary with the participation of Plaintiff D after Plaintiff D's release from prison seems to conform to objective facts, so the claim of the plaintiffs that the disclosure of the holding of such an event is false cannot be accepted.

Court of Republic of Korea

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

### 10) The tap dance and soccer scene (claim 12)

The plaintiffs claim that the defendants reported that that the Plaintiff Missionary is idolizing Plaintiff D by showing footages of Plaintiff D tap dancing and scoring a goal in a soccer game in the broadcast in this case, but in light of the fact that the tap dance scene and the soccer game scene used in the broadcast in this case were shot by AO, the fact that the statements included in the scene "You learned right away," "I watch with my eyes and record in my brain," "The holy spirit coaches me, and when I shoot 10 times I score almost 8 goals," and "The holy spirit showed stunts through you, teacher" were either inserted by AO or made directly by Plaintiff D, the fact that even though the panel members who appeared in the broadcast in this case commented "Does he really read once and memorize to be able to repeat" and "Nobody is covering him," these comments were subjective opinions of the panel members, and so on, it cannot be deemed that the applicable part of the broadcast satirized Plaintiff D or disclosed or insinuated that the Plaintiff Missionary is a group of maniacal church members steeped in idolization.

### 11) The "R prayer" part (claim 13)

When we examine the facts, based on the broadcast in this case and the points of the entire arguments the fact that the inmate number of Plaintiff D was R, and the fact that a former church member of the Plaintiff Missionary stated during the interview that the Plaintiff Missionary recommended that one's fortune would improve by praying at 1:00 AM, 1:00 PM, and 7:00 PM in accordance with the inmate number of Plaintiff D.  In light of the fact that the plaintiffs acknowledge that the Plaintiff Missionary recommended the church members to pray at 1:00 AM, 1:00 PM, and 7:00 PM, the claim of the plaintiffs that the defendants provided false information regarding this matter cannot be accepted.

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

**12) "Love of the lower body" part (claim 15)**

The broadcast in this case includes a recent interview with a former church member who states during the interview, "They said that we should not love anyone except God.  However, they said that we should love with our body, not just with our head, and they said that we should be able to give our lower body to him.  It was exactly said that the lower body should be offered."

Although the plaintiffs claim that the Plaintiff Missionary refers to physical love as "lower body love," and that it is not right to carry out "lower body love," and that cerebral love is emphasized.  However, it would be difficult to conclude that the interview content of the former church member is false simply based on the external position or external religious principles of the Plaintiff Missionary, and there is no evidence to acknowledge falsity of the interview.


**13) The part that deals with the conflict between the son and daughter and the father (claim 16)**

The plaintiffs claim that the cause of the conflict between the son and daughter and the father dealt with in the broadcast in this case was caused not by the Plaintiff Missionary but by the father's enforcement of religious conversion.  However, in light of the following circumstances acknowledged by the broadcast in this case, by the testimony of witness AP[2], by the points of the entire arguments, and so on, namely the fact that it seems that the fundamental cause of the conflict was the children's membership in the Plaintiff Missionary, the fact that the enforced conversion was carried out in order to cut the relationship between his children and the Plaintiff Missionary, and so on, the information disclosed in the broadcast in this cannot be deemed to be false.

---

[2] The witness appeared in the broadcast in this case to state that there was a conflict with the children who were actively involved in the Plaintiff Missionary.

Court of Republic of Korea

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

**14) The part where the possibility of a retrial was mentioned (claim 17)**

The plaintiffs claim that the broadcast in this case contains a scene where a person related to the Plaintiff Missionary discloses a retrial plan, thereby falsely implying that the Plaintiff Missionary is a dangerous pseudo-religious group composed of maniacal church members, but the broadcast in this case merely showed the scene in which the person related to the Plaintiff Missionary is meeting with the defendant side and states, "After the death of President AQ, an application for a retrial seeking his innocence was filed.  We also have such a plan, but at this point in time that is not the case," and there was no indication that the religious group was a dangerous pseudo-religious group composed of maniacal church members, so it would be difficult to conclude that the false implication claimed by the plaintiffs was made.

