## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KOREA CGM MEMBERS
ASSOCIATION, a non-profit
corporation organized and existing
under the laws of the Republic of
Korea,

      Plaintiff,

      v.

NETFLIX, INC., a Delaware
corporation, and DOES 1–50, inclusive,

      Defendant.

Civil Action No. 24-cv-267-GBW

## DEFENDANT NETFLIX, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE THE AMENDED COMPLAINT

WILLKIE FARR & GALLAGHER LLP
Michael Gottlieb (admitted *pro hac vice*)
Meryl Governski (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Chad M. Shandler (#3796)
Jessica E. Blau (#7163)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
shandler@rlf.com
blau@rlf.com

*Attorneys for Defendant Netflix, Inc.*

Dated: October 8, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... iii

I.     THIS LAWSUIT DOES NOT BELONG IN THIS FORUM. ...........................1

     A.     Plaintiff Concedes Dismissal Is Warranted Based On International Comity. .........1

     B.     The Opposition Strengthens The Motion's *Forum Non Conveniens* Argument. ....1

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION. .....................6

     A.     Plaintiff Does Not Justify The Failure To Identify The Challenged Statements.....6

     B.     The Opposition Affirms The Challenged Statements' Substantial Truth...............6

     C.     Plaintiff Does Not Meaningfully Address Its Failure To Plead Actual Malice.......7

     D.     The Challenged Statements Are Not "Of And Concerning" CGMMA..................8

     E.     The Challenged Statements Are Not Defamatory As A Matter Of Law. .............11

III.     THE COURT SHOULD STRIKE THE COMPLAINT AND SHIFT COSTS TO THE PLAINTIFF PURSUANT TO CALIFORNIA'S ANTI-SLAPP ACT. ...........................11

CONCLUSION.....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barger v. Playboy Enters., Inc.*,
　564 F. Supp. 1151 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984) ...............................8

*Behrens v. Arconic, Inc.*,
　487 F. Supp. 3d 283 (E.D. Pa. 2020), *aff'd in part, rev'd in part*, 2022 WL
　2593520 (3d Cir. July 8, 2022) .........................................................................................4

*Blatty v. N.Y. Times Co.*,
　42 Cal. 3d 1033 (1986) ..............................................................................................8, 11

*Broughty v. Bouzy*,
　2023 WL 5013654 (D.N.J. Aug. 7, 2023) ..............................................................................13

*CoreCivic Inc. v. Candide Grp., LLC*,
　46 F.4th 1136 (9th Cir. 2022) ................................................................................12, 13, 14

*D.A.R.E. Am. v. Rolling Stone Mag.*,
　101 F. Supp. 2d 1270 (C.D. Cal. 2000) ................................................................................10

*Dahl v. United Techs. Corp.*,
　632 F.2d 1027 (3d Cir. 1980)..............................................................................................5

*Dodots Licensing Sols. LLC v. Lenovo Holding Co.*,
　2018 WL 6629709 (D. Del. Dec. 19, 2018)..........................................................................9

*Eastwood v. Nat'l Enquirer, Inc.*,
　123 F.3d 1249 (9th Cir. 1997) ..............................................................................................8

*Eliott v. Lions Gate Ent. Corp.*,
　639 F. Supp. 3d 1012 (C.D. Cal. 2022) ................................................................................7

*Erie Railroad Co. v. Tompkins*,
　304 U.S. 64 (1938)................................................................................................................14

*Gilead Sciences, Inc. v. Abbott Laboratories, Inc.*,
　2015 WL 1191129 (D. Del. Mar. 13, 2015) ........................................................................13

*Glob. Relief Found. v. N.Y. Times Co.*,
　2002 WL 31045394 (N.D. Ill. Sept. 11, 2002) ....................................................................14

*Godin v. Schenks*,
　629 F.3d 79 (1st Cir. 2010)..................................................................................................12

iii

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)........................................................................................2, 4

*Hollywood Innovations Group, LLC v. Netflix, Inc.*,
    2022 WL 18584763 (C.D. Cal. Aug. 12, 2022)...............................................3

*Jane Doe L.C. v. Aimbridge Hosp., LLC*,
    2020 WL 5633363 (D. Del. Sept. 21, 2020)................................................3, 4

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods.*
    *Liab. Litig.*,
    553 F. Supp. 3d 211 (D.N.J. 2021) ...............................................................13

*Keeton v. Hustler Magazine*,
    465 U.S. 770 (1984)..........................................................................................5

*Kisano Trade & Inv. Ltd. v. Lemster*,
    737 F.3d 869 (3d Cir. 2013)..........................................................................1, 2

*La Liberte v. Reid*,
    966 F.3d 79 2d Cir. 2020 ............................................................................12, 14

*Lony v. E.I. Du Pont de Nemours & Co.*,
    886 F.2d 628 (3d Cir. 1989)..........................................................................2, 3

