IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KOREA CGM MEMBERS ASSOCIATION, a non-profit corporation organized and existing under the laws of the Republic of Korea,<br><br>                    Plaintiff,<br><br>      v.<br><br>NETFLIX, INC.,<br><br>                    Defendant. | Civil Action No. 24-267-GBW |

---

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Alexander Rufus-Isaacs, RUFUS-ISAACS ACLAND & GRANTHAM LLP, Beverly Hills, CA.

    *Counsel for Plaintiff*

Chad M. Shandler, Jessica E. Blau, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Michael Gottlieb, Meryl Governski, WILLKIE FARR & GALLAGHER LLP, Washington, DC.

    *Counsel for Defendant*

### MEMORANDUM OPINION

February 28, 2025
Wilmington, Delaware

_[signature]_
───────────────────────────
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendant Netflix, Inc.'s ("Netflix" or "Defendant") Motion to Dismiss and Motion to Strike the Amended Complaint ("Motion") (D.I. 16), which has been fully briefed (D.I. 17; D.I. 23; D.I. 25). Plaintiff Korea CGM Members Association ("CGM" or "Plaintiff") opposes Netflix's Motion. For the following reasons, the Court grants Netflix's Motion without prejudice.

## I.   BACKGROUND

The following are factual allegations taken as true for the purpose of Netflix's Motion. CGM is a Korean organization. D.I. 12 ¶ 4. Netflix is a Delaware corporation. D.I. 12 ¶ 5. On March 3, 2023, Netflix released a documentary series entitled *In The Name of God: A Holy Betrayal* (the "Series"). D.I. 12 ¶ 1. The Series portrays CGM as causing or encouraging its members to (1) provide CGM's leader with young women for sexual exploitation and (2) assault and harass individuals that are antagonistic to CGM. D.I. 12 ¶ 2. On February 28, 2024, CGM filed a Complaint against Netflix. On June 12, 2024, CGM filed an Amended Complaint against Netflix alleging defamation. D.I. 1; D.I. 12. On July 24, 2024, Netflix moved to dismiss the Amended Complaint on the basis of *inter alia* the doctrine of *forum non conveniens*. D.I. 16. CGM opposes dismissal. D.I. 23.

## II.   JURISDICTION

This Court has diversity jurisdiction over CGM's defamation claims under 28 U.S.C. § 1332. In addition to moving to dismiss this action under the doctrine of *forum non conveniens*, Netflix asserted that "this Court also should dismiss for lack of subject matter jurisdiction . . . because the Complaint fails to allege the citizenship of the 50 Doe defendants, which defeats

2

diversity as a matter of law." D.I. 17 at 2. In response, CGM filed a notice of voluntary dismissal of the 50 Doe defendants pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). D.I. 22. CGM's notice of voluntary "dismissal of the [at least potentially] non-diverse part[ies]" remedied the diversity jurisdiction obstacle. *See Abbott Labs. v. Roxane Labs., Inc.*, No. 12-cv-457-RGA-CJB, 2013 U.S. Dist. LEXIS 74316, at *26 (D. Del. May 28, 2013), *report and recommendation adopted*, No. 12-cv-457-RGA-CJB, 2013 U.S. Dist. LEXIS 201776 (D. Del. June 18, 2013); *see also* 8 Moore's Federal Practice - Civil § 41.33 (2024) (explaining that such notices are "self-executing, with no need for a further or implementing court order or judicial approval"). Thus, the Court will consider and evaluate Netflix's motion to dismiss under the doctrine of *forum non conveniens*.

## III.   DISCUSSION

Under the doctrine of *forum non conveniens*, "a federal district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). It is the movant's burden to demonstrate that a dismissal for *forum non conveniens* is warranted. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995).

The Court's analysis under the doctrine of *forum nonconveniens* "proceeds in three steps." *Behrens v. Arconic, Inc.*, Nos. 20-3606, 21-1040, 21-1041, 2022 U.S. App. LEXIS 18816, at *6 (3d Cir. July 8, 2022). *First*, the Court "must determine whether there is an adequate alternate forum to hear the plaintiff's claims." *Id.* (citing *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017)). *Second*, the Court "must decide the degree of deference due to the plaintiff's forum choice." *Id.* (citing *Trotter*, 873 F.3d 435, 442). *Third*, the Court "must 'balance the relevant private and public interest factors' to determine whether it would be more appropriate and

3

convenient for the parties to proceed in the alternate forum." *Id.* (quoting *Trotter*, 873 F.3d 435, 442).