**15) Regarding the claims that the Plaintiff Missionary educated women to offer sexual favors and that Plaintiff D sexually harassed female church members on the pretext of physical examinations (claim 18 and claim 19)**

When we comprehensively examine the points of the entire arguments in addition to the details of Evidence Eul 4, Evidence Eul 10, Evidence Eul 11, Evidence Eul 13, and Evidence Eul 14, the fact that there are women who claim that they were sexually harassed by Plaintiff D, the fact that they all testified that a person related to the Plaintiff Missionary had stated before meeting with Plaintiff D, "It is possible for the minister to touch you to test your belief" and "Even if the minister touches your genital, it is for a physical examination, so you should not be surprised," and the fact that in a related criminal case Plaintiff D was pronounced guilty for committing such crimes as sexually harassing female church members on the pretext of a physical examination, raping female church members, and so on can be acknowledged.

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

In light of these acknowledged facts, it seems that there were people inside the Plaintiff Missionary who knew well that Plaintiff D was harassing female church members on the pretext of conducting physical examinations but connived or silently accepted such harassments, so the information disclosed by the defendants in the broadcast in this case is deemed to conform with facts.

### 16) The pine tree part (claim 20)

The plaintiffs claim that, even though the pine tree painting of Plaintiff D doesn't express any sexual content, the broadcast in this case satirizes the applicable painting by connecting the painting with the sexual scandals of Plaintiff D.

The broadcast in this case contains a scene of AO without any modifications, and in the scene Plaintiff D introduces a pine tree painting that he drew and preaches, "The head is a fruit.  This painting delineates God's configurations without modification.  Women should exercise to become muscular as well." Therefore, the broadcast in this case merely points out that Plaintiff D expressed the female body with a pine tree, so it cannot be concluded that the broadcast pointed out or insinuated that "the applicable expresses twisted sexual desires of Plaintiff D."

### 17) Regarding the song called <S> (claim 21)

The plaintiffs claim that the broadcast in this case erroneously reported that the song <S> written by Plaintiff D is a sexual song, but in light of the fact that according to the lyrics and music of this song (Evidence Gap 12) the song contains the lyric, "A human relationship is formed even when even clothes of two persons touch, so when skin is touched, more than a simple human relationship is formed," as reported by the broadcast in this case, and in light of the fact that in the broadcast in this case the scene related to this song moves to the scene where it is described that the Plaintiff Missionary carries out various cultural activities, it is difficult to conclude that the broadcast in this case insinuated or pointed out the false information as claimed by the plaintiffs, namely that broadcast point out or insinuated that the song <S> is a sexual song.

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

**18) The part regarding proselytization through proposing modeling deals, and so on (claim 22)**

When we comprehensively examine the testimonies of the witnesses AP and AN as well as the points of the entire arguments, we can acknowledge the fact that the son of witness AP became a church member of the Plaintiff Missionary after being recommended by the Plaintiff Missionary to become a model, the fact that that witness AN became a church member of the Plaintiff Missionary through a colleague befriended at an modeling agency where the witness engaged in modeling activities, and so on.

In light of these facts, it would be difficult to conclude that the fact presented by the broadcast in this case, namely the fact that the Plaintiff Missionary proselytizes by proposing modeling deals to young people, and so on is false.

Also, according to the interviews that indicate that the Plaintiff Missionary carries out proselytization activities through club activities and so on while hiding the fact that it is a religious group, the plaintiffs have the responsibility to prove that the fact pointed out is false.  However, the plaintiffs merely dispute that the applicable interviews are false, but have not submitted any evidences to support the claim that the interviews are false.  Therefore, the plaintiff's claim regarding this part is groundless.

**19) The T interview (claim 23)**

The plaintiffs claim that the defendants portrayed the church members of the Plaintiff Missionary as social misfits by including an interview with T in the broadcast in this case.  However, T's statement ("I think it is half and half.  There must be some people who really believe in the religion.  Also, there must be some people who come even though they don't believe in the religion.  A person has to deny his or her life completely.  Also, they are afraid.  They haven't done anything in life.  They have to get out while being unprepared to live in this society.  I would like to tell these people that this is the earliest time to get out.") is simply an opinion or evaluation based on T's subjective perspective regarding why it is difficult for the church members of the Plaintiff Missionary to quit the religion.