*Makaeff v. Trump University, LLC*,
    715 F.3d 254 (9th Cir. 2013) .........................................................................14

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) ...............................................................12, 14, 15

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)......................................................................................1, 2, 5

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 9th Cir. 2018 ...........................................................................13

*Ryanair DAC v. Booking Holdings Inc.*,
    2021 WL 7209367 (D. Del. Dec. 27, 2021)....................................................5

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ..............................................................6

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    549 U.S. 422 (2007)........................................................................................3

*Trout Point Lodge, Ltd. v. Handshoe*,
    729 F.3d 481 (5th Cir. 2013) ..........................................................................5

iv

*Walker v. Armco Steel Corp.*,
    446 U.S. 740 (1980)....................................................................................................12

*Williams v. Netflix, Inc.*,
    2023 WL 3478568 (D. Del. May 16, 2023).............................................................3

*In re Wilmington Tr. Sec. Litig.*,
    2017 WL 2467059 (D. Del. June 7, 2017)...............................................................1

*Wilmot v. Marriott Hurghada Mgmt., Inc.*,
    712 F. App'x 200 (3d Cir. 2017) ............................................................................4

*Windt v. Qwest Commc'ns Int'l, Inc.*,
    529 F.3d 183 (3d Cir. 2008)..............................................................................3, 4

*Wit Software v. Talkdesk, Inc.*,
    2023 WL 3454193 (D. Del. May 15, 2023)......................................................3, 4, 5

*Woulfe v. Universal City Studios LLC*,
    2022 WL 18216089 (C.D. Cal. Dec. 20, 2022), *reconsideration denied*, 2023
    WL 3321752 (C.D. Cal. Mar. 9, 2023) .................................................................14

Netflix submits this reply to the CGMMA's opposition (D.I. 23 ("Opposition" or "Opp."))

to Netflix's Motion to Dismiss and Strike (D.I. 17 ("Motion" or "Mot.")).[1]

## I.   THIS LAWSUIT DOES NOT BELONG IN THIS FORUM.

### A.   Plaintiff Concedes Dismissal Is Warranted Based On International Comity.

As explained in the Motion, international comity demands dismissal because CGM already

brought, and lost, nearly identical actions in Korea. *See* Mot. at 12. CGMMA did not address, and

therefore concedes, the argument. *In re Wilmington Tr. Sec. Litig.*, 2017 WL 2467059, at *2 (D.

Del. June 7, 2017). The Court should dismiss on this basis alone.

### B.   The Opposition Strengthens The Motion's *Forum Non Conveniens* Argument.

The parties agree on the three factors in the *forum non conveniens* ("FNC") analysis and

that the first is met. *See* Mot. at 8–11; Opp. at 2 ("concedes that South Korea is an adequate

available forum"). Contrary to the Opposition, the two remaining factors—the appropriate level of

deference to a foreign plaintiff's choice of forum, and the weighing of private and public factors—

require dismissal.

#### 1.   CGMMA's choice of forum is due less deference.

Despite devoting six pages responding to a single paragraph in the Motion, Plaintiff does

not address binding Third Circuit precedent that when "a plaintiff is foreign," like CGMMA here,

"the choice of a United States forum deserves less deference" *unless* it makes a "strong showing

of convenience" in the chosen forum. *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 874–75

(3d Cir. 2013) (cleaned up); *compare* Mot. at 10, *with* Opp. at 2–8; *see also Piper Aircraft Co. v.

Reyno*, 454 U.S. 235, 255–56 (1981) ("it is reasonable to assume" that a domestic plaintiff's choice

of his home forum "is convenient" but with a foreign plaintiff that "assumption is much less

---

[1] Capitalized terms not defined herein shall be given the meaning ascribed to them in the Motion.

reasonable"); *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 629 (3d Cir. 1989).[2] Plaintiff does not provide any reason why—much less make the required "strong showing" that—Delaware in particular (as opposed to any other forum in the United States) is convenient, and concedes by omission that none of the underlying events, evidence, or witnesses would be located in Delaware. The Court does not need to engage in any further analysis to dismiss the lawsuit on FNC grounds. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (sole focus on controverting "claims as to defendant's inconvenience rather than to showing that the present forum serves any convenience" defeats deference analysis).