"The private interest factors include: access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Trotter*, 873 F.3d 435, 442 (cleaned up) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "The public interest factors include: the possibility of turning courts into congested centers; the likelihood that the case will burden a jury composed of people with no relation to the litigation; the probability that the case will touch the affairs of many persons in the community; and the chances that the court will be at home with the law that must govern the case." *Id.* (cleaned up) (quoting *Gulf Oil Corp.*, 330 U.S. 508, 508-09).

Two cases are particularly illustrative here. In *Behrens*, "the Grenfell Tower—a London high-rise apartment building—caught fire, killing 72 people and injuring hundreds more." 2022 U.S. App. LEXIS 18816, at *1. While several suits commenced in the United Kingdom, "several estates and survivors" of the fire brought a "products liability action" in the United States, seeking recovery "from three US-based corporate defendants." *Id.* at *1-2. Plaintiffs alleged that these three corporate entities were "responsible for the fridge-freezer that started the fire and certain combustible materials used on the Tower's exterior, the latter of which allowed flames to engulf the building with alarming speed." *Id.* at *2. The district court "held three private interest factors weighed heavily for sending this case overseas: (1) ease of access to sources of proof, given the amount of potentially relevant UK-based evidence; (2) the large number of third-party witnesses located in the United Kingdom, most of whom could not be compelled to attend trial in

4

Pennsylvania; and (3) the inability to implead UK-based third parties who may bear responsibility for the tragedy." *Id.* at *7. "These and other factors—including judicial economy and the United Kingdom's interest in resolving the claims of its residents stemming from the Tower tragedy—prompted the Court to determine that Plaintiffs' claims were better heard in a UK forum." *Id.* The Third Circuit affirmed. *Id.* at *14.

In *Wit Software v. Talkdesk, Inc.*, representatives from Wit Software (a Portuguese software company) and Talkdesk (a Delaware corporation that sells business phone systems) "met to discuss a possible business relationship between the two companies." No. 23-cv-94-WCB, 2023 WL 3454193, at *1 (D. Del. May 15, 2023). As part of those discussion, the parties signed a non-disclosure agreement that "provided that any party who received proprietary or confidential information would be prohibited from disclosing that information for five years from the disclosure of the information." *Id.* "The agreement also provided that, until two years after the last disclosure of confidential information, neither party will encourage or solicit any employee or consultant of the other party to leave that other party for any reason." *Id.* (quotation marks omitted). Wit Software alleged that Talkdesk breached the non-disclosure agreement by (1) using Wit Software's "confidential and proprietary information" to create various products and (2) soliciting and hiring former Wit Software employees. *Id.* at *2.

This Court found that the following private factors weighed in favor of dismissal under the doctrine of *forum non conveniens*: (1) "depositions of witnesses who are Portuguese citizens living in Portugal generally can only be taken in cases pending in Portuguese courts," (2) "U.S. courts cannot order a Portuguese employee of a Portuguese subsidiary of a U.S. company, living in Portugal [i.e., some of the witnesses], to testify in the United States," (3) "because Portugal has not agreed to Article 23 of the Hague Convention, the parties would be unable to compel the

5

production of evidence that physically resides in Portugal," (4) "at least some translation, particularly of documents, would be required if the case were to proceed in this court," and (5) this Court conditioned "its dismissal on Talkdesk, Inc., voluntarily producing documents in the same manner that would be required in a federal district court." *Id.* at *7-8. In turn, the Court found that the public factors weighed "moderately" in favor of dismissal because the case was "essentially a [Portuguese] case." *Id.* at *8 (alteration in original).

In the present action, this Court dismisses the Amended Complaint on the basis of *forum non conveniens* and finds that (A) the foreign forum is adequate, (B) the degree of deference accorded to Plaintiff's choice of forum applies with less force, (C) the private interest factors weigh in favor of dismissal, and (D) the public interest factors weigh in favor of dismissal. Given the Court is granting Netflix's Motion to Dismiss on grounds of *forum nonconveniens*, the Court does not consider the remaining bases asserted in Netflix's supporting memorandum.

### A. The Foreign Forum is Adequate

In this action, "CGM concedes that South Korea is an adequate available forum, in the general sense that Korean courts provide an orderly judicial forum for the resolution of defamation disputes." D.I. 23 at 2.