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

**20) The brainwashing part (claim 24)**

The broadcast in this case narrates about a former church member of the Plaintiff Missionary who was a member for 14 years who states, "People tend to be most afraid that they quit erroneously.  That is because the church officials brainwash the church members frequently that church members will end up dead if they quit the church.  They spread false rumors, such as rumors that those who quit got cancer, died from traffic accidents, or divorced," and about a former church member, who is shown having a meal with her daughter, and who states, "I also believed that that place was the truth for many decades.  There was even a period when I was such a fervent believer that I didn't send my daughter to school on the ground that my daughter's religious belief was insufficient, and I emphasized only belief.  Therefore, the impact of having to face the truth was very big."

When we examine these scenes, we can only see that based on the interpretation of the narration it was the choice of the mother, who was a fervent church member, not to send her daughter to school, and it cannot be concluded that the broadcast in this case pointed out that the mother stopped sending her daughter to school due to the brainwashing of the Plaintiff Missionary or of Plaintiff D.

Also, regarding the interview stating that church members were brainwashed to believe that they would die if they quit, the plaintiffs have the responsibility to prove that the fact pointed out is false.  However, the plaintiffs merely dispute that the interview details are not true, and have not submitted any evidences to support that the interview is false.  Therefore, the plaintiffs' claim regarding this part is groundless.

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

**21) The claim that Defendant B 's editing distorted facts (claim 25)**

Although the plaintiffs claim that Defendant B transmitted the broadcast in this case without sufficiently reflecting the counterarguments of the plaintiff side, the claim of the plaintiffs regarding this part is groundless since the plaintiffs do not specify how false information was provided with distorted editing of Defendant B or what counterarguments were omitted.

**C. Sub-conclusion**

Therefore, the claim of the plaintiffs seeking compensation for damages on the ground that the broadcast in this case damaged the reputation of the plaintiffs by pointing out false information cannot be accepted.

**4. Determination regarding the claim for deletion**

**A. Related legal principles**

Reputation is a very important legal right along with life and the body, and the reputation right is an exclusive right along with real rights as personality right, and therefore in the event that a person's objective reputation, which is an objective evaluation provided by the society regarding the person's personal values such as personality, ethical conduct, fame, credibility, was illegally violated, the person may seek compensation for damages (Article 751 of the Civil Law) or dispositions to recover reputation (Article 764 of the Civil Law) as well as seeking to stop the violator to stop the violation based on the reputational right as part of the personality right or seeking to prohibit future violations in order to prevent violations that could occur in the future (refer to Supreme Court January 17, 2005 2003Ma1477 Decision).

On the other hand, in determining whether the claim for the deletion of news articles constitutes a claim for removal of disturbance on the ground of violation of the personality right, the claim of the plaintiffs seeking compensation for damages based on it would be necessary to determine whether the contents are not true or whether the plaintiff's reputation has been substantially violated due to news articles that are not related to the public welfare must be determined by comparing/quantifying the two values, which are the freedom of speech and the personality right (refer to Supreme Court March 28, 2013 Judgment 2014Da60950 Decision, etc.).

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

**B. In the case of this case**

The information provided by the broadcast in this case cannot be concluded to be false, as we agreed previously, and the contents fall under the public interest.  Therefore, when we compare/quality the extent to which the personality right of the plaintiffs has been violated by the broadcast in this case and the freedom of speech, the claim of the plaintiffs seeking to delete the broadcast in this case cannot be accepted.

**5. Conclusion**

Then, all of the claims of the plaintiffs are rejected based on the fact that the claims are groundless, and a decision is made as stated I the text.