Plaintiff argues, without any supporting authority, that even though CGMMA is a foreign plaintiff whose suit relies on events, evidence, and witnesses located abroad, a "middle level of significant deference" applies because Netflix is incorporated here. Opp. at 6–8. But the Third Circuit has held otherwise—namely, that the "focus of the deference inquiry in the Supreme Court, in this Court, and in the Second Circuit is on convenience, not on the particular significance of a party's residence or citizenship or a party's ability to invoke a United States court's jurisdiction." *Kisano*, 737 F.3d at 875. Despite citing *28 cases*, not one supports the proposition that a foreign plaintiff's forum choice is entitled to "significant deference" simply because the defendant is incorporated there. *See* Opp. at 2–13 (citing cases).[3] To the contrary, some of them expressly reject

---

[2] The Opposition does not cite or address *Kisano*, and cites *Lony* without applying its holding. Same with *Piper*, which Plaintiff acknowledges establishes that "American courts are particularly wary of foreign plaintiffs who seek jurisdiction in the United States because the laws may be more favorable to their claims" but then does not challenge that it is seeking jurisdiction here to avoid the Korean courts that have repeatedly rejected its claims. Opp. at 8–9; Mot. at 4–5, 10. Plaintiff also mischaracterizes *Piper*, which does not hold that the "less deference" standard only applies "when a foreign plaintiff *sues a foreign defendant*." *Compare* 454 U.S. at 256, *with* Opp. at 6.

[3] About half of the cited opinions relate to FNC and a foreign plaintiff. Four of those contradict Plaintiff's position; the others include factors not present here, e.g., ripeness, alternative forum, or a "strong showing" of convenience. The remaining cases are irrelevant because they have nothing to do with a foreign plaintiff or FNC. For example, four cases relate to 28 U.S.C. § 1404's transfer

that notion, because the Third Circuit "has made clear" that if "the litigation has little or no connection with the forum state other than that the defendant is incorporated there, that may indicate that suit in that forum is not convenient." *See Wit Software v. Talkdesk, Inc.*, 2023 WL 3454193, at *5 (D. Del. May 15, 2023) (cited at Opp. at 6).[4] This Court should reject Plaintiff's freshly minted "significant deference" standard, and instead hold that Plaintiff's forum choice is entitled to "less deference" under binding law.

Plaintiff also attempts to alter the relevant standard by stating "it is hard to argue that vexation and oppression exist when the defendant is being sued in the defendant's home turf" and attaching a self-serving declaration from someone named Dong Won Kwak to attest that CGMMA did not file suit in Delaware to "vex" Netflix. Opp. at 3; D.I. 23-1. But the "oppression and vexation prong of the *forum non conveniens* inquiry" has nothing to do with motive or the *level of* deference. *See Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 192 (3d Cir. 2008). Rather, it is short-hand for the subsequent balancing test courts apply to determine whether "the balance of the public and private factors 'tips decidedly in favor of trial in the foreign forum'" no matter what level of

---

standard, including one involving Netflix. *See* Opp. at 4 (citing *Williams v. Netflix, Inc.*, 2023 WL 3478568, at *1 (D. Del. May 16, 2023)). Plaintiff's discussion of *Hollywood Innovations Group, LLC v. Netflix, Inc.* is inapposite, including because that case involved "an *American* company seeking to have its *American* copyright enforced under *American* law" rather than a *South Korean* Plaintiff, seeking to avoid *South Korean* courts. 2022 WL 18584763, at *6 (C.D. Cal. Aug. 12, 2022) (emphasis added). Plus, unlike in *Hollywood*, the majority of relevant witnesses and evidence in this case are in Korea. *Compare id.* (private factors weigh in favor of plaintiffs when defendants "did not go beyond vagaries with regard to the location of witnesses and evidence"), *with* Opp. at 8 and Mot. at 10–11.

[4] *See Jane Doe L.C. v. Aimbridge Hosp., LLC*, 2020 WL 5633363, at *3 (D. Del. Sept. 21, 2020) (cited in Opp. at 3) ("less deference" where "action's only connection" to Delaware was incorporation and "limited, if any evidence that Plaintiff's choice of forum was based upon convenience"); *see also Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007) (cited in Opp. at 5) ("textbook case for immediate *forum non conveniens* dismissal" where "gravamen" of complaint located in China); *Lony*, 886 F.2d 628, 634 (cited in Opp. at 6-7) ("strong showing of convenience" where "much of the evidence" located in place of incorporation).

3

deference applies. *Id*. As discussed below, that balance militates towards dismissal.