### B. The Degree of Deference Accorded to Plaintiff's Choice of Forum Applies with Less Force

"Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013). However, this presumption applies with less force when "the plaintiff's choice is not its home forum" because "the assumption that the chosen forum is appropriate is in such cases less reasonable." *Sinochem Int'l Co.*, 549 U.S. 422, 430 (internal quotation marks omitted); *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) ("When the home forum has been chosen, it

is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."). The presumption may be less reasonable, for example, in light "of the potential for foreign plaintiffs to seek jurisdiction in the United States because the laws may be more favorable to their claims," i.e., the potential of forum shopping. *Kisano Trade*, 737 F.3d 869, 874.

In addition, the "fact that a foreign plaintiff 'is suing the defendant in the latter's home forum' is a relevant consideration in determining convenience." *Wit Software*, 2023 WL 3454193, at *5. However, if "the litigation has little or no connection with the forum state other than that the defendant is incorporated there, that may indicate that suit in that forum is not convenient." *Id.* In *Dahl v. United Technologies Corp.*, for example, the district court dismissed the plaintiffs' claims on the basis of *forum non conveniens* because "the only conceivable relation Delaware ha[d] to the litigation [was] the fact that the defendant" was incorporated in Delaware. 472 F. Supp. 696, 701 (D. Del. 1979). On appeal, the Third Circuit explained that "the commitment of Delaware judicial time and resources to [that] case [were] not justified by any nexus Delaware ha[d] with what [was] essentially a Norwegian case." *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1032 (3d Cir. 1980).

In the instant action, CGM's "choice is not its home forum" and, therefore, "the presumption in [CGM's] favor applies with less force." *See Sinochem Int'l Co.*, 549 U.S. 422, 430. The presumption has more force than in *Dahl*, since the "conceivable relation" that Delaware has to this action, unlike the "conceivable relation" in *Dahl*, is more than "the fact that" Netflix is incorporated in Delaware. *See* 472 F. Supp. 696, 701. For example, citizens of Delaware most likely have seen the Series. However, as discussed *infra* § 4(c), the vast majority of events appear

7

to have occurred in Korea, as conceded by CGM. D.I. 23 at 8 ("The events occurred in Korea, and proof of those events favors Netflix.").

Separately, CGM attempts to allay any concern of forum shopping by contending that "United States law, with its ample First Amendment protections, is more favorable to Netflix than Korean defamation law, which is much more strongly tilted toward plaintiffs." D.I. 23 at 8. However, the presumption in CGM's favor still applies with less force in light of the concern "of the potential for [CGM] to seek jurisdiction in the United States because the [courts or U.S. procedures] may be more favorable to [CGM's] claims." *See Kisano Trade*, 737 F.3d 869, 874; *see also Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) ("We thus understand the Supreme Court's teachings on the deference due to plaintiff's forum choice as instructing that we give . . . diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage"). Indeed, Civil Division 21 of the Seoul Western District Court issued a decision on March 2, 2023 conveying the court's skepticism of CGM's claims of falsity. D.I. 19 Ex. 6 at 5 ("Regarding past incidents in the program in this case, the debtor seems to have confirmed and verified the facts through confirmed relevant rulings, existing media reports and published materials, and interviews with interested parties, etc., and cross-checked with such materials as press release of the former members, Cafe postings, and various videos and photos.").

For the foregoing reasons, CGM's "choice to litigate in Delaware is due some deference, but [] less deference than would be afforded to a domestic plaintiff choosing to litigate in its home state." *Wit Software*, 2023 WL 3454193, at *6.

C.   **The Private Interest Factors Weigh in Favor of Dismissal**

As described above, the "private interest factors include: access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to

8

the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Trotter*, 873 F.3d 435, 442. The Court addresses each factor raised by the parties in turn.

**Access to sources of proof**: Netflix contends that the "relevant evidence in this case, including evidence regarding the truth of the Documentary's claims, and the preparation, research, and production that went into it, is likely to be located in Korea (and predominantly written in Korean)." D.I. 17 at 10-11. CGM admits that that "events occurred in Korea, and proof of those events favors Netflix." D.I. 23 at 8. However, CGM contends that "the decisions of Netflix germane to matters such as actual malice occurred in the United States and proof regarding those issues, favors CGM." D.I. 23 at 8. CGM thus contends that this "factor is equally balanced." D.I. 23 at 8. While CGM may be correct that some evidence may be located in the United States, the majority of the material evidence appears to be located in Korea. Thus, this factor weighs in favor of Netflix and dismissal on grounds of *forum non conveniens*.