Head judge      Judge Byungcheol Kim


Judge Kisang Chung


Judge Seunghye Seon

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

**Addendum 1**

## List of the Plaintiffs

1. C Missionary
2. D
3. W
4. X
5. Y
6. Z
7. AA
8. AB
9. AC
10. AD
11. AE
12. AF
13. AG
14. AH. End of Addendum 1

This decision document was viewed/printed from the Internet decision document view site.  It is prohibited by the law to damage the reputation or peace of mind of those people related to the case using the decision document.  Date of anonymization: 01-15-2024

**Addendum 2**

## Script of the broadcast in this case

(Refer to the attached files)

End of Addendum 2



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK          )
                          )                    ss:
COUNTY of NEW YORK   )

**CERTIFICATE OF ACCURACY**

This is to certify that the document, "1-3-1. [Civil Defamation Decision] Seoul Central District Court Decision 2019Gahap567565 rendered on November 25, 2020" is to the best of our knowledge and belief, a true, accurate, and complete translation from Korean into English.

Dated: 7/19/2024

_Heather Cameron_ (signature)
Heather Cameron
Project Manager
Consortra Translations

Sworn to and signed before ME
This 19th day of July, 2024

_James G Mamera_ (signature)
Notary Public

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Comm. Expires Dec. 4, 2026

Your
legal
translation
partner

# EXHIBIT 10



The present written judgement was viewed and printed from the Public Reading of Written Judgement.  Any action that uses the present written judgement to harm the honor or peace of life of the person involved in the case is prohibited in accordance with relevant laws and regulations.  Anonymization processing date:  Jan. 15, 2024

# Seoul High Court

# 13th (Thirteenth) Civil Affairs Division

# Judgment

| | |
|---|---|
| Case | 2020Na2048759     Compensation for damages (etc.) |
| Plaintiff, Appellant | 1.  C Mission Church |
| | 2.  D |
| | 3.  W |
| | 4.  X |
| | 5.  Y |
| | 6.  Z |
| | 7.  AA |
| | 8.  AB |
| | 9.  AC |
| | 10.  AD |
| | 11.  AE |
| | 12.  AF |
| | 13.  AG |
| | 14.  AH |
| | Plaintiffs' Litigation Agent Lawyer Yeonrang Lee |
| Defendant, Appellee | 1. A Co. Ltd. |

The present written judgement was viewed and printed from the Public Reading of Written Judgement.  Any action that uses the present written judgement to harm the honor or peace of life of the person involved in the case is prohibited in accordance with relevant laws and regulations.  Anonymization processing date:  Jan. 15, 2024

2.  B

Defendants' Litigation Agent Duksu Law Firm Lawyers in charge Dae-ho Lee and Min-young Choung

| | |
|---|---|
| First Trial Judgement | Seoul Central District Court Nov. 25, 2020 Case No. 2019KaHap567565 Judgement |
| Closing Argument | Jun. 16, 2023 |
| Rendition of Judgement | Jul. 14, 2023 |

## Main Text

1. All appeals filed by the plaintiffs against the defendants are dismissed.

2. The costs are taxed against the plaintiff.

## Purpose of Claim and Appeal

1. The first trial judgment is annulled.

2. The defendants shall jointly pay the plaintiffs C Mission Church and D 300 million KRW each and the above money calculated at an annual rate of 12% from the day after the date of delivery of the copy of the appeal of this case until the date of full repayment.

3. Defendant A Co. Ltd. shall delete live broadcast and trailer of 'F' and "G" dated Mar. 27, 2019 posted on E site (internet address 1 omitted) within 7 days from the date of this judgment.

4. In the case Defendant A Co. Ltd. fails to fulfill the provisions of Paragraph 3 within the period specified in Paragraph 3, Defendant A Co. Ltd. shall pay the Plaintiffs money calculated at the rate of 1 million KRW per day from the day following the expiration of the above period until the date of completion.



The present written judgement was viewed and printed from the Public Reading of Written Judgement.  Any action that uses the present written judgement to harm the honor or peace of life of the person involved in the case is prohibited in accordance with relevant laws and regulations.  Anonymization processing date:   Jan. 15, 2024

[The plaintiff filed an application dated Nov. 22, 2021 for amendment of the cause of action to the effect that "The defendants jointly and together demand 5 million KRW each excluding plaintiffs C Mission Church and D, and for each of the above money, calculated at an annual rate of 12% from the day after the date of delivery of the copy of the complaint in this case until the date of full repayment." The plaintiffs stated in this court that they had filed an application for amendment of the above purpose of claim and appeal to add a request for deletion of the part of the list in Attachment 1 of the above broadcast and trailer, but that this was not an addition or change of the purpose of the claim, but a preliminary argument to the effect that at least the request for deletion of the part of the list in Attachment 1 should be cited, even if the request for deletion of the part mentioned in Attachment 1 listing is not accepted in its entirety as the purpose of the claim].