2.  <u>The private and public factors tip decidedly in favor of dismissal.</u>

Plaintiff's assertion that the private factors are "equally balanced" and amount to a "tie" due to the presence of some witnesses and evidence in the United States (not in Delaware) is demonstrably wrong. Opp. at 8–9. As discussed above, the Opposition does not provide a single reason why *Delaware* in particular is convenient, which is dispositive of and ends the FNC analysis no matter what level of deference applies. *Gilbert*, 330 U.S. at 509; *Aimbridge*, 2020 WL 5633363, at *3 (FNC dismissal where "only connection to the District of Delaware is that it is the defendants' place of incorporation" (citing *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 F. App'x 200, 203 (3d Cir. 2017))). Even if that were not the case, the Opposition provides no basis for why *any* jurisdiction in the United States is more convenient than Korea, where Plaintiff admits the events and the majority of relevant witnesses are located. Opp. at 8; Mot. at 10–11. Plaintiff assumes without basis that Netflix witnesses with relevant evidence are located in California, but they too are located in Korea. Were this case to proceed, *every single witness* will have to travel from somewhere else (primarily Korea) to Delaware for trial. And—contrary to Plaintiff's assertion that "digital exchanges are easy in both directions" (Opp. at 9)—complying with the Hague Convention to get documents out of Korea, where the majority would be located, "would come at excessive cost" and put Netflix "at a significant, and unfair, disadvantage." *Behrens v. Arconic, Inc.*, 487 F. Supp. 3d 283, 324 (E.D. Pa. 2020), *aff'd in part, rev'd in part*, 2022 WL 2593520 (3d Cir. July 8, 2022). Thus, the private factors overwhelmingly favor dismissal. *Id*. (dismissal where bulk of evidence and witnesses are abroad); *Wit Software*, 2023 WL 3454193, at *7–8 (same).

The Opposition's private factor discussion focuses primarily on whether a Korean judgment would be enforceable in the United States, considered a "miscellaneous" factor by the

*Gilbert* court, but one which courts in this Circuit have subsequently left off the list. *See Piper*, 454 U.S. at 241 n.6 (no enforceability as a *Gilbert* factor); *accord Ryanair DAC v. Booking Holdings Inc.*, 2021 WL 7209367, at *3 n.6 (D. Del. Dec. 27, 2021). Even if enforceability is relevant, CGMMA misconstrues the SPEECH Act ("Act"). Opp. at 9–11. Contrary to Plaintiff's argument, the Act permits enforcement even if Korean law does not provide as many protections for free speech as long as the defendant "would have been found liable for defamation by a domestic court applying" First Amendment protections (i.e., the same standard CGMMA would have to meet here). *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 488 (5th Cir. 2013). This factor, if relevant, is entitled to no weight here.

As far as the public interest factors, the Opposition confirms that they, too, favor dismissal by conceding that California law applies and that no relevant events occurred in Delaware. *See* Opp. at 11; Mot. at 10–11 (factors 2–4). Plaintiff's assertion that adding congestion and jury imposition to an already crowded court system is a "'cost of doing business' for Delaware's franchise as a work corporate epicenter" (Opp. at 11) is contrary to law, and would nullify the public factors in every case involving a Delaware-incorporated company. *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1032 (3d Cir. 1980) ("the commitment of Delaware judicial time and resources to this case is not justified by any nexus Delaware has with what is essentially a Norwegian case"); *see also Wit Software*, 2023 WL 3454193, at *6. As with the private factors, CGMMA fails to provide a single reason for why the *recognized* public factors favor Delaware.[5]

---

[5] *Keeton v. Hustler Magazine* related to the exercise of personal jurisdiction over a United States resident, not whether to let a foreign plaintiff litigate its claims in a forum with no nexus to the case. 465 U.S. 770, 773–74 (1984) (cited at Opp. at 11–13).

## II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION.

### A.     Plaintiff Does Not Justify The Failure To Identify The Challenged Statements.

CGMMA repeats the same error in its Opposition as in the Complaint, ignoring that "words constituting libel or slander must be specifically identified, if not pled verbatim." *Compare* Mot. at 15, *with* Opp. at 15–16. The Court can dismiss the complaint on these grounds alone.[6]

### B.     The Opposition Affirms The Challenged Statements' Substantial Truth.

Plaintiff concludes without citation that "there would be a gigantic difference in the mind of an average viewer between the assertion that Pastor Joshua engaged in illicit conduct, and the assertion that CGM[MA] as an organization knowingly condoned and assisted him." Opp. at 18. Even if that conclusory assertion is true, Pastor Joshua's conduct is not the only admitted truth. CGMMA does not deny that Pastor Joshua's closest "supporters and members" were "complicit" in his criminal acts. Opp. at 19; *see* Mot. at 15–16. The operative question, then, would be whether there is any reasonable difference between that "truth" (that "supporters and members" were "complicit" in Pastor Joshua's misconduct) and the alleged defamation (that their organization, whatever it is named, was "complicit" in the same). Plaintiff has not, because it cannot, argue any reasonable material difference between the two. This ends the substantial truth analysis.[7]

But Plaintiff's argument that a viewer would see a difference between the conduct of Pastor Joshua and of his organization contradicts Plaintiff's theory as to why the Challenged Statements are "of and concerning" CGMMA. Namely, according to Plaintiff, "organizations can only act

---

[6] *Silicon Knights, Inc. v. Crystal Dynamics, Inc.* does not change the outcome because that complaint, like this one, insufficiently relied on characterizations and general "allegations of the defamatory statements" without identifying "the substance of what was stated by the Defendants." 983 F. Supp. 1303, 1314 (N.D. Cal. 1997) (cited in Opp. at 16).