**Availability of compulsory process for attendance of unwilling witnesses / cost of obtaining attendance of willing witnesses**: Netflix contends that the "relevant witnesses in this case largely are located in or citizens of Korea, and may not be amenable to discovery in the United States given the nature of the allegations involved." D.I. 17 at 11. CGM contends that "some witnesses will have to cross the Pacific Ocean no matter where the case is tried." D.I. 23 at 9. CGM also asserts that to "the extent that Korean witnesses are called to Delaware, CGM is willing to bear that cost, and so this factor does not weigh in favor of a foreign forum." D.I. 23 at 9. Netflix replies that the Netflix witnesses with relevant evidence are located in Korea, countering that some witnesses will have to cross the Pacific regardless of where the case is tried. D.I. 25 at

4. Since the majority of the relevant witnesses appear to be in Korea, this factor also weighs in favor of Netflix and dismissal on grounds of *forum non conveniens*.

**All other practical problems**: CGM asserts that, with respect to evidence and witnesses, that "[l]ogistical hurdles to obtaining evidence and voluntary testimony in the United States present less of a problem than they used to in light of technological advances and the ease of international travel." D.I. 23 at 9 (quoting *Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 951-52 (D.C. Cir. 2019)). While accurate, such technological advances do not preclude the Court's consideration of the location of the evidence and potential witnesses. Moreover, the technological advances do not mitigate the burden of translating documentary evidence and testimony from Korean to English.

CGM also asserts that a "Korean judgment would not be enforceable against Netflix in the United States, because of the Securing the Protection of our Enduring and Established Constitutional Heritage Act" ("Speech Act"). D.I. 23 at 9. The Speech Act provides:

> Notwithstanding any other provision of Federal or State law, a domestic court shall not recognize or enforce a foreign judgment for defamation unless the domestic court determines that—
>
> > (A) the defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the first amendment to the Constitution of the United States and by the constitution and law of the State in which the domestic court is located; or
> >
> > (B) even if the defamation law applied in the foreign court's adjudication did not provide as much protection for freedom of speech and press as the first amendment to the Constitution of the United States and the constitution and law of the State, the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the first amendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located.

10

28 U.S.C. § 4102(a)(1). Thus, the Speech Act provides that a Korean judgment could be enforceable in the United States if either (A) or (B) above are satisfied. Therefore, CGM's assertion that a Korean judgment would not be enforceable in the United States (D.I. 23 at 9) is speculative at best.

Yes, the Speech Act could cause inconvenience, since enforcing a Korean judgment in the United States would require Korean and U.S. courts to assess whether Netflix is liable for defamation under each country's laws. However, that inconvenience is probably less than the burden that would be imposed on the parties and this Court in litigating and trying a dispute in Delaware that primarily involves witnesses located in Korea and documents and testimony in Korean that would need to be translated to English. Therefore, the Speech Act weighs slightly against, but not dispositively against, dismissal on the basis of *forum non conveniens*.[1]

### D.     The Public Interest Factors Weigh in Favor of Dismissal

As described above, the "public interest factors include: the possibility of turning courts into congested centers; the likelihood that the case will burden a jury composed of people with no relation to the litigation; the probability that the case will touch the affairs of many persons in the community; and the chances that the court will be at home with the law that must govern the case." *Trotter*, 873 F.3d 435, 442. The Court addresses each factor raised by the parties in turn.

---

[1] Netflix questions whether enforceability remains a private factor under the *forum non convenience* analysis and flags cases where the court did not identify enforceability as a factor. D.I. 25 at 4-5. That some courts have not explicitly listed enforceability as an independent factor in the *forum non conveniens* analysis, however, does not mean that enforceability cannot inform the Court's analysis. The *forum non conveniens* factors are "by no means exhaustive, and some factors may not be relevant in the context of a particular case." *Trotter*, 873 F.3d 435, 443. Indeed, enforceability may affect a court's analysis on whether litigation is more convenient in the United States or a foreign forum, i.e., the fundamental inquiry of the doctrine of *forum non conveniens*.

11

**Court congestion**: Netflix quotes *Wit Software* for the observation that "Delaware is indisputably one of the busiest federal courts in the nation." D.I. 17 at 11 (quoting 2023 WL 3454193, at *8). However, *Wit Software* also provides that "when the defendant fails to present evidence of the 'relative congestion' of the two forums, the comparative court congestion may not be considered 'as a factor weighing toward dismissal.'" 2023 WL 3454193, at *8 (citation omitted). Here, Netflix "has failed to provide any detail regarding court congestion in [Korea]." *See id.* Therefore, the Court "will not consider court congestion as a factor that weighs in favor of dismissing the case." *Id.*