Reason

1.  Citation of First Trial Judgement

The plaintiffs' grounds for appeal are not much different from their arguments in the first trial. Even if the evidence additionally adopted and investigated by this court is added to the evidence legally adopted and examined by the first trial, the findings of fact and judgment of the first trial are justified. Therefore, the reasons for this court's decision are the same as the reasons for the first trial decision except for changes as in paragraph 2 below, and are cited as is, including the abbreviations and Attachment 2, in accordance with the main text of Article 420 of the Civil Procedure Code

2.  Parts that are changed

In the first trial judgment, page 9, line 15, ''exists'' is rewritten as follows.

"...exists or the plaintiff is illegally following and chasing the informant in order to prevent the broadcast report..."



The present written judgement was viewed and printed from the Public Reading of Written Judgement.  Any action that uses the present written judgement to harm the honor or peace of life of the person involved in the case is prohibited in accordance with relevant laws and regulations.  Anonymization processing date:   Jan. 15, 2024

In lines 5 and 6 of page 11 of the first trial judgment, "It is reasonable to believe that the facts are not false." is rewritten as "It is not enough to acknowledge that the facts are false, and there is no other evidence to acknowledge this."

In the first trial judgment, page 16, lines 12 and 13, "The facts stated in the broadcast of this case cannot be considered false" are rewritten as follows.

"It is difficult to say that the cause of the conflict between the siblings and their father during the broadcast of this case is unrelated to the plaintiff Church, and there is no specific claim or proof to view this part as false (what is the main cause of the conflict between the siblings and their father?). Whether or not it is recognized can only be seen as a kind of comment or expression of opinion, and it is difficult to view it as a disclosure of facts that constitute an illegal act of defamation."

Page 20 of the first trial judgment, lines 14 to 17, are rewritten as follows.

"Plaintiffs claim that Defendant B omitted all of the Plaintiff's counterarguments in the broadcast in this case and indicated by way of insinuation that 'the Plaintiff only conveyed its position requesting unconditional reconsideration of the broadcast.' However, according to the description of exhibit No. 4, the broadcast of this case only contains the content that the plaintiff requested to reconsider the broadcast of this case three times, and the plaintiff requested reconsideration without any basis, so it is difficult to say that the broadcast of this case contained the same facts as the plaintiffs' above allegations."

At the bottom of page 21 of the first trial judgment, the following information is added under the third line.

"Plaintiffs argued that since it is a violation of the Criminal Procedure Code to publicly broadcast a confidential decision on a public broadcaster for a commercial fee, the portion that excerpts or cites the appellate court decision in the criminal case against Plaintiff D during the broadcast of this case should be deleted.

- 4 -



The present written judgement was viewed and printed from the Public Reading of Written Judgement.  Any action that uses the present written judgement to harm the honor or peace of life of the person involved in the case is prohibited in accordance with relevant laws and regulations.  Anonymization processing date:  Jan. 15, 2024

however, the broadcast portion above cannot be regarded as false, and there is no evidence to suggest that the defendants committed an illegal act in the course of covering and reporting the above portion, so the plaintiffs' above claim is without merit."

3.  Conclusion

All of the plaintiffs' claims against the defendants are without merit and should be dismissed. Since the decision of the first trial is justified in concurring with this conclusion, all of the plaintiffs' appeals against the defendants are dismissed without merit.