[7] Plaintiff's argument that there are "certain acts that only a natural being can commit," such as rape, is unavailing for the same reason: by its own admission, both a "natural" being and an organization can be "complicit" in sexual crimes, like rape.

through human beings" and, therefore, the acts of its pastor are necessarily about CGMMA "as an institution." Opp. at 14–15. But under that reasoning, a reasonable viewer would see no difference between the admitted acts of Pastor Joshua or his followers (the "truth") and the acts of his institution (the alleged "defamation"). In other words, the Challenged Statements are substantially true based on Plaintiff's own rationale.[8]

**C.    Plaintiff Does Not Meaningfully Address Its Failure To Plead Actual Malice.**

The bulk of the Opposition's defense of its deficient actual malice pleading is the recitation of irrelevant out-of-Circuit law, which in sum stands for the unremarkable proposition that a "well pleaded" complaint must provide "a plausible inference of actual malice." Opp. at 20–27. But Plaintiff's Complaint is not "well pleaded." As Netflix explained in its Motion, the sum of the Complaint's allegations as to actual malice are improper conclusory recitations of the legal standard, and four assertions that do not support an inference of actual malice as a matter of law. *See* Mot. at 18–20. The Opposition largely repeats those assertions without addressing any of the reasons why they are irrelevant to any of the Challenged Statements and, even if they were, do not amount to actual malice. *Compare* Mot. at 18–20, *with* Opp. at 24–27. For example, the Opposition again points to "Netflix's failure to correct the falsities described in CGM's application for an injunction" in Korean court, Opp. at 25, without explaining how that allegation could *plausibly* demonstrate actual malice given the Korean court's express *rejection* of CGM's argument that the Documentary was false, Mot. at 20. The only *plausible* inference is precisely the opposite of what CGMMA is asking this Court to find: that Netflix has a good-faith basis to believe that the

---

[8] Plaintiff attempts to distinguish *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012 (C.D. Cal. 2022), because the plaintiff there was a cult member and not the organization itself. Opp. at 18–19. But that does not change the fact that *Eliott* is a useful example of a court dismissing a complaint based on substantial truth. *See* Mot. at 16–17.

Documentary is true given that precise prior finding by the Korean court in the Injunction Action. CGMMA asks this Court, in effect, to loosen the plausibility standard because actual malice is hard to plead, but the actual malice standard is supposed to be onerous because it serves vital First Amendment principles. *Barger v. Playboy Enters., Inc.*, 564 F. Supp. 1151, 1157 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984) ("The danger that suits based on such flimsy allegations of malice would pose to freedom of speech and of the press if allowed to proceed is only too clear."); *accord Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1252 (9th Cir. 1997).

**D.     The Challenged Statements Are Not "Of And Concerning" CGMMA.**

CGMMA does not, because it cannot, claim that it (i.e., the Korea CGM Members Association) is "expressly" named in the entirety of the Documentary. Nor does it make any attempt to demonstrate that, to the extent that the Documentary refers to *any* organization, it is "capable of being understood to refer to" CGMMA or that it has "actually" been "so understood by a third party." *See Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (1986); *compare* Mot. at 20–23, *with* Opp. at 14–17. CGMMA's failure to do so is fatal and requires dismissal.[9]

CGMMA's of-and-concerning argument appears to be that the Documentary implicitly refers to some *amorphous, undefined,* and *unnamed organization*, which must refer to CGMMA. The Opposition cites timecodes where Plaintiff claims the Documentary "depicted CGM as organizationally complicit" and purports to describe the content using parenthetical characterizations. But a comparison of those characterizations with the actual Documentary proves

---

[9] CGMMA's only response to the argument that it lacks standing to sue for injuries allegedly suffered by its members is to confirm that it "is not suing as the surrogate for its members" but solely "in its institutional capacity as a church for the damage done directly to it as a church." Opp. at 13–14. CGMMA's standing, therefore, rises and falls on demonstrating that *CGMMA* as an institution has alleged injuries to *itself*. Because the Challenge Statements are not of and concerning CGMMA (as opposed to some other legal entity), it lacks standing. *See* Mot. at 13.

that *not a single one of those statements is "of and concerning" CGMMA (or even CGM)*. *See* Exhibit A.[10] For example, Plaintiff claims Episode 2 at 26:10 portrays "CGM as instructing members 'to go to CGM's photographic studio in Seoul and pose in their underwear, or naked, or masturbating.'" Opp. at 15. No such quote appears at or around that timecode (or anywhere in the Documentary), and neither does any reference to CGMMA or CGM or, even, JMS—the only pronoun used at that timecode is "they." *See* Ex. A at 4 ("***They*** took pictures of me in my underwear" and "***they*** told us to come get our picture taken"). Plaintiff does not explain why *anyone* would understand "they" in that sentence (or any of the language in any of the other Challenged Statements) to refer specifically to CGMMA (or to CGM or JMS or any other organization). *See* Mot. at 20–23. Similarly, Plaintiff claims Episode 3 at 29:27 shows Maple Yip was "persuaded by a member *acting for CGM* and left by that member in Pastor Joshua's quarters to have sex with him." Opp. at 15 (emphasis added). But nowhere in Ms. Yip's statement about a woman calling her to go to Pastor Joshua's private quarters does she or the Documentary state or imply that the woman was *acting for* any organization (but in particular CGMMA or CGM). *See* Ex. A at. 5–6.[11]