**The likelihood that the case will burden a jury composed of people with no relation to the litigation / Probability that the case will touch the affairs of many persons in the community**: Netflix asserts "there is no reason to burden the courts or citizens of Delaware with a controversy rooted in Korea." D.I. 17 at 11. In response, CGM concedes that "the burden of jury duty imposed on a Delaware jury pool," as well as this case's "interest to Korean citizens," weighs in favor of dismissal. D.I. 23 at 11. However, CGM contends that "this Court should take seriously the local interest of Delaware" and "that Delaware citizens were misled by the Series." D.I. 23 at 11-12. Ultimately, this case has a greater impact on the affairs of Korean citizens than Delaware citizens. While both Korea and Delaware have citizens that may have been misled by the alleged defamatory statements, only Korean citizens were allegedly defamed. As such, this factor weighs slightly in favor of a *forum non conveniens* dismissal.

CGM's remaining argument is flawed. CGM contends that "jury duty is again a 'cost of doing business' for Delaware's franchise as a world corporate epicenter." D.I. 23 at 11. However, that Delaware has favorable business laws does not compel this Court to adjudicate cases that are more appropriately and conveniently adjudicated in foreign forums. As Netflix observes, such a

12

holding would risk nullifying "the public factors in every case involving a Delaware-incorporated company." D.I. 25 at 5.[2]

**Chances that the court will be at home with the law that must govern the case**: Netflix contends that there is not any "benefit to a Delaware court considering the substantive law because both parties appear to agree that California law applies, which is evident by CGMMA amending the Complaint to add a 'Defamation Per Quod' claim that California, but not Delaware, recognizes." D.I. 17 at 11. Netflix is incorrect, however, since this Court is better equipped to analyze and apply California law (to the extent that California law applies) than a Korean court. In addition, should CGM commence a proceeding in Korea upon dismissal here, a Korean court would likely apply Korean law. Therefore, both this Court and any Korean court would be "at home" (or at least closer to "home" than the other) "with the law that must govern the case." *See Trotter*, 873 F.3d 435, 442. Therefore, this factor is neutral.

## IV. CONCLUSION

It is ironic, but perhaps not surprising, that CGM, a Korean plaintiff, argues that this litigation is more convenient in Delaware, and that Netflix, a Delaware defendant, argues that this litigation is more convenient in Korea. In this instance, Netflix is ultimately correct, and dismissal of this action is warranted on the basis of *forum non conveniens* because (1) CGM concedes that a Korean forum is adequate, (2) the degree of deference afforded to Plaintiff's choice of forum applies with less force since CGM is not in its "home forum," and (3) the private interest factors and public interest factors weigh in favor in dismissal. Similar to *Behrens*, these factors include (1) the "ease of access to sources of proof, given the amount of potentially relevant [Korean]-based

---

[2] CGM also relies on *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984). D.I. 23 at 11-13. However, that 1984 decision regarded the exercise of personal jurisdiction over a United States resident, not whether to dismiss on the basis of *forum non conveniens*. 465 U.S. 770, 773-74.

13

evidence" (presumably and predominantly in Korean); (2) "the large number of third-party witnesses located in [Korea]," and (3) Korea's "interest in resolving the claims of its resident[] stemming from" the alleged defamation of a Korean citizen. *See* 2022 U.S. App. LEXIS 18816, at *7.

Thus, for all of the foregoing reasons, the Court **GRANTS** Netflix's Motion to Dismiss, without prejudice, on grounds of *forum non conveniens*. The "dismissal is conditioned on [Netflix's] consent to personal jurisdiction and acceptance of service of process for the [Korean] action, along with the [Korean] court's acceptance of jurisdiction, should [CGM] choose to bring this action in [Korea]." *See Wit Software*, 2023 U.S. Dist. LEXIS 84445, at *26; *see also Behrens*, 2022 U.S. App. LEXIS 18816, at *11-12 (holding that courts may condition dismissals "to ensure the adequacy of the new forum, such as by removing procedural barriers that could prevent the plaintiffs from being heard, . . . or allowing the suit to return should the new forum reject it on jurisdictional grounds").[3]

---

[3] Plaintiff filed a declaration from Dong Won Kwak, a leader and legal representative of CGM, stating that "CGM made the decision to sue Netflix in Delaware, the state in which Netflix is incorporated, because CGM believed that jurisdiction over Netflix in that state would be automatic and could not be contested by Netflix, whereas CGM could not be certain that Korea would have jurisdiction over Netflix under Korean criminal or civil defamation laws." D.I. 23 Ex. A. In response, Netflix asserts that it would "consent to the Korean courts for purposes of this litigation in the event that the Court dismisses the case." D.I. 17 at 8.