Presiding Judges          Judge          Kwang-seop Moon

Judge          Moon-gyeong Jeong

Judge          Jun-hyeon Lee



The present written judgement was viewed and printed from the Public Reading of Written Judgement. Any action that uses the present written judgement to harm the honor or peace of life of the person involved in the case is prohibited in accordance with relevant laws and regulations. Anonymization processing date: Jan. 15, 2024

Attachment 1

## List

1. 0:00:46~0:01:56 (Portion about Interview Interference)

2. 0:03:08~0:03:11 (Portion about 100 sexual assaults in Japan)

3. 0:03:46~0:03:55 (Portion about Governor D fleeing to Taiwan in 1999)

4. 0:04:07~0:04:49 (Portion about photos and videos of woman in bikini)

5. 0:05:24~0:05:41 (Portion about Hong Kong's mosquito net video)

6. 0:05:51~0:06:07 (Portion about Disclosure of President D's criminal judgment)

7. 0:06:30~0:06:57 (Portion about AO Co. Ltd. video work of false coverage on Olympic Park on February 2019)

8. 0:06:58~0:07:33 (Portion about AO Co. Ltd. Video work of tap dancing, Soccer scene caricature)

9. 0:08:17~0:08:50 (Portion about R prayer)

10. 0:08:51~0:09:45 (Portion about sending sexual letters to a female believer while incarcerated)

11. 0:10:49~0:11:19 (Portion about being told to give up your lower body)

12. 0:11:44~0:12:35 (Portion about Messiah)

13. 0:22:52~0:23:35 (Portion about AO Co. Ltd. Video work on rite of ordination)

14. 0:23:36~0:23:58 (Portion about distorted report on picture of palm tree)

15. 0:23:59~0:24:l0 (Portion about distorted report on 'S' lyrics)

16. 0:24:45~0:25:48 (Portion about disguised missionary work)

17. 0:29:25~0:30:42 (Portion about interview with siblings)

18. 0:30:43~0:32:36 (Portion about T interview and brainwashing education of 'if you leave, you will die')



100 Park Avenue, 16th Fl
New York, NY 10017
www.consortra.com

STATE of NEW YORK          )
                          )                    ss:
COUNTY of NEW YORK      )

### ***CERTIFICATE OF ACCURACY***

This is to certify that the attached document, "1-3-2. [Civil Defamation Appeal Decision] Seoul High Court Decision 2020Na2048759 rendered on July 14, 2023_English" -- originally written in Korean is to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 7/18/2024

Heather Cameron
Project Manager
Consortra Translations

Sworn to and signed before ME
This 18th day of July, 2024

Notary Public



# EXHIBIT 11

11 July 2024 5:37 PM                                    Print Screen



**COURT OF THE REPUBLIC OF KOREA**

COURT OF KOREA                                          ✕



Fast, Convenient and High-Quality Judiciary Services: **Supreme Court E-Litigation**

Note that the case information provided in this site has **no legal effect** and can be used as reference only. Court decisions and case records can be accessed online at the E-Litigation website for all cases electronically processed including civil and patent cases.

<u>General Case Information</u>          Case Progress Information

| Case Number: Daejeon District court 2022GOHAP443 | Jung Myung Seok |
|---|---|

**Basic Information**

| Case Number | 2022GOHAP443 |
|---|---|
| Name of Accused | JUNG, Myung Seok |
| Chamber | Criminal Affairs 12 (C) (Tel: 042-470-1860 (Trial Dates: M, W, F) 470-1836 (Criminal Compensation) |
| Filing Date | 28 Oct 2022          Conclusive Judgment: Ruled on 22 Dec 2023 |
| Criminal Case Number | 2022 Criminal No. 29616 |
| Appeal Status | Both parties appealed on 22 Dec 2023/ Referred to the Appeal Court on 11 Jan 2024 |

**Appeal Information**

| Law Court | Case Number |
|---|---|
| Daejeon High Court | 2024NO15 |

**Proceedings History**

| Date | Time | Type of Proceeding | Location | Results |
|---|---|---|---|---|
| 2023. 6. 20 | 14:00 | Trial Date | Courtroom 230, Main Bldg. | Proceeding |
| 2023. 7. 18 | 10:00 | Trial Date | Courtroom 230, Main Bldg. | Date Change (Presumptive) |
| 2023. 11. 21 | 10:00 | Trial Date | Courtroom 230, Main Bldg. | End of arguments |
| 2023. 12. 22 | 14:00 | Ruling Date | Courtroom 230, Main Bldg. | Ruling/Sentencing |

Only the recent dates are displayed above. Please ensure to use the Advanced Search feature for a comprehensive review.