Plaintiff's argument that an organization acts only through members similarly misunderstands the of-and-concerning requirement. The question is not whether a reference to

---

[10] Citations to Exhibit A refer to the exhibit attached to the Declaration of Meryl Governski filed contemporaneously herewith, which adds a column to Exhibit 5, filed with Netflix's Motion to Dismiss (D.I. 18-1), to compare the Challenged Statements to the Opposition's verbatim characterization of them. Exhibit A also adds a Challenged Statement that Exhibit 5 inadvertently omitted. *See* Exhibit A, Statement No. 8.

[11] If there is any conflict between Plaintiff's characterizations of the statements and the statements as they actually appear in the Documentary, the latter controls. *See, e.g.*, *Dodots Licensing Sols. LLC v. Lenovo Holding Co.*, 2018 WL 6629709, at *1 (D. Del. Dec. 19, 2018) (court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit [nor] accept as true bald assertions, unsupported conclusions or unwarranted inferences").

Pastor Joshua's supporters is "of and concerning" *some* organization, but whether it is "of and concerning" *CGMMA in particular*. The case that the Opposition cites, *D.A.R.E. Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270 (C.D. Cal. 2000), illustrates the fallacy of Plaintiff's reasoning. *See* Opp. at 19–20. In that case, the *title of the article* at issue included Plaintiff's name ("Truth and ***D.A.R.E.***" (emphasis added)) and seven of the eight challenged statements expressly mentioned the name "D.A.R.E." *D.A.R.E.*, 101 F. Supp. 2d at 1275–76 (statements 2–8).[12] The Court found statements about "D.A.R.E." supporters reasonably could be understood to be about the organization explicitly named and not just the supporters. *Id*. at 1289–90. That is untrue here, where CGMMA *is not mentioned a single time*, and there is no basis for the Court to determine that a reference to "supporters" of Pastor Joshua and whatever organization he leads is a reference to CGMMA in particular.

Rather than attempt to meet its burden, Plaintiff levels the bizarre criticism that Netflix has acted "with unseemly hubris" by refusing "to call CGM by its name, instead re-naming it 'CGMMA.'" Opp. at 1. Of course, Plaintiff self-identified (in this very lawsuit) as "KOREA CGM MEMBERS ASSOCIATION, a non-profit corporation organized and existing under the laws of the Republic of Korea." D.I. 12. Accepting its pleading as accurate, the Korea CGM Members Association ("CGMMA") is its own distinct legal entity. The separateness between CGMMA and CGM is confirmed by the fact that CGM (not CGMMA) is the entity that initiated the failed Injunction Litigation. *See* Mot. at 4–5. For whatever reason, CGMMA made the choice to file a defamation lawsuit in its name. Having done so, CGMMA cannot insist that it is in reality a different organization. CGMMA must demonstrate that the Documentary is "of-and-concerning"

---

[12] Plaintiff cited *D.A.R.E.* in support of its substantial truth argument, even though it is about the "of and concerning" requirement and appears irrelevant to Netflix's substantial truth defense.

CGMMA, and not some *other* entity that is not a party here. Rather than a "hyper-technicality" (Opp. at 14), this requirement is a constitutional safeguard that must be strictly followed:

> "Statements about a religious, ethnic, or political group could invite thousands of lawsuits from disgruntled members of these groups claiming that the portrayal was inaccurate and thus libelous. Such suits would be especially damaging to the media, and could result in the public receiving less information about topics of general concern."

*Blatty*, 42 Cal. 3d at 1044 ("To allow a plaintiff who is not identified, either expressly or by clear implication, to institute such an action poses an unjustifiable threat to society."). This Court should not permit CGMMA to pursue litigation about a Documentary that admittedly does not refer to it "expressly or by clear implication."

### E. The Challenged Statements Are Not Defamatory As A Matter Of Law.

CGMMA leaves unanswered Netflix's argument that the Challenged Statements simply do not on their face or by implication accuse CGMMA of having "caused, condoned, encouraged or facilitated" Pastor Joshua's behavior. *See* Mot. at 23–24. A conclusory statement that the Documentary "depict[s] CGM as organizationally complicit" does not meet its burden. Opp. at 15, Mot. at 23. Plaintiff conflates Netflix's defamatory meaning argument with the of-and-concerning one, which again misses the fact that different elements of defamation come with different requirements of proof. The Court can dismiss the Complaint in its entirety because the Documentary does not state or imply that *any* organization of *any* name (be it CGMMA or CGM or even JMS) was complicit in Pastor Joshua's crimes.