**Recent Filing History**

| Date | Filing |
|---|---|
| 2023. 12. 29 | Miscellaneous: 00 CHOI filing an application to access and photocopy |
| 2024. 01. 02 | Court/Supreme Court: An application submitted for document transfer |
| 2024. 01. 05 | Court/Supreme Court/Integrated Court Services: An application submitted for document transfer |

1/3

11 July 2024 5:37 PM                              Print Screen

| Date | Filing |
|------|--------|
| 2024. 01. 09 | Miscellaneous: 00 OH filing a petition. |

Only the most recently filed applications are displayed above. Please ensure to use the Advanced Search feature for a comprehensive review.

Related Cases

| Court | Case Number | Classification |
|-------|-------------|----------------|
| Daejeon District Court | 2022JEONGO52 | Miscellaneous |
| Daejeon District Court | 2023CHOGI1855 | Application Case |
| Daejeon District Court | 2023CHOGI3042 | Application Case |
| Daejeon District Court | 2023JEONGO10 | Miscellaneous |

Separate/Joint Proceedings

| No | Case Number | Classification | Date |
|----|-------------|----------------|------|
| 1 | 2023JEONGO10 | Case jointed | 2023. 5. 18 |
| 1 | 2023GOHAP161 | Case jointed | 2023. 4. 18 |
| 1 | 2023GOHAP162 | Case jointed | 2023. 4. 18 |

Accused and Crimes Information

| Please check the box below if you wish to search fixed dates. |
|---|
| □ Confirm |
| Fixed dates have no legal effect, subject to change and are provided for your reference only. |

| Full Name | Allegation | Fixed Date |
|-----------|------------|------------|
| 1. JUNG, Myung Seok | Quasi-rape, etc. | Check the Confirm box above. |

Attorney Retention History

| Classification | Name of Attorney |
|----------------|------------------|
| Accused 1 | Gwangjang Law Firm (LLC) (Attorneys: Jaeman You and Gapjin Choi) (Resigned) |
| Accused 1 | Taeil Law Firm (Attorney: Jinsu Kim) |
| Accused 1 | Attorney Inho Kim |
| Accused 1 | Gyungbok Law Firm (Attorney: Jangho Jung) (Resigned) |
| Accused 1 | Attorney Yeonrang Lee |
| Accused 1 | Attorney Seungnam Yang (Resigned) |
| Accused 1 | Justice Law (Attorney: Yunsang Hwang) |
| Accused 1 | Attorney Sangyeon Han |
| Accused 1 | WIN Law (Attorney: Jongoh Lee) (Resigned) |

2/3

11 July 2024 5:37 PM                                    Print Screen

| Classification | Name of Attorney |
|---|---|
| Accused 1 | Attorney Jaegyu Kang (Resigned) |
| Accused 1 | Attorney Jungho Park |
| Accused 1 | Attorney Dohoon Kim (Dismissed) |
| Accused 1 | Seopyeong Law Firm (Attorneys: Jaesoon Lee, Yongyeon Cho and Sejung Kim) |

Case progress information for criminal trial cases is available for records from July 1, 2001, onwards.

3/3



100 Park Avenue, 16th Fl
New York, NY 10017
www.consortra.com

STATE of NEW YORK        )
                         )                ss:
COUNTY of NEW YORK       )


### *CERTIFICATE OF ACCURACY*


This is to certify that the attached document, "2-1. [Second Criminal Decision] [Court Website] Daejeon District Court 2022Gohap443 - Decision rendered on 2023. 12. 22._EN" -- originally written in Korean is to the best of our knowledge and belief, a true, accurate, and complete translation into English.



Dated: 7/16/2024                          Sworn to and signed before ME
                                          This 16th day of July, 2024

Heather Cameron                           Notary Public
Project Manager
Consortra Translations



JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Comm. Expires Dec. 4, 2026

Your
legal
translation
partner

---

New York, NY  |  Washington DC  |  Houston, TX  |  San Francisco, CA  |  London