### III. THE COURT SHOULD STRIKE THE COMPLAINT AND SHIFT COSTS TO THE PLAINTIFF PURSUANT TO CALIFORNIA'S ANTI-SLAPP ACT.

Plaintiff does not dispute that California law applies to the claims in this suit, but nonetheless argues that it should not be subject to California's Anti-SLAPP Act because it is "plainly procedural, and not substantive." *See* Opp. at 27–30. Whether to apply California's Anti-

SLAPP Act in federal court does not, as Plaintiff suggests, hinge on attaching a "procedural" label, but rather relies on determining whether California's Anti-SLAPP Act, in particular, conflicts with the Federal Rules (here, Rule 12). *CoreCivic Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1141–43 (9th Cir. 2022). Plaintiff ignores the Ninth Circuit's "long line of precedents" holding that California's Anti-SLAPP Act is applicable in federal court because it does not impose any procedural entitlements or requirements beyond those in the Federal Rules. *CoreCivic*, 46 F.4th at 1141–43 (no conflict between California's Anti-SLAPP Act and Rule 12(b)(6)); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (California's Anti-SLAPP Act provides substantive protection by serving "an interest not directly addressed by the Federal Rules: the protection of the constitutional rights of freedom of speech and petition for redress of grievances" and they "can exist side by side" without conflict) (cleaned up); *see also Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980).[13] In *CoreCivic*, the Ninth Circuit rejected the argument that California's Anti-SLAPP "cannot be applied in federal court because it conflicts with Federal Rules of Civil Procedure 8, 12, and 56" as "foreclosed by our precedents," which continue to "control" the applicability of California's Anti-SLAPP Act in federal court. *Id.* at 1140. The Court explained why California's Anti-SLAPP Act is dissimilarly situated from those of other states, including the ones Plaintiff cites in his Opposition:

> "Most of the out-of-circuit cases refusing to apply state anti-SLAPP statutes have grounded their reasoning in conflicts between those statutes' heightened pleading standards and the standards dictated by Rules 8, 12, and 56. *See La Liberte* [*v. Reid*], 966 F.3d [79] at 87 [2d Cir. 2020]; *Klocke* [*v. Watson*], 936 F.3d [240] at 246 [5th Circ. 2019]; *Carbone* [*v. Cable News Network, Inc.*], 910 F.3d [1345] at 1350–51 [11th Cir. 2018]; *Abbas* [*v. Foreign Pol'y Grp., LLC*], 783 F.3d [1328] at 1334 [D.C. Cir. 2015]. ***No such conflict exists in this Circuit; we have made clear that***

---

[13] The First Circuit reached a similar conclusion when considering application of Maine's Anti-SLAPP statute. *Godin v. Schenks*, 629 F.3d 79, 88–89 (1st Cir. 2010) (statute "created a supplemental and substantive rule to provide added protections beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities.").

> ***challenges to the legal sufficiency of a defamation claim made pursuant
> California's anti-SLAPP statute must be analyzed under the same standard as
> Rule 12(b)(6) motions to dismiss***, and challenges to factual sufficiency under the
> same standard as Rule 56 motions for summary judgment. *See Planned Parenthood*
> [*Fed'n of Am., Inc. v. Ctr. for Med. Progress*], 890 F.3d [828] at 834 [9th Cir.
> 2018]."

*Id*. at 1140, 1143 (if "the anti-SLAPP motion to strike challenges only the legal sufficiency of a

claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and

consider whether a claim is properly stated") (emphasis added); *see* Opp. at 29 (citing the same

four out-of-circuit cases as above). Here, this Court should apply the standard dictated by Rule

12(b)(6) and, if the Court finds dismissal appropriate under that standard, also apply the California

Anti-SLAPP Act provisions regarding the award of fees and costs.

While the Third Circuit has yet to consider whether to apply California's Anti-SLAPP Act

in federal diversity actions, the only Delaware district court of which Netflix is aware that has

considered the issue has chosen to follow Ninth Circuit precedent.[14] In *Gilead Sciences, Inc. v.*

*Abbott Laboratories, Inc.*, another court in this District applied California's Anti-SLAPP Act and

granted a defendant's motion to strike, reasoning that because "the anti-SLAPP motion is based

on legal deficiencies in the complaint," the court must "determine the motion in a manner that

complies with the standards set by the Federal Rules of Civil Procedure 8 and 12." 2015 WL

1191129, at *6 (D. Del. Mar. 13, 2015); *accord Planned Parenthood*, 890 F.3d at 834.

None of the points in the Opposition offers any reason to depart from the Ninth Circuit's

"long line of precedents." Plaintiff does not address *CoreCivic* or any of the relevant Ninth Circuit

precedents, nor does it engage with the applicable legal standard. The Opposition cites only two

---

[14] The only in-Circuit cases Plaintiff cites are inapplicable as they do not analyze California's Anti-
SLAPP Statute. Opp. at 30 (citing *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales
Pracs., & Prods. Liab. Litig.*, 553 F. Supp. 3d 211, 221 (D.N.J. 2021) (District of Columbia's
statute) and *Broughty v. Bouzy*, 2023 WL 5013654 (D.N.J. Aug. 7, 2023) (New York's statute)).

federal cases relating to the California Anti-SLAPP Act, both of which pre-date *CoreCivic* and

one of which the Ninth Circuit expressly distinguished. *See* Opp. at 28–29 (citing *Glob. Relief*

*Found. v. N.Y. Times Co.*, 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002); *La Liberte*, 966

F.3d at 88). The Second Circuit in *La Liberte* reasoned that the California Anti-SLAPP Act

imposed a "probability" standard rather than Rule 12's "plausibility" standard, but the Ninth

Circuit in *CoreCivic* addressed and rejected that reasoning by clarifying that courts asked to apply

the California Anti-SLAPP Act to a motion to dismiss, like here, are to apply the same

"plausibility" requirement of Rule 12.[15] *CoreCivic*, 46 F.4th at 1141–42; *see also Woulfe v.*

*Universal City Studios LLC*, 2022 WL 18216089, at *4 (C.D. Cal. Dec. 20, 2022), *reconsideration*

*denied*, 2023 WL 3321752 (C.D. Cal. Mar. 9, 2023) (applying California's Anti-SLAPP Act in

federal court, and explaining that after *La Liberte*, the Ninth Circuit has reaffirmed that the "special

motion to strike provision of California's anti-SLAPP statute applies in federal court").[16] And,

despite being more than twenty years old and predating *CoreCivic*, *Global Relief* hurts Plaintiff's

argument because the federal court in Illinois in that case applied the Anti-SLAPP Act

notwithstanding the language Plaintiff cites. *Glob. Relief*, 2002 WL 31045394, at *12.

Plaintiff evokes the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) yet

ignores *Erie*'s "twin purposes": "discouragement of forum-shopping and avoidance of inequitable

administration of the law." *Newsham*, 190 F.3d at 973. Crediting Plaintiff's argument would flatly

contradict not only Ninth Circuit law, but also those "twin purposes." As the Ninth Circuit

---

[15] The Opposition cites the dissenting opinion in *Makaeff v. Trump University, LLC*, 715 F.3d 254, 261 (9th Cir. 2013) but ignores that the majority opinion applied the Anti-SLAPP Act. Opp. at 29.

[16] The Ninth Circuit in *CoreCivic* emphasized that its "long line of precedents" still "control" and thereby rejected the dicta in *La Liberte* suggesting that those precedents were no longer good law, including by citing the same *Makaeff* dissent on which Plaintiff relies. *Compare La Liberte*, 966 F.3d at 87 n.4, *with CoreCivic*, 46 F.4th at 1143.

explained in *Newsham*: "if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum" and "a litigant otherwise entitled to the protections of the Anti–SLAPP statute would find considerable disadvantage in a federal proceeding." *Id*. As discussed in the Motion, CGMMA is attempting to forum shop its claims in the United States to avoid harmful precedent against it in the courts of Korea and chose to file this litigation in this Court (as opposed to California), without any indicia of convenience, in an attempt to avoid application of the Anti-SLAPP Act. The Court should reject Plaintiff's forum shopping, dismiss the Complaint, and apply California's Anti-SLAPP Act to its claims.

Apart from disputing the applicability of California's Anti-SLAPP Act *ex ante*, CGMMA offers no substantive defense if the Act is applicable. Opp. at 27–30. As set forth in Netflix's Motion, the Court should strike the Complaint and award Netflix attorneys' fees because Netflix has made a prima facie showing that (1) CGMMA's claims arise from an act in furtherance of its free speech rights, and (2) CGMMA has failed to demonstrate a probability of success on the merits. Mot. at 27–30; *supra* at Argument § II.

## <u>CONCLUSION</u>

For the reasons discussed in the Motion and herein, the Court should dismiss the Complaint based on international comity, *forum non conveniens*, lack of standing, or for failure to state a claim pursuant to Rule 12(b)(6). In addition, the Court should grant Netflix's motion to strike the Complaint and award Netflix attorneys' fees and costs in connection with filing this motion.

WILLKIE FARR & GALLAGHER LLP
Michael Gottlieb (admitted *pro hac vice*)
Meryl Governski (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Dated: October 8, 2024

/s/ *Chad M. Shandler*
Chad M. Shandler (#3796)
Jessica E. Blau (#7163)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
shandler@rlf.com
blau@rlf.com

*Attorneys for Defendant Netflix, Inc